**IN UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| DARON JEROME WILLIS, ET AL | § | |
| | § | |
| | § | |
| v. | § | C.A. NO. 1:14-CV-314(RC) |
| | § | |
| BEAUMONT INDEPENDENT | § | |
| SCHOOL DISTRICT, ET AL | § | |

## DEFENDANT BEAUMONT INDEPENDENT SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Christopher B. Gilbert
Attorney-in-Charge
State Bar No. 00787535
cgilbert@thompsonhorton.com
Frances R. Broussard
State Bar No. 24055218
fbroussard@thompsonhorton.com
**THOMPSON & HORTON LLP**

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone:  (713) 554-6744
Facsimile:  (713) 583-7698

**ATTORNEYS FOR DEFENDANT BEAUMONT INDEPENDENT SCHOOL DISTRICT**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS................................................................................................ ii

INDEX OF EXHIBITS .............................................................................................. iii

TABLE OF AUTHORITIES ....................................................................................... iv

I.     Statement of the Case...........................................................................................1

II.    Statement of the Issues.........................................................................................1

III.   Statement of Material Facts .................................................................................2

IV.   Summary Judgment Standard ..............................................................................3

V.    Argument and Authorities....................................................................................4

       A.    Plaintiffs cannot show that Officer Rivers used clearly excessive force that was objectively unreasonable under the circumstances facing Officer Rivers........4

       B.    Plaintiffs cannot show unreasonable detention or seizure ......................................9

       C.    Plaintiffs have failed to show a "custom, policy, or practice" of constitutional violations on the part of the District................................................12

       D.    Plaintiffs cannot show that the District failed to supervise, discipline, or train Officer Rivers in such a way that the failure caused their injuries or demonstrated deliberate indifference................................................................14

VI.   Conclusion ..........................................................................................................19

## <u>INDEX OF EXHIBITS</u>

The following exhibits are attached to this Motion for Summary Judgment and are incorporated herein for all purposes:

Exhibit A:     Declaration of Melissa Moore

Exhibit B:     Affidavit of Stephen Rivers, dated January 16, 2015[1] and Offense Report

Exhibit C:     Declaration of Stephen Rivers, dated January 20, 2015

Exhibit C-1:   Training Records of Stephen Rivers

Exhibit D:     Report of Plaintiff's Expert Ken Wheatley

Exhibit E:     Affidavit of Defendants' Expert Margo Frasier

Exhibit F:     Beaumont ISD Police Department Policy and Procedures Manual

---

[1] Exhibit B, the Affidavit of Stephen Rivers, dated January 16, 2015, and Offense Report, originally appeared in Defendant Stephen Rivers' Motion for Summary Judgment as Exhibit A and A-1, respectively; however for ease of reference, we have reproduced the Affidavit and Exhibit as Exhibit B.

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Adams v. Williams,* 407 U.S. 143, 92 S. Ct. 1921 (1972) ................................................11

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986) .....................3, 4

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) ..................................................14, 16, 18

*Barr v. Bernhard*, 562 S.W.2d 844 (Tex. 1978) ........................................................16

*Benavides v. County of Wilson*, 955 F.2d 968 (5th Cir. 1992) .........................15, 16, 17

*Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984), *cert. denied*,
    472 U.S. 1016, 105 S. Ct. 3476 (1985) ...............................................................13

*Board of County Comm'rs of Bryan County, Okl. v. Brown*,
    520 U.S. 397, 117 S. Ct. 1382 (1997)...............................................................12

*Brinegar v. United States,* 338 U.S. 160, 69 S. Ct. 1302 (1949) ...................................10

*Brown v. Houston Indep. Sch. Dist.*, 763 F. Supp. 905 (S.D. Tex. 1991),
    *aff'd*, 957 F.2d 866 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 198 (1992) ........................13

*Brown v. Lyford,* 243 F.3d 185 (5th Cir. 2001) ........................................................10

*Brumfield v. Hollins*, 551 F.3d 322 (5th Cir. 2008) .....................................................16

*Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989) ..............................................15

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986) ........................................3

*Collier v. Montgomery,* 569 F.3d 214 (5th Cir. 2009) ....................................................8

*Collins v. City of Harker Heights, Texas*, 112 S. Ct. 1061 (1992) ...........................12, 13

*Conner v. Travis County*, 209 F.3d 794 (5th Cir. 2000) .................................................16

*Connick v. Thompson,* 131 S. Ct. 1350 (2011) ........................................................15

*Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5th Cir. 2002) ...............................18

*Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412 (5th Cir. 1997) .................................12

*Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375 (5th Cir. 2005) ....................18

**Page**

*Fields v. City of South Houston,* 922 F.2d 1183 (5th Cir. 1989)  ...................................10

*Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992)  ....................................14, 18

*Freeman v. Gore* (5th Cir. 2007)  ...........................4

*Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir. 2001)  .......................5

*Gonzales v. Brown*, 768 F. Supp. 581 (S.D. Tex. 1991)  ..........................13

*Gonzales v. Westbrook*, 118 F.Supp.2d 728 (W.D. Tex. 2000)  .........................16

*Gonzales v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745 (5th Cir. 1993)  ..........................13

*Goodson v. City of Corpus Christi,* 202 F.3d 730 (5th Cir. 2000)  ..........................10

*Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989)  .......................4, 5, 6, 8

*Grandstaff v. City of Borger,* 779 F.2d 1129 (5th Cir. 1986)  ..........................19

*Hart v. O'Brien,* 127 F.3d 424 (5th Cir. 1997)  ...........................10

*Huang v. Harris County*, 264 F.3d 1141 (5th Cir. 2001)  ...........................6

*Huong v. City of Port Arthur*, 961 F. Supp. 1003 (E.D. Tex. 1997)  ...........................16

*Ikerd v. Blair*, 101 F.3d 430 (5th Cir. 1996)  .......................4, 6

*Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001)  ......................8, 9

*Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241 (5th Cir. 1993)  ..........................13

*Johnson v. Glick*, 481 F.2d. 1028 (2d Cir. 1973)  ...........................5

*Johnson v. Morel*, 876 F.2d 477 (5th Cir. 1989)  ..........................9

*Jones v. Webb*, 45 F.3d 178 (7th Cir. 1995)  ...........................8

*Karuna v. Kellogg*, 2001 U.S. Dist. LEXIS 23944 (2001)  ...........................9

*Lawrence v. Kenosha County*, 391 F.3d 837 (7th Cir. 2004)  ......................14

*Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995)  ...........................8

**Page**

*Mettler v. Whitledge*, 165 F.3d 1197 (8th Cir. 1999) ...................................................14

*Monell v. City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978) ..........................................12, 16

*Owen v. City of Independence*, 445 U.S. 622, 100 S. Ct. 1398 (1980) ........................................12

*Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) .....................................................16

*Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012) ........................................................5, 6

*Price v. Roark,* 256 F.3d 364 (5th Cir. 2001) ..............................................................10

*Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991) ...........................................................4

*Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005) ...........................................15, 16, 18

*Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002) ................................................6, 8

*Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001) ..................................................4, 7

*Seiser v. City of Chicago*, 762 F.3d 647 (7th Cir. 2014) ................................................11

*Smith v. Watkins*, 159 F.3d 1137 (8th Cir. 1998) ..........................................................14

*Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998) .......................................................14, 15

*Spann v. Rainey*, 987 F.2d 1110 (5th Cir. 1993) ............................................................4

*Spiller v. City of Texas City*, 130 F.3d 162 (5th Cir. 1997) ...........................................14

*Stem v. Ahearn*, 908 F.2d 1 (5th Cir. 1990), *cert. denied*, 111 S. Ct. 788 (1991) ..........................4

*Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868 (1968) .......................................................9, 10

*Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.), cert. denied, 113 S. Ct. 82 (1992) ......................4

*United States v. Ibarra-Sanchez,* 199 F.3d 753 (5th Cir. 1999) .....................................11

*United States v. Martinez,* 808 F.2d 1050 (1987) ...........................................................10

*United States v. Michelletti,* 13 F.3d 838 (5th Cir. 1994) .............................................11

*United States v. Santiago,* 310 F.3d 336 (5th Cir. 2002) ..............................................11

**Page**

*United States v. Silva,* 957 F.2d 451 (5th Cir. 1992) ....................................................................11

*United States v. Tellez,* 11 F.3d 530 (5th Cir. 1993) ....................................................................11

*Valle v. City of Houston*, 613 F.3d 536 (5th Cir. 2010) ..........................................................14, 16

*Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598 (2008) ............................................................11

*Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984) ..........................................................18

*Worsham v. City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989) ....................................................13

*Zarnow v. City of Wichita Falls*, 614 F.3d 161 (5th Cir. 2010) ...................................................15

**IN UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| DARON JEROME WILLIS, ET AL | § | |
| | § | |
| | § | |
| v. | § | C.A. NO. 1:14-CV-314(RC) |
| | § | |
| BEAUMONT INDEPENDENT | § | |
| SCHOOL DISTRICT, ET AL | § | |

**DEFENDANT BEAUMONT INDEPENDENT SCHOOL DISTRICT'S**
**MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF THE COURT:

COMES NOW Defendant Beaumont Independent School District ("BISD" or "District") and files its Motion for Summary Judgment, and would respectfully show the Court the following:

**I.     STATEMENT OF THE CASE**

Plaintiffs filed this lawsuit against Defendants Beaumont Independent School District and Stephen Rivers ("Rivers") complaining about an incident that took place on March 7, 2014, at West Brook High School in the Beaumont Independent School District.  The Plaintiffs assert claims under the Fourth and Fourteenth Amendments, via 42 U.S.C. § 1983 for claims of excessive force and unlawful detention and seizure.  The District asserts that it is not legally liable to Plaintiffs on any of the claims pled against the District, and now moves for summary judgment on all claims.

**II.     STATEMENT OF THE ISSUES**

1.    Whether the force used by Officer Rivers was objectively reasonable under the circumstances facing Officer Rivers.

1

2.      Whether Officer Rivers had reasonable suspicion and probable cause to detain Plaintiff SDW.

3.      Whether the Plaintiffs have failed to show a "custom, policy, or practice" of constitutional violations on the part of the District that actually caused any injuries to Plaintiff SDW, as required for entity liability under § 1983.

4.      Whether the Plaintiffs have failed to show that the District failed to supervise, discipline, or train Officer Rivers in such a way that the failure caused injuries or demonstrated deliberate indifference.

### III.      STATEMENT OF MATERIAL FACTS

On March 7, 2014, Public Safety Officer ("PSO") Melisa Moore ("Moore") was on duty at West Brook High School. (Ex. A, ¶ 3).  She was dressed in a full police uniform.  (Ex. B, ¶ 4). At approximately 3 p.m., a fight broke out in front of the main doors of the campus between two black male students.  (Ex. A, ¶ 3).  There was cheering and screaming and approximately 300-400 students were in the area because it was the end of the school day.  *Id*.  In an attempt to prevent the students involved in the fight from hurting each other, PSO Moore intervened and tried to break up the fight by issuing verbal commands and pulling away one of the students by his waist.  *Id*.  The student was later identified to Moore as Plaintiff SDW ("SDW").   Moore was positioned directly behind SDW, holding onto his waist. *Id*.  SDW resisted Moore's attempts to restrain him and was "slinging [Moore] around" as she continued to give him orders to stop fighting.  *Id*.  SDW then struck Moore with his elbow a couple of times in the shoulder area causing slight pain, but no injury.  *Id*.

Officer Stephen Rivers approached as Moore was struggling to restrain SDW and SDW was attempting to strike Moore with his elbows.  (Ex. B, ¶ 3).  Rivers was dressed in the BISD

Police Department's standard uniform - dark blue shirt, showing patches and badge, and dark blue pants with the dark piping down the pant leg seam. *Id* at 4. Rivers identified himself as a police officer to SDW and issued multiple verbal commands to SDW to "stop." *Id*. SDW did not comply with Rivers' commands. *Id*. Rivers intervened to prevent SDW from further assaulting Moore, and as he did, SDW took a swing at River with his left hand. *Id* at 3-4. The swing missed Rivers and Rivers was then able to grab SDW's left wrist with his right hand and his upper arm with Rivers' left hand. *Id.* at 4; Ex. A, ¶ 3. Rivers then began to pull SDW's arm behind his back in a standard empty-hand arm pin maneuver per the use of force continuum to gain control of him. (Ex. B, ¶ 4).

Rivers and Moore continued to struggle with SDW and fell to the ground. *Id*. Rivers continued the empty-hand arm pin maneuver once on the ground and was required to use both hands to control SDW's arm, as SDW continued to forcefully resist. *Id*. Moore was partially on top of SDW, which prevented Rivers from keeping SDW's arm closer to his spine in the normal manner of the empty-hand arm pin maneuver. *Id*. As Rivers brought SDW's arm up, he realized that SDW's arm had been unintentionally broken. *Id*. Rivers advised Moore of this and released the intensity of his hold, while maintaining SDW's arm behind him so as not to cause further injury. *Id*. Moore left the scene to obtain ice for SDW's arm and an ambulance was called. Rivers remained with SDW and attempted to calm him. *Id*.

## IV.    <u>SUMMARY JUDGMENT STANDARD</u>

A court may terminate litigation by rendering summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986). A material fact issue is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby*

*Inc*., 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986). Once the party seeking summary judgment makes the initial showing negating any disputed, material fact, the party opposed to the motion must offer evidence reflecting the existence of one or more genuine issues of material fact. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 113 S. Ct. 82 (1992). Conclusory assertions by the plaintiff are insufficient to raise a genuine issue of material fact precluding summary judgment.  *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991*); Stem v. Ahearn*, 908 F.2d 1, 6 (5th Cir. 1990), *cert. denied*, 111 S. Ct. 788 (1991).

## V.    ARGUMENT AND AUTHORITIES

**A.    Plaintiffs cannot show that Officer Rivers used clearly excessive force that was objectively unreasonable under the circumstances facing Officer Rivers.**

Plaintiffs have failed to create a genuine issue of material fact as to whether the force used to effectuate the arrest was clearly excessive and whether it was "objectively unreasonable." All claims that a law enforcement officer has used excessive force in the course of an arrest are analyzed under the Fourth Amendment and its "reasonableness" standard.  *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001) (citing *Graham v. Connor*, 490 U.S. 386, 388, 394, 109 S. Ct. 1865 (1989)).  As the Fifth Circuit has noted, a plaintiff has a high burden in order to state a claim for excessive force in violation of the Constitution. A plaintiff must allege:

(1)    an injury, which
(2)    resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was
(3)    objectively unreasonable.

*Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996) (quoting *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993)); *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007).

Plaintiffs have failed to create a genuine issue of material fact as to whether the force used by Officer Rivers was clearly excessive and objectively unreasonable.  Injuries secondary to force necessary to make an arrest do not support a claim for excessive force.  *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).  Moreover, in determining whether or not an officer used excessive force, the Court must keep in mind that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397, 109 S. Ct. 1865.

The test of reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*  As the Supreme Court has noted:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. ... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.

*Id.* at 396, 109 S. Ct. at 1872 (quoting *Johnson v. Glick*, 481 F.2d. 1028, 1033 (2d Cir. 1973)).

For example, in *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012),  the defendant officers were presented with a suspect-plaintiff who had been driving recklessly, smelled of alcohol, admitted to throwing liquid out of his truck with the intention of striking another vehicle, and confessed to drinking a beer before driving. The plaintiff raised his hands at an officer and actively resisted arrest.  The officers' use of force to the plaintiff's increasing resistance began first with verbal commands, then physical force, and, finally, use of a taser,

resulting in injury (dislocated elbow) to the plaintiff. However, despite these facts, the Fifth

Circuit found no Fourth Amendment violation. *Id*. Specifically, the Court said:

> Viewing the evidence in the light most favorable to [plaintiff]…we conclude that the force the officers used in arresting him was not objectively excessive or clearly unreasonable. It is undisputed that [Officer] Stalnaker repeatedly commanded [plaintiff] to turn around and give up his right arm. It is undisputed that [plaintiff] did not do so. [Plaintiff's] resistance was immediate and persistent. [Officer] Stalnaker responded with verbal commands and attempted to grab [Plaintiff's] arm, before resorting to a taser, which…he applied and withdrew very quickly. [Officer] Creighton pinned [plaintiff] down when he refused to comply with [Officer] Stalnaker's commands, and [Officer] Stalnaker twisted [plaintiff] to the ground after [plaintiff] kicked and screamed at [Officer] Creighton for reasons that were unclear. It was not until the officers restrained [plaintiff] that they realized he was injured; they immediately called for help.

*Id.* at 629.

Furthermore, as stated by the *Graham* Court, "[o]ur Fourth Amendment jurisprudence

has long recognized that the right to make an arrest or investigatory stop necessarily carries with

it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396, 109

S.Ct. at 1871-72; *see also Huang v. Harris County*, 264 F.3d 1141 (5th Cir. 2001) ("The right to

make an arrest necessarily carries with it the right to use some degree of force or threat thereof to

effect it.") (citing *Graham*); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) ("...we

recognize that the typical arrest involves some force and injury.").

Even assuming the facts as alleged by Plaintiff are true, Officer Rivers acted reasonably

and did not employ force that was clearly excessive to the need. *Ikerd*, 101 F.3d at 433-34. The

following facts are undisputed:

- Plaintiff SDW was involved in an altercation with another student. (Plaintiffs' Original Complaint, ¶ 8; Declaration of Moore, Ex. A, ¶ 3; Declaration of Rivers, Ex. B, ¶ 3);

- Officer Rivers observed Plaintiff SDW struggling with and attempting to physically strike PSO Moore (Declaration of Rivers, Ex. B, ¶ 3);

- Officer Rivers verbally commanded Plaintiff SDW to "stop" and Plaintiff did not comply (Declaration of Moore, Ex. A, ¶ 3);

- Plaintiff SDW took a swing at Officer Rivers (Declaration of Rivers, Ex. B, ¶ 4 );

Plaintiffs simply cannot demonstrate that the force Officers Rivers used was clearly excessive to the need.  It is unfortunate that SDW was injured in the application of the force, but it would not "be clear to a reasonable officer that [Rivers'] conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.  In hindsight one can second guess Officer Rivers' decision to employ the empty-hand arm pin maneuver while Willis was still struggling with PSO Moore.  The reasonableness of Rivers' conduct, however, must be measured in light of the limited information on which he reasonably relied.  The scene rapidly evolving before Rivers when he arrived to the aid of PSO Moore was chaotic.  Plaintiffs do not dispute that SDW was involved in a fight with another student at the time of the incident.  (Plaintiff's Original Complaint, ¶ 8).  Both Moore and Rivers have testified that SDW was struggling with and resisting Moore's attempts to break up the fight and subdue SDW.  (Ex. A, ¶ 3; Ex. B, ¶¶ 3-4).  Rivers observed this, as well as SDW attempting to repeatedly strike Moore.  (Ex. B, ¶¶ 3-4 ).  Most importantly, the declarations of Rivers and Moore establish that SDW was clearly struggling with both Rivers and Moore and took a swing at Rivers before Rivers employed the empty-hand arm pin maneuver.  (Ex. B, ¶¶ 3-4).  The fact that Willis had been fighting with another student, struggling with and striking Moore, refusing to comply with the verbal commands of the officers, and attempting to swing at Rivers gave Rivers a reasonable basis to believe that force would be necessary to control SDW.  (Ex. B, ¶¶ 3-4).  A number of courts have noted that using procedures far more excessive to those employed in this case to handcuff suspects is both reasonable and not an excessive use of force:

> We conclude that the force used by Sgt. Farrell during his arrest of Rodriguez did not violate the Constitution...The evidence, in the light most favorable to plaintiff, shows that Sgt. Farrell grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that Farrell was hurting him. Plaintiff was placed in the rear of Sgt. Farrell's patrol car, kept handcuffed behind his back and transported to the police station. The handcuffs were removed minutes after arrival at the police department. The handcuffing technique used by Sgt. Farrell is a relatively common and ordinarily accepted non-excessive way to detain an arrestee.

*Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002); *see also Collier v. Montgomery,* 569 F.3d 214, 219 (5th Cir. 2009) (pushing suspect, who was resisting arrest, to hood of car, which resulted in bruising, was not excessive under the circumstances); *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (granting qualified immunity to a police officer who forcibly removed a woman from a car by putting his arm around her neck, shoulder, arm, and hand, then "yanked" her hand off the ignition and "yanked" her out of the car"). In *Jones v. Webb*, 45 F.3d 178 (7th Cir. 1995), a police officer suspected that a 12-year old boy had been engaged in a fight with a girl, but the boy fled when he tried to question him.  The officer followed and eventually knocked the boy to the ground, placed a knee in his back, and handcuffed the boy.  The court rejected the boy's excessive force claim:

> We agree that in these circumstances, a reasonable police officer certainly could have believed that the limited force applied was proper and was not unconstitutionally excessive in light of clearly established law.

*Id.* at 184.

One factor that demanded that Officer Rivers treat this situation as potentially more dangerous was the presence of the student involved in the altercation with SDW, as well as the hundreds of spectators.  Several courts have held that in conducting the reasonableness inquiry required by *Graham*, the presence of other potentially-hostile persons can be a major factor in determining whether the use of force was excessive.  *See, e.g., Jackson v. City of Bremerton*, 268

F.3d 646 (9th Cir. 2001); *Karuna v. Kellogg*, 2001 U.S. Dist. LEXIS 23944 (2001).  SDW admits that he was involved in a fight with another student, and the declarations demonstrate how crowded the scene was and how many people were in close proximity to the officers and SDW.  Officer Rivers had no way of knowing how many participants were involved or who else could be a potential threat.  Officer Rivers had to take this into account in confronting SDW.

The BISD officers were entitled to use some degree of force to control SDW. *See Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989).    Even the Plaintiffs' expert acknowledges this:

> Given the chaotic scene, this incident required the application of non-deadly force to separate the subjects and restrain [SDW] from harming himself or others.  This force includes any physical effort to control or restrain [SDW].

(Ex. D, p. 7.)  Plaintiffs' expert even concedes that the maneuver used by Rivers was a "standard pain compliance/control technique taught at law enforcement academies."   (*Id.* at p. 8.) Defendant's expert witness agreed with Plaintiff's expert that the move executed by Rivers was a standard arm restraint consistent with law enforcement training and procedures.  (Ex. E, p. 7). The officers used no greater force than necessary to detain SDW.  *Id.*  As such, Plaintiffs have failed to show that Officer Rivers used clearly excessive force that was unreasonable under the circumstances facing him, and summary judgment is proper as a matter of law.

**B.    Plaintiffs cannot show unreasonable detention or seizure**

The evidence in this matter does not support a claim of unlawful seizure or arrest under the Fourth Amendment, because Officer Rivers was privileged to detain Plaintiff to investigate suspected wrongdoing, and had probable cause to effectuate a seizure.  The Fourth Amendment prohibits only *unreasonable* seizures. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S. Ct. 1868, 1873 (1968). Generally, to support an unlawful detention claim, a plaintiff must show he was willfully

detained, without consent, by a defendant without authority of law. *See Hart v. O'Brien,* 127 F.3d 424, 450 (5th Cir. 1997). As such, there is no federal cause of action for an alleged unlawful arrest when a law enforcement officer's detention is supported by probable cause. *Fields v. City of South Houston,* 922 F.2d 1183, 1189 (5th Cir. 1989); *see also Price v. Roark,* 256 F.3d 364, 369 (5th Cir. 2001). Therefore, a constitutional claim involving an alleged unlawful arrest requires a plaintiff to identify evidence establishing a lack of justification for a challenged detention. *Brown v. Lyford,* 243 F.3d 185, 189 (5th Cir. 2001).

Probable cause exists where the facts and circumstances within an arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed by the person to be arrested. *Brinegar v. United States,* 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1310-11 (1949). As such, probable cause is based upon a much lower standard than guilt. *Fields,* 922 F.2d at 1189.  A determination of probable cause turns on an assessment of probabilities in factual contexts, viewed from an objectively reasonable point of view. *See id; see also Terry v. Ohio,* 392 U.S. 1, 29, 88 S. Ct. 1868, 1884 (1968).

Furthermore, not every lawful seizure or detention is an arrest that must be justified by probable cause. *United States v. Martinez,* 808 F.2d 1050, 1053 (1987). "Pursuant to *Terry,* 392 U.S. at 30, 88 S. Ct. at 1885, police officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot." *Goodson v. City of Corpus Christi,* 202 F.3d 730, 736 (5th Cir. 2000).

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, [[T]erry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining

more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams,* 407 U.S. 143, 145-46, 92 S. Ct. 1921, 1923 (1972) (citations omitted).

"The Fourth Amendment requires only some minimum level of objective justification for the officers' actions - but more than a hunch - measured in light of the totality of the circumstances." *United States v. Michelletti,* 13 F.3d 838, 840 (5th Cir. 1994); *see also United States v. Ibarra-Sanchez,* 199 F.3d 753, 759 n.5 (5th Cir. 1999). A seizure or detention is not unlawful and does not violate the Constitution when specific, articulable facts which, taken together with rational inferences from those facts, reasonably warrant a detention. *United States v. Santiago,* 310 F.3d 336, 340 (5th Cir. 2002). "This reasonable suspicion standard is less demanding than the probable cause standard." *United States v. Silva,* 957 F.2d 451, 459 (5th Cir. 1992); *accord United States v. Tellez,* 11 F.3d 530, 532 (5th Cir. 1993). "This court reviews the reasonableness of an investigatory stop and frisk *de novo* as a conclusion of law." *Michelletti,* 13 F.3d at 841.

The evidence in this matter does not support a claim for an unconstitutional seizure or arrest, because the evidence establishes that Officer Rivers' actions were justified and supported by both reasonable suspicion and probable cause.  SDW was charged with assault on a public servant.  (Ex. B).    A Texas police officer may arrest an offender without a warrant for any offense committed in his presence or within his view.  Tex. Code Crim. P. Art. 14.01.  As the Supreme Court recently noted, "[i]n a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. 164, 171, 128 S.Ct. 1598, 1604 (2008); *see also Seiser v. City of Chicago*, 762 F.3d 647, 654 (7th Cir. 2014) ("A police officer has probable cause to believe that an

11

individual has committed an offense (and to make an arrest) if the facts and circumstances known to him would warrant a reasonable person believing that the individual has committed or is committing a crime….The belief need not rise to the level of certainty.")

Assault occurs when a person intentionally, knowingly, or recklessly causes serious bodily injury to another.  *See* TEX. PENAL CODE §§ 22.01.  Rivers testified that he witnessed SDW attempting to assault PSO Moore (Ex. B, ¶ 3), and Moore testified that SDW struck her multiple times.  (Ex. A, ¶ 3).  An assault on a public servant who is lawfully discharging his or her duty is a third degree felony.  TEX. PENAL CODE § 22.02(b)(2)(B).  Summary judgment is therefore appropriate as a matter of law on Plaintiff's unlawful seizure or arrest claim.

## C.    Plaintiffs have failed to show a "custom, policy, or practice" of constitutional violations on the part of the District.

When suing a local governmental unit, the plaintiffs must also show that the entity itself is liable for the violation.  *See generally Collins v. City of Harker Heights, Texas*, 112 S. Ct. 1061, 1066 (1992).  A school district cannot be held liable under 42 U.S.C. § 1983 for an injury inflicted by its employees or agents based on a theory of vicarious liability or respondeat superior liability. *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 402, 117 S. Ct. 1382, 1388 (1997); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1416 (5th Cir. 1997) (en banc).  The Supreme Court set forth its standard on municipal liability in *Monell v. City of New York*:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978).  *See also Owen v. City of Independence*, 445 U.S. 622, 633, 100 S. Ct. 1398, 1406 (1980); *Bennett v. City of*

*Slidell*, 728 F.2d 762, 766 (5th Cir. 1984), *cert. denie*d, 472 U.S. 1016, 105 S. Ct. 3476 (1985).

In order to state a constitutional claim against a school district under § 1983, a plaintiff must

demonstrate that the constitutional violation occurred in accordance with official government

policy or firmly entrenched custom.  *Brown v. Houston Indep. Sch. Dist.*, 763 F. Supp. 905 (S.D.

Tex. 1991), *aff'd*, 957 F.2d 866 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 198 (1992); *Worsham v.*

*City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989).  A school district may be held liable only if the

constitutional injury was caused by an official policy or custom promulgated by government

officials who have final policy making authority.  *Collins*, 112 S.Ct. at 1066.  If a plaintiff fails

to demonstrate that constitutional violations occurred as a result of school district custom or

policy, any claims against the District under § 1983 must be dismissed as a matter of law.

*Gonzales v. Brown*, 768 F. Supp. 581 (S.D. Tex. 1991).

The Plaintiffs have failed to prove that the District had or engaged in a custom, policy, or

practice of constitutional violations, including permitting excessive force or illegal detentions by

its employees, that actually caused the injuries to SDW.  Under Texas law, the final policy-

making authority for an independent school district rests with the school district's board of

trustees.  *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); *Gonzales v. Ysleta*

*Indep. Sch. Dist.*, 996 F.2d 745, 752 (5th Cir. 1993).  The Plaintiffs have not alleged that the

BISD School Board had any involvement in the incident that forms the basis for this suit.

Plaintiffs do not allege that the BISD School Board adopted policies, regulations, bylaws, or

ordinances that contributed to Plaintiffs' injuries, nor that the Board permitted "persistent and

widespread practices" or "practices that are permanent and well settled and deeply embedded

traditional ways of carrying out policy."  *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir.

1984).  The Fifth Circuit has noted that the plaintiff's description of the government's policy or

custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). The Fifth Circuit and other courts of appeals have held on numerous occasions that excessive force claims against governmental entities must be dismissed as a matter of law, when the plaintiff cannot show that his injuries were caused by a policy or custom of the entity. *See, e.g., Snyder v. Trepagnier*, 142 F.3d 791, 795-99 (5th Cir. 1998); *Baker v. Putnal*, 75 F.3d 190, 199-200 (5th Cir. 1996); *Fraire v. City of Arlington*, 957 F.2d 1268, 1277-81 (5th Cir. 1992); *see also Lawrence v. Kenosha County*, 391 F.3d 837, 843-44 (7th Cir. 2004); *Mettler v. Whitledge*, 165 F.3d 1197, 1204-05 (8th Cir. 1999); *Smith v. Watkins*, 159 F.3d 1137, 1138-39 (8th Cir. 1998).

In this case, the Plaintiffs have failed to demonstrate or even to properly plead that the District engaged in a custom, policy, or practice of constitutional violations that directly caused their injuries, the District is entitled to summary judgment as a matter of law on the Plaintiffs' § 1983 claims.

### D.    Plaintiffs cannot show that the District failed to supervise, discipline, or train Officer Rivers in such a way that the failure caused injuries or demonstrated deliberate indifference.

Plaintiffs' conclusory assertions that the District had an unconstitutional policy of failing to train, supervise, or discipline its officers is unsupported by the record. As stated above, the Original Complaint only alleges facts pertaining to this particular incident. The single incident exception to a plaintiff's requirement for establishing deliberate indifference is narrow and requires proof "that the highly predictable consequence of a failure to train would result in the specific injury suffered and that the failure to train represented the moving force behind the constitutional violation." *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010). Only when a failure to train an officer actually causes an injury, may it, in *certain very limited*

*circumstances*, fairly be said to represent a policy for which a governmental entity may be held responsible. *Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205 (1989). "To prevail on a failure to train theory a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (internal quotations omitted). For evaluation of such a claim, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Snyder v. Trepagnier* 142 F.3d 791, 798 (5th Cir. 1998) (quoting *Canton*, 489 U.S. at 188-89). Thus, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (quoting *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). "In this inquiry, mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability." *Id*.

The Supreme Court has specifically determined that "[a] municipality's culpability for a deprivation of rights is **at its most tenuous** where a claim turns on a **failure to train**." *Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) (emphasis added). Nowhere do the Plaintiffs state what training they believe that the District failed to give Officer Rivers or how the alleged deficit in training caused injuries. Plaintiffs' own expert witness acknowledged that "[g]iven the chaotic scene, this incident required the application of non-deadly force to separate the subjects and restrain [SDW] from harming himself or others. This force includes any physical effort to control or restrain [SDW]." (Ex. D, p. 7.) It is hard to see how the Plaintiffs can contend that SDW's injury was the result of faulty training, when their own expert concedes that the

maneuver used by Rivers was a "standard pain compliance/control technique taught at law enforcement academies."  (*Id*. at p. 8.)  Plaintiffs actually admit in their Complaint that what they really believe is that Defendant Rivers acted ***negligently*** in carrying out BISD policies on dealing with physical conflicts between students, not that he was following an unconstitutional policy.  (*See* Plaintiff's Original Complaint, ¶ 9.)   School districts cannot be held liable for the negligence of their employees.  *See Monell*, 436 U.S. at 694, 98 S. Ct. at 2037-38; *see also Barr v. Bernhard*, 562 S.W.2d 844, 846 (Tex. 1978).

Assertions of deliberate indifference are not supportable because BISD is also entitled to rely upon the adequacy of the statewide comprehensive education and training program that the State of Texas has established through the Texas Commission on Law Enforcement ("TCOLE"). When state law mandates the training required of a governmental entity's police officers, as in Texas, a plaintiff generally cannot satisfy the elements to support a claim of inadequate training unless the officer's training fell below such state standards. *See Benavides,* 955 F.2d at 973; *Valle v. City of Houston*, 613 F.3d 536, 548 (5th Cir. 2010); *Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009); *Roberts,* 397 F.3d at 293-95; *Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000); *Baker*, 75 F.3d at 199-200; *Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1007 (E.D. Tex. 1997); *accord Gonzales v. Westbrook*, 118 F.Supp.2d 728, 737 (W.D. Tex. 2000). The mere "dissatisfaction" of some with the training provided "cannot negate the fact that the training occurred." *Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008).

Under section 1701.251 of the Texas Occupations code, TCOLE is required to establish and maintain training programs for police officers. In order to obtain and thereafter maintain a peace officer license in Texas, each officer must satisfactorily meet TCOLE standards, including passing the Basic Peace Officer Course.  *See* 37 TAC § 217.1(e)(1)(A).   The peace officer

licensing and training standards established by TCOLE have been found to comply with constitutional requirements and are adequate to enable Texas peace officers to deal with usual and recurring situations peace officers encounter. *See Benavides*, 955 F.2d at 973. Defendants' expert witness, Margo Fisher, has opined that the District's reliance on TCOLE training and standards was constitutionally sufficient, and that there is no other evidence that the District's training of any BISD officers was deficient.  (Ex. E, pp. 7-8)  Through section § 1701.253 of the Texas Occupations code, the Texas Legislature has mandated that TCOLE establish a statewide comprehensive education and training program on civil rights which covers the laws of the state of Texas and of the United States pertaining to peace officers for all licensed law enforcement officers in Texas. Thus, compliance with TCOLE standards required under state law and the law enforcement training standards required and established by TCOLE are constitutionally adequate.

The training records of Stephen Rivers show that Officer Rivers had completed the state-mandated training and has obtained his Basic Peace Office License (1992), his Intermediate Peace Officer License (1998), his Advanced Peace Officer License (1999), and his Master Peace Officer License (2103) ) in the State of Texas.  The training records also show that Officer Rivers has over 5,000 hours of training and/or education.  (Ex. C-1).  Specifically, he has completed 16 hours of Crisis Intervention Training and at least 12 hours of Use of Force training. Officer Rivers was given a copy of the Beaumont ISD Police Department's Policy and Procedures Manual.  (Ex. C, ¶ 3).  The Manual contains an extensive section on the Use of Force, starting on Page 70, including the following provisions:

> Policy 07-63/003.  APPLICATION OF FORCE
> Unless impractical, an officer shall first exhaust every reasonable means of using the lowest level of force before escalating to a higher and more severe level of force.
> 1. Officer presence;

2. Verbal commands;
3. Physical strength and skill;
…
(Ex. F, p. 72-73.)

These policies are consistent with federal law, as discussed above.

To prevail on an inadequate supervision claim a plaintiff must prove (1) supervisory policy of a policymaker; (2) the policymaker was deliberately indifferent in adopting the supervisory policy; (3) the supervisory policy directly caused the plaintiff's injuries. *Roberts,* 397 F.3d at 293. Failure to supervise and failure to train have the same standards for municipal liability. *Id.* at 292; *Baker,* 75 F.3d at 200; *Estate of Davis v. City of N. Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005). Plaintiffs have provided no evidence how the District failed to supervise Officer Rivers or how the alleged deficit in supervision caused their injuries. With no evidence that a supervisory procedure of BISD directly caused the conduct and injuries of which Plaintiffs complain, those claims must be dismissed. *Cozzo v. Tangipahoa Parish Council,* 279 F.3d 273, 286 (5th Cir. 2002).

With respect to the allegation regarding failure to discipline, the Plaintiff's Original Complaint only describes this particular incident; however, the Fifth Circuit will not infer an unconstitutional custom or policy from a municipality's failure to discipline an officer for a single incident. *Fraire v. City of Arlington,* 957 F.2d 1268, 1278-79 (5th Cir. 1992); *see also Webster v. City of Houston,* 735 F.2d 838 (5th Cir. 1984) (stating that a single decision not to discipline an officer after a single episode of illegality "did not show a policy or custom authorizing or encouraging police misconduct through a persistent failure to discipline offending officers"). Additionally, the Fifth Circuit has stated that "post-event failure to discipline the officers cannot supply the necessary linkage to establish a city policy. An after-the-fact failure to discipline illegal conduct is by itself no evidence of a before-the-fact policy of illegal conduct. It

may be evidence of a policy commencing from that point in time when no discipline was invoked, but certainly not before." *Grandstaff v. City of Borger,* 779 F.2d 1129, 1133 (5th Cir. 1986).

Nowhere do the Plaintiffs state how the District failed to discipline Officer Rivers or how the alleged deficit in discipline caused their injuries.

Beaumont ISD is entitled to the summary judgment on the claims for failing to properly train, supervise or discipline because Plaintiffs have failed to produce evidence of each of the elements required to prove their bare bones allegations.

## VI.    <u>CONCLUSION</u>

For the reasons given above, the Beaumont Independent School District requests that summary judgment be granted, that all claims against Beaumont Independent School District be dismissed, and that the Beaumont Independent School District be granted all relief, both at law and in equity, to which it has shown itself entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:_____ _

    Christopher B. Gilbert
    Attorney-in-Charge
    State Bar No. 00787535
    cgilbert@thompsonhorton.com
    Frances R. Broussard
    State Bar No. 24055218
    fbroussard@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone:  (713) 554-6744
Facsimile:  (713) 583-7698

**ATTORNEYS FOR DEFENDANT BEAUMONT
INDEPENDENT SCHOOL DISTRICT**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on January 20, 2014, a true and correct copy of the foregoing has been served electronically on the following:

Kenneth W. Lewis
Stephen L Townsend
Bush Lewis, P.L.L.C.
595 Orleans Street, Suite 500
Beaumont, Texas  77701
***Attorneys for Plaintiff***

James E. Byrom
Kelley L. Kalchthaler
Walsh, Anderson, Gallegos, Green & Trevino, P.C.
10375 Richmond Avenue, Suite 750
Houston, Texas  77042
***Attorneys for Defendant, Stephen Rivers***

_____
Christopher B. Gilbert or Frances R. Broussard

648564

21