# Exhibit D

Use of Force Expert Report

In the matter of

Daron Jerome Willis and Subrinna Lynn Coleman, et al, Plaintiffs

vs

Beaumont Independent School District, et al, Defendants

Civil Action Number: 1:14-CV-00314


Prepared for:

Attorney B. Adam Terrell

Weller, Green, Toups & Terrell, L.L.P.

Bank of America Tower

2615 Calder Street

Suite 400

Beaumont, TX 77702


Prepared by:

Ken Wheatley MA, CPP

Royal Security Group, LLC

P.O. Box 501722

San Diego, CA 92150


Report Date: October 10, 2014

## Introduction

This is my preliminary expert report in the matter of Daron Jerome Willis, et al, (Plaintiffs) vs Beaumont Independent School District, et al (Defendants), hereafter referred to as BISD.

I was retained in this matter by Attorney B. Adam Terrell of law firm: Weller, Green, Toups & Terrell, L.L.P. on September 22, 2014. Attorney Terrell represents Mr. Daron Jerome Willis, et al.

This matter concerns the use of force by Officer Stephen Rivers during an attempt to restrain Sudarian Willis, a student at West Brook High School, which resulted in Officer Rivers breaking Sudarian Willis' arm. This event occurred on March 7, 2014 at West Brook High School in Beaumont, Texas.

Attorney Terrell retained me to provide an opinion on the appropriateness of the actions taken by Officer Rivers to restrain Subarian Willis.

## Methodology and Qualifications

The methodology for the analysis utilized in this case is consistent with good and accepted practices within the security industry, (See Exhibit A: IAPSC Forensic Methodology), and, specific to this matter, Exhibit B: IAPSC Use Of Force Best Practice, and Exhibit C: IACP (International Association of Chiefs of Police) National Law Enforcement Policy Center 2006 Use of Force Model Policy.)

This analysis was performed reviewing documents available to me as of October 10, 2014, (listed below), and by applying my education, training, and experience to the facts of this case. Specific to this matter, my training and experience in martial arts (judo and ju juitsu), military service (U.S. Air Force), law enforcement (FBI Special

2

Agent), and a team leader on the San Diego Citizens Review Board on Police Practices (See Exhibit D: Curriculum Vitae of Ken Wheatley).

Documents/information lacking at this point to conduct a complete review and evaluation of the matter include, but are not limited to:

1. Copies of Officer Rivers' personnel file, including disciplinary action reports, if any.
2. Copies of Public Security Officer MeLisa Moore's personnel file, including disciplinary action reports, if any.
3. Weight of Officer Rivers and Officer Moore on the date of the event.
4. A copy of the training records and any notations, for Rivers and Moore.
5. A copy of the Police Department's Defensive Tactics manual
6. A copy of the Police Department's Use Of Force policy
7. Any information available regarding the "great deal of controversy" referred to by Mr. Fred Patterson, expert witness for Defendant(s).
8. Depositions of Officers Rivers and Moore
9. Deposition of Sgt. Eric Payne
10. Deposition of Police Chief Clydell Duncan
11. Deposition of Sudarian Willis
12. Deposition of Defensive Tactics instructor who trained/recertified Officer Rivers
13. Any other witness statements/videos/depositions not provided to date

My opinions, while preliminary in nature, are based on a review of the following documents provided to date and may be modified or supplemented upon further discovery:

3

1. BISD Police Department Offense Report, dated 3/7/14 at 15:00 (3pm), submitted by Officer Stephen Rivers
2. BISD Police Department Supplement Case Report, dated 3/7/14 at 15:00 (3pm) submitted by Detective Sgt. Danny Moore
3. BISD Police Department Follow-up Case Report, dated 3/7/14 at 15:00 (3pm) submitted by Sgt. Eric Payne
4. BISD Police Department Property Case Report, dated 3/7/14 (Description - DVD video recording of incident)
5. BISD Police Department Voluntary Statement of MeLisa Moore, dated March 18, 2014.
6. Handwritten Witness Statement form of Randall Maxwell, taken by Sgt. Payne, on 3/21/14. No time listed.
7. Handwritten Witness Statement form of Rachiel Guidry, taken by Sgt. Payne, on 3/19/14 at 1300 (1pm)
8. Handwritten Witness Statement form of NAME REDACTED (mother of person engaged in fight with Willis), taken by Sgt. Payne on 3/20/14 at 12:05pm
9. Handwritten Witness Statement form of NAME REDACTED (person engaged in fight with Willis), taken by Sgt. Payne on 3/20/14 at 11:50am
10. Handwritten Witness Statement form of NAME REDACTED (however, form signed by Karma Savoy), taken by Sgt. Payne on 3/20/2014 at 12:15pm
11. Computer printout on a records search for Sudarian Willis, dated 3/20/2014, time 9:38am
12. Computer printout regarding Sudarian Willis listing Dispatcher Janet Flanagan, dated 3/20/2014, time 9:39am

13. Computer printout from NCIC (National Crime Information Center) regarding Sudarian Willis dated 3/20/2014
14. 3 page communication dated 5/9/2014 from Sgt. Payne to Chief Duncan regarding internal investigation of March 7, 2014 incident
15. 2 page letter from Fred Patterson to unnamed recipients(s) regarding his opinion of the event and use of force.
16. 3 page, typed statement from Officer Rivers, with cover document, dated March 26, 2014
17. Typed statement from Sgt. David Hall
18. Force Incident Data Report - Officer name omitted and form not signed by supervisor.
19. BISD Police Department Reporting Information Form on Restraint Use. Copy provided contained mostly illegible information. Of very limited use.
20. Black and white photo of a police officer kneeling down, leaning over a person laying on the ground. Another person, wearing what appears to be a reflective vest, is standing just to the left of the police officer who is kneeling.
21. Plaintiff's Original Petition
22. Article in MailOnline, an online publication of the United Kingdom – based, Daily Mail, of a purported interview with Chief Clydell Duncan.

### The Incident

On Friday, March 7, 2014, at approximately 3pm, Mr. Sudarian Willis - according to witness statements - became involved in a physical altercation with another student. Mr. Willis is a 17 year old male student at West Brook High School in Beaumont Texas.

According to the cellphone video provided, BISD Public Security Officer, MeLisa Moore, approached Willis from behind and attempted to separate Willis from the other person by wrapping her arms around Willis' upper body and pulling him away. (It's unclear from the audio in the video as to whether Moore identified herself).

Willis struggled against Moore in what appears to be an attempt to break free from her. Just as it appears that Willis is about to break free, Officer Rivers enters the scene and quickly approaches Willis from the front and grabs Willis as Willis and Officer Moore start falling to the ground.

Willis is then laying on the ground, partially on his right side. About half of Officer Moore's body is laying on top of Willis' upper body, from approximately his head to his waist. Officer Moore's left arm is wrapped under Willis' upper body, just under his left armpit. It's unclear from the video where her right hand/arm are located.

Officer Rivers is partially on top of Officer Moore when she's on top of Willis.

When Officer Rivers lifts up off Moore you can see that Rivers is using his right hand to press Willis' head to the ground. Willis' left hand is next to his head and Officer Rivers uses his left hand to pull Willis' left hand and arm back, and up, towards Rivers' body. Moore has Willis pinned to the ground using her weight and leverage.

Rivers grabs Willis' left hand with his right hand, and closes his fingers over Willis' fingers, forming a ball. Rivers grabs Willis' wrist with his left hand, closing his fingers around Willis' wrist, and in one fluid motion, using his weight, pushes Willis' arm forward and to the left, away from Willis' head. You hear a snap and Willis scream.

## Opinion and Conclusion

Given the chaotic scene, this incident required the application of non-deadly force to separate the subjects and restrain Mr. Willis from harming himself or others. This force includes any physical effort to control or restrain Mr. Willis.

In his March 26, 2014 Statement, on page 2, Officer Rivers said: "...The unidentified male observed me approaching and aggressively tried a (sic) punch me in the head. His (Mr. Sudarian Willis') swing was short but it allowed me to grab him and try to get the student under control. The student continued to ignore requests to calm down and continued to be non-compliant."

In the same Statement, Officer Rivers wrote, "I immediately began an open-hand behind the back pin maneuver in an attempt to control the subject, who continued to be non-compliant. He (Willis) continued to ignore requests to calm down and he continued his struggle as we fell to the ground..."

Officer Rivers didn't physically engage Mr. Willis until Mr. Willis and Officer Moore started to fall to the ground. The video does not show Office Rivers employing the behind the back pin maneuver for the brief seconds that they are standing.

Officer Rivers, or Officer Moore can't be heard on the video issuing any commands for Mr. Willis to calm down.

When restraining Mr. Willis on the ground, in my opinion, Officer Rivers should have used the level of force that was objectively reasonable to bring Mr. Willis under control.

"Objectively reasonable", as defined by the 2006 Use of Force Model Policy from the International Association of Chiefs of Police (IACP) National Law Enforcement

Policy Center means that Officer Rivers should have determined "the necessity for force and appropriate level of force..." after evaluating the situation to include, "...but not limited to: the seriousness of the crime, the level of threat or resistance presented by the subject, and danger to the community."

Based on the video, Mr. Willis was restrained, on the ground, by Officer Moore laying on him, and by Officer Rivers pressing Mr. Willis' head to the ground. Officer Rivers also had control of Mr. Willis' left hand. At that point, Mr. Willis was not a danger to the community and his ability to resist was greatly impacted by both Officer Moore laying on him, and Officer Rivers having control of his left arm and hand.

From a crisis intervention and control perspective, Officer Rivers could have stopped there, or certainly have paused long enough to get close to Mr. Willis' ear to identify himself as a police officer and issue commands to calm down and stop resisting.

The maneuver Officer Rivers attempted unsuccessfully to employ is a standard pain compliance/control technique taught at law enforcement academies. At various times it's referred to as:

- an arm pin
- empty hand arm pin
- common arm lock
- open-hand-behind-the-back-pin

To prevent injury, there are a few steps an officer should follow:

- The officer should keep the person's hand and arm very close to their back and sweep "up" along the back, starting at the top of the buttocks and

8

    moving toward the shoulder-blade, until resistance is felt, and pause, while maintaining physical control of the hand and arm.

- They should monitor the person's physical and verbal reactions at that point to either stop and hold, until handcuffs can be applied, or continue, slowly, to adjust upward tension until compliance is achieved.
- To further maintain control of the hands and arms, and increase compliance, two or more fingers on the hand that's being controlled can be grabbed and maneuvered to hasten compliance.
- If accessible, the section of the arm being controlled between the elbow and shoulder should be stabilized against the inner thigh of the officer to prevent injury to the subject and control their movements. This would also allow the officer to keep the person's arm against the person's body, maintain better control, and reduce the amount of leverage required to obtain compliance.

These actions should be coupled with loud verbal commands to ensure the subject can hear the officer.

In this case, given the presence of Officer Moore on the back of Mr. Willis, Officer Rivers should have evaluated the situation, based on his training, and determined that he couldn't successfully apply the arm pin without risking injury to Mr. Willis.

Officer Rivers already had control of Mr. Willis' left arm and hand, so he could have selected a different control technique, perhaps an arm bar or wrist control. His proficiency to consider alternative techniques, and his ability to perform under stress, is a function of how well and how frequently Officer Rivers has trained, per Department regulations.

9

The training Officer Rivers received needs to be determined as there are conflicting, or missing, interpretations of whether he applied the proper technique, or the technique properly.

Officer Rivers' written accounts (March 7, 2014 and March 26, 2014) about his altercation with Willis are not consistent with the video.

In the March 7, 2014 report, Officer Rivers states that "...I was able to grab Willis' left wrist with my right hand and his upper arm with my left. I then began to pull his arm behind his back in a standard empty-hand arm pin maneuver per the use of force continuum to gain control of him. As I was doing this we were falling to the ground. I continued this maneuver once on the ground."

Mr. Willis and Officer Moore were starting to fall to the ground when Officer Rivers first engages Mr. Willis, so he wasn't in a position to employ the arm pin maneuver, as he described, at that point.

In the March 26, 2014 statement that he provided to Sgt. Payne, Officer Rivers said that he "...immediately began an open-hand behind the back pin maneuver in an attempt to control the subject..." prior to them falling to the ground. That is not evident in the video.

In the same Statement, Officer Rivers also stated that, "...Once on the ground the subject continued to struggle and it took me using both hands to be able to begin to pull his arm up behind his back..." That description is not consistent with the video.

Sgt. Payne, in his May 9, 2014 report to Chief Duncan, finds that Officer Rivers didn't violate the department's Use of Force policy, but he doesn't address whether Officer Rivers applied the right technique, or the technique properly.

Mr. Fred Patterson's March 26, 2014 statement indicates that "...the need to gain control of a struggling individual using a basic technique while being partially blocked by a 3rd party – is not a scenario that an officer anticipates or trains specifically for."

I would proffer that, while this specific scenario may not have been taught during Mr. Peterson's tenure at the Academy, my experience is that an officer is trained in a myriad of "moves" or techniques and needs to use judgment in the field when determining what technique is most appropriate for the given situation.

Lastly, Chief Duncan allegedly stated during an April 15, 2014 interview with MailOnline, that "...Rivers broke the student's arm because he used an improper technique while trying to handcuff him, placing his arm forward instead of backward..." And "...We have not determined the circumstance for improper technique...."

These alleged statements by Chief Duncan were made after the internal investigation report issued by Sgt. Payne. So it's important to determine if a supplemental report was issued by Sgt. Payne that addresses the technique used.