# Exhibit

# F

# Beaumont Independent School District
# POLICE DEPARTMENT



# POLICY AND PROCEDURES MANUAL

**Established 2007**



**BEAUMONT INDEPENDENT SCHOOL DISTRICT**
**Beaumont, Texas**

**Employee Policy and Procedure Manual Receipt**

Name_____

Department_____

**My signature on this sheet means that I have received a copy of the Beaumont Independent School District Police Department Policy and Procedure Manual.**

**I understand that it is my responsibility to familiarize myself with and follow the policies and procedures therein.**

Date_____

# INTRODUCTION

The Beaumont Independent School District Police Procedural Manual has been complied to provide members of the Beaumont Independent School District Police Department with the written policy which governs the performance of police duty. While no set policy statements can cover every situation, the Beaumont Independent School District Police Department Manuel does cover most situations in which officers become involved.

Beaumont Independent School District Police Officers are expected to use prudence and good judgment at all times in all situations whether or not it is covered in this manual. The provision of this manual shall take effect upon its receipt by members of the Department.

Any suggestions or questions regarding the content of this manual should be directed to the Beaumont Independent School District Police Department, in Beaumont, Texas.

DISTRIBUTED BY THE:

BEAUMONT INDEPENDENT SCHOOL DISTRICT
POLICE DEPARTMENT
1025 WOODROW
BEAUMONT, TEXAS 77705

Phone number: (409) 617-7001
Emergency number (409) 617-7000

Fax: (409) 617-7013 or 617-7014
bisdpd@beaumont.k12.tx.us

## MISSION STATEMENT

The mission of the Beaumont Independent School District Police Department is to provide a safe and secure learning and working environment for the student, staff and school community. To this end, the Beaumont Independent School District Police Department is committed to providing professional and courteous service at all times to the entire Beaumont Independent School District community.

## MOTTO

## *To Protect and Serve*

## VALUE STATEMENT

- Every student will have a safe environment and achieve their full academic potential;
- Every community has a right to safe schools;
- Children and adults, students and non-students, will have insight and input into the recognition and resolution of crime related problems.
- Every officer has complete authority and responsibility for the safety of their schools within the confines of the budget, law, ethics and policy.

# Law Enforcement Code Of Ethics

*AS A LAW ENFORCEMENT OFFICER,* my fundamental duty is to serve mankind; to safeguard lives and property, to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights of all men to liberty, equality, and justice.

*I WILL* keep my private life unsullied as an example to all, maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

*I WILL* never act officiously or permit personal feelings, prejudices, animosities, or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

*I RECOGNIZE* the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.

*I KNOW* that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence.

*I WILL* constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession... Law Enforcement.

## SCOPE AND RESPONSIBILITIES

The provisions of the Manual are binding upon all sworn personnel of the Department and upon all para-professional members of the Department. Civilian members of the Department who do not fall into these categories are governed insofar as their employment is concerned by the Personnel Rules for the Beaumont Independent School District employees.  Para-professional members of the Department are non-sworn uniformed personnel performing police-related services. All school police personnel will be furnished a copy of the Operations Manual. This manual is school district property, and each employee will be held responsible for it and any subsequently issued supplemental directives. Each employee will be expected to return the manual, along with all other equipment, upon termination of service with this department.

A. **USE OF THE MANUAL**
   Each employee is directed to read the material completely and to become thoroughly familiar with all the rules and regulations as set forth within the manual. If questions arise concerning the rules, regulations, or other matters not covered in the manual, it is suggested that these questions be brought to the attention of a supervisor in order that the proper answers may be obtained.

## POLICY

This policy is written to be consistent with the mission of the Beaumont Independent School District Police Department, which is to ensure a safe and secure learning and working environment for students, staff and the school community.

## IMPLEMENTATION OF POLICY

The policies, procedures, rules and regulation of the Beaumont Independent School District Police Department shall emanate from two different types of sources.

All policies which is departmental wide in scope shall be issued by the Chief of Police and implemented by placing it in writing and disseminating it to departmental personnel for the purpose of including it in the Police Manual. The Chief of Police may institute policy which is departmental wide in scope on a preliminary basis through the issuance memoranda or statements of policy. Any such memoranda emanating from the Chief of Police which contains policy information shall be coded in the following manner.

1. The first digits of the code shall be the last two digits of the current year.
2. The year is to be followed by a dash.
3. The next digit shall indicate the number of the memorandum of policy. This number shall be determined on the basis of the number of the memorandum of policy issued each year. With the first memorandum of policy of each year beginning at the number one.
4. The memorandum of policy number is to be followed by a slash.
5. The next digit shall indicate the topic listed under the memorandum of policy.

All memoranda containing policy statements issued by the Chief of Police shall be placed in the proper format and printed and distributed to personnel for inclusion in the Beaumont Independent School District Police Manual in accordance with established departmental procedure for the maintenance of the BISD Police Manual. All other memoranda issued by the Chief of Police shall be codified and maintained separately from policy memoranda. All policy level memoranda issued by the Chief of Police shall be copied and copies placed in a binder located in the Chief Office and made available to any member of the department requesting to view same.

## TABLE OF CONTENTS

07-01/000.    General Provisions of Manual

07-02/000.    Organization and Administration

Rules Chapter One: General Rules

07-03/000.    Section 1: Organizational Responsibility

07-04/000.    Section 2: Duty Responsibility

07-05/000.    Section 3: Personal Conduct

Rules Chapter Two: Conflicts of Interest

07-06/000.    Section 1: General Provisions

Rules Chapter Three: Uniform, Dress and Appearance

07-07/000.    Section 1: General Uniform Rules

07-08/000.    Section 2: General Appearance

07-09/000.    Section 3: Optional Equipment

Rules Chapter Four: Equipment Rules

07-10/000.    Section 1: Equipment Rules

07-11/000.    Section 2: General Vehicle Rules

07-12/000.    Section 3: Assignment of Vehicles

Rules Chapter Five: Court Appearances

07-13/000.    Section 1: Member Responsibilities

Rules Chapter Six: Outside Employment Guidelines

07-14/000.    Section 1: General Provisions

07-15/000.    Section 2: Definitions

07-16/000.    Section 3: Authorization

## PROCEDURES

Procedures Chapter One: Administrative Rules and Procedures

    07-17/000.   Section 1: Written Communication/Orders

    07-18/000.   Section 2: Personnel Records/Information/Personnel Practices

    07-19/000.   Section 3: Internal Affairs Policy/Procedure

    07-20/000.   Section 4: Internal Affairs Authority/Responsibility

    07-21/000.   Section 5: Citizen Complaints

    07-22/000.   Section 6: Budget Goals and Objectives

    07-23/000.   Section 7: Fair Labor Standards

    07-24/000.   Section 8: Americans With Disabilities

    07-25/000.   Section 9: HIV/Aids in the Workplace

Procedures Chapter Two: Criminal Investigations Warrantless Search and Seizure

    07-26/000.   Section 1: Definitions

    07-27/000.   Section 2: Observation, Plain View and Search Incident to Arrest

    07-28/000.   Section 3: Limited Search/Emergency Circumstances

    07-29/000.   Section 4: Open Fields/Abandoned Property

    07-30/000.   Section 5: Consent Searches

    07-31/000.   Section 6: Search of Vehicles and Occupants

                Execution of Search Warrants

    07-32/000.   Section 7: Definitions

    07-33/000.   Section 8: General Duties

    07-34/000.   Section 9: Time and Scope of Search

    07-35/000.   Section 10: Arrests During Search

## Procedures Chapter Three: Property/Evidence Handling

07-36/000.    Section 1: General Rules

07-37/000.    Section 2: Items Prohibited

07-38/000.    Section 3: Evidence

07-39/000.    Section 4: Found Property

07-40/000.    Section 5: Safekeeping Property

07-41/000.    Section 6: Property Disposition

07-42/000.    Section 7: Property in Pawnshops

## Procedures Chapter Four: Arrest Procedures Arrest Without Warrant

07-43/000.    Section 1: Definitions

07-44/000.    Section 2: General Procedures/Probable Cause

07-45/000.    Section 3: Offenses Committed in the Officer's Presence

07-46/000.    Section 4: Fresh Pursuit and Warrantless Arrest

07-47/000.    Section 5: Offenses Committed Outside Officer's Presence

07-48/000.    Section 6: Miscellaneous Warrantless Arrest Procedures

07-49/000.    Section 7: Illegal Alien Arrest Policy

Misdemeanor Field Release

07-50/000.    Section 8: Definitions

07-51/000.    Section 9: Operating Procedures

Execution of Arrest

07-52/000.    Section 10: Definitions and General Duties

07-53/000.    Section 11: General Procedures

07-54/000.    Section 12: Prisoner Rights

07-55/000.     Section 13: Prisoner Search

07-56/000.     Section 14: Prisoner Transportation

07-57/000.     Section 15: Prisoner Property

07-58/000.     Section 16: Arrest on Campus

07-59/000.     Section 17: Eyewitness Identifications

               Communications Between Police and Schools

07-60/000.     Section 18: General Provisions

Procedures Chapter Five: Use of Force

07-61/000.     Section 1: Purpose and Intent

07-62/000.     Section 2: Definitions

07-63/000.     Section 3: Use of Non-deadly Force

07-64/000.     Section 4: Use of Deadly Force/Firearms Discharge

07/65/000.     Section 5: Special Operations

07/66/000.     Section 6: Authorized Weapons

07/67/000.     Section 7: Carrying of Weapons

07-68/000.     Section 8: Discharge of Firearms

07-69/000.     Section 9: Discharge of Firearms Resulting in Injury or

               Death

07/70/000.     Section 10: Use of Force Review Procedures

Procedures Chapter Six: Patrol Procedures Handling Domestic Disturbances

07-71/000.     Section 1: Definitions-Domestic Disturbances

07-72/000.     Section 2: Family Violence and Protective Orders

               Handling Disorderly Conduct

07-73/000.    Section 3: Definitions-Disorderly Conduct

07-74/000.    Section 4: General Procedures-Disorderly Conduct

Handling Mentally ILL Persons

07-75/000.    Section 5: Definitions-Mental illness Situations

07-76/000.    Section 6: Guidelines

07-77/000.    Section 7: Procedures

Stops and Searches

07-78/000.    Section 8: Definitions-Stop and Frisk

07-79/000.    Section 9: Stops for Questioning

07-80/000.    Section 10: Frisks

07-81/000.    Section 11: Miscellaneous Patrol Procedures

Procedures Chapter Seven: Traffic Investigation/Enforcement

07-82/000.    Section 1: General Enforcement

- A. Uniform Traffic Enforcement Policy
- B. Racial Profiling
- C. Racial Profiling Report

07-83/000.    Section 2: Citations

- A. General Procedure When Issuing Citations
- B. Issuing Citations in Certain Traffic Accidents
- C. Permission to Instanter Ticket
- D. Officer's Presence or View
- E. Instanter Tickets to Municipal Court
- F. Procedure for Voiding Citations
- G. Procedure for Issuing
- H. Procedures for Dismissing or Reducing Charges

07-84/000.    Section 3: General Accident Investigation

- A. Accidents Involving Hazardous Loads
- B. Remain at Scene
- C. Statements

- D. Officer Assistance

07-85/000.    Section 4: School Bus Accidents

- A. Notification and Response
- B. Traffic and Administrative Authority and Responsibility

Procedures Chapter Eight: Emergency Driving/Pursuit

07-86/000.    Section 1: Purpose and Intent

07-87/000.    Section 2: Definitions

07-88/000.    Section 3: Vehicular Pursuit

07-89/000.    Section 4: Terminating The Pursuit

07-90/000.    Section 5: Use of Force in Vehicular Pursuit

07-91/000.    Section 6: Emergency Call Response

Procedures Chapter Nine: Radio/Communications Procedures

07-92/000.    Section 1: General Requirements

07-93/000.    Section 2: Call Response

Procedures Chapter Ten: Press Relations

07-94/000.    Section 1: Purpose and Intent

07-95/000.    Section 2: Major Incidents

07-96/000.    Section 3: Crime Scenes

07-97/000.    Section 4: Release of Information

07-98/000.    Section 5: District Spokesman

Procedures Chapter Eleven: Juvenile Procedures/Investigations

Child Abuse Investigation

07-99/000.    Section 1: Definitions

07-100/000.    Section 2: Abuse Indications

07-101/000.    Section 3: Reporting Child Abuse/Neglect

07-102/000.    Section 4: Response/Intervention

07-103/000.    Section 5: Criminal Investigation/Social Agency Cooperation

07-104/000.    Section 6: Emergency Removal Curfew Ordinance

07-105/000.    Section 7: Policy/Purpose

07-106/000.    Section 8: Enforcement Juvenile Arrest Procedures

07-107/000.    Section 9: Definitions

07-108/000.    Section 10: Application of Juvenile Arrest Procedures

07-109/000.    Section 11: Field Release Citations

07-110/000.    Section 12: Jurisdictions

07-111/000.    Section 13: Arrest Reports

07-112/000.    Section 14: Police Custody

07-113/000.    Section 15: Disposition on Arrestees

07-114/000.    Section 16: Minnie Rogers Juvenile Justice Center

07-115/000.    Section 17: Juvenile Court Status

07-116/000.    Section 18: Interviews

Procedures Chapter Twelve: Report Writing

07-117/000.    Section 1: General Rules

07-118/000.    Section 2: Victims

**07-01/000 General Provisions**

The Beaumont Independent School District Police Manual is established for the purpose of governing the operation of the Department.  Following are definitions of important words in the Manual, and also statements relative to the use of the Manual.

Manual.  The word "manual', as used herein, refers to the Beaumont Independent School District Police Manual.

**07-01/001. Administration.** The administration of the Beaumont Independent School District Police Department serves to direct the organization and its members toward the attainment of its stated goals and objectives.

**07-01/002. Department.**  The word 'Department" as used in this Manual refers to the Beaumont Independent School District Police Department.

**07-01/003. Policy.**  Policy consists of principles and values which guide the performance of a Police Department activity. Policy is not a statement of what must be done in a particular situation; rather, it is a statement of guiding principles which should be followed in activities which are directed toward the attainment of Police Department Objectives.

Policy is articulated to inform the public and the Police Department of the principles which will be adhered to in the performance of the law enforcement function. Additionally, policy establishes operational standard to assist Police Department employees in the necessary exercise of discretion in discharging their responsibility.

An officer in the performance of his duty is confronted with an infinite variety of complex situations which require police action. Since policy is objective rather than situation oriented, it is broad enough in scope to encompass most situations. Policy, therefore, must be stated in general terms.

**07-01/004. Procedure.** A procedure is a method of performing an operation, or a manner of proceeding on a course of action. It differs from policy in that it directs action in a particular situation to perform a specific task within the guidelines of policy. Both policies and procedures are objective oriented; however, policy establishes limits of action while procedure directs response within those limits.

**07-01/005. Objective.** An Objective is a desired end for which effort is expended and which, if attained, fulfills the purposes of the Police Department.  Within each objective, there maybe a number of ancillary objectives, each of which, if attained, contributes to the accomplishment of the police mission.

**07-01/006. Regulation.** A regulation is a conceptual guide arrived at through logical deduction by evaluating experience with a view toward attainment of objectives.  A regulation maybe of assistance in the exercise of judgment in a duty-related activity, and

11

may be both ethical and functional.

**07-01/007. Rule.** A rule is a specific prohibition or requirement which is stated to prevent deviations from policy or procedure. Rules allow little deviation other than for stated exceptions.

**07-01/008. Value.** A value is a quality of performance or accomplishment. Values are the basis for the determination of objectives and may be both ethical and functional.

**07-02/000.  ORGANIZATION AND ADMINISTRATION**

**07-02/000.1.  General Administration.** The Beaumont Independent School District Board of Education has established the Beaumont Independent School District Police Department as provided by Sec. 37.081 of the Education code. The Police Department is charged with the enforcement of all laws, including traffic laws and regulations. The Chief of Police and regularly sworn members of the police Department shall have all the powers as peace officers given by the statues of the State of Texas.

**07-02/002. Organization Of The Police Department.** The organization of the police department shall be made according to the general services which the Beaumont Independent School District Police Department provides. Inherent in these services are the ultimate intent and purposes of the mission of the police department. The current administration of the department shall organize based upon the specific and perceived needs of the Beaumont Independent School District. The organization of the department shall be made according to guidelines which will guarantee the most efficient and effective administration of the department for the purpose of meeting stated goals. The ultimate concern and direction of any entity with the organization of the police department shall be toward accomplishment of the police mission.

**07-02/003. Chain Of Command.** The relative ranks in position of officers in the department are designated below.

    1. Chief of Police

    2. Captain

    3. Sergeant

    4. Police Officer

**07-02/003.1 Chief Of Police.** The Chief of the Department of Police shall be known as the Chief of Police. The Chief of Police shall be appointed by the Superintendent of the Beaumont Independent Schools with a approval of the Beaumont Independent School Board.

**07-02/003.2 Authority and Responsibilities Of The Chief Of Police.** The Chief of Police is

responsible to the Superintendent or his designee for the proper enforcement of all laws, ordinances, regulations, and orders which the police have authority to execute. The Chief of Police is responsible for the maintenance of good discipline and supervision of police work and conditions of the department. The Chief of Police shall exercise such authority with regard to these things and as maybe directed by the Superintendent of Schools.

The Chief of Police shall recommend all applicants, subordinates and employees under his charge for employment or promotion, subject to the approval of the Superintendent of Schools and the, Beaumont Independent School District Board of Education.

The Chief of Police has the power to issue orders to officers and employees of the department as the Chief may deem proper, and it is the duty of members of the department to render the Chief and his orders implicit obedience as long as such orders shall conform with the law.

**07-02/003.3 Captain.** The Captain is responsible for staff and line oversight of the department. The Captain will carry out all administrative duties assigned by the Chief of Police and will have supervisory responsibilities for all district sergeants.

**07-02/003.4 Police Sergeant.** The Police Sergeant works under the supervision of the Chief of Police or the Captain. The Police Sergeant exercises working supervision over a number of police officers and/or exercises duties as a criminal investigator.

**07-02/003.5 Police Officer.** The Police/School Resource Officer patrols an assigned district and/or school to prevent crime and maintain a safe learning and working environment for students and staff. He/she will work under a sergeant and will perform crime prevention, law enforcement and traffic enforcement duties as needed or directed.

## RULES CHAPTER ONE: GENERAL RULES

**07-03/000.   SECTION 1: ORGANIZATIONAL RESPONSIBILITY**

**07-03/001.   DUTY TO KNOW/COMPLY**
All employees of the Beaumont Independent School District Police Department shall familiarize themselves with and comply with all rules, policies, and procedures of the District.

**07-03/002.   DUTY TO OBEY/ENFORCE LAW**
Violation of any Federal, State, or Local statute, rule, regulation, or policy of the Beaumont Independent School District will be considered an act of misconduct and may subject the employee to disciplinary action. The failure to comply with enforcement laws and policies may also subject the employee to disciplinary action.

**07-03/003.   CONSPIRACY/ATTEMPT**
Any employee who attempts to violate or knowingly conspires with any person to violate

a rule, regulation, or policy of the district shall be guilty as though the actual violation had been accomplished.

## 07-03/004.  PERJURY/MISREPRESENTATION
No employee shall knowingly or willfully misrepresent any matter, sign any false statement or report, perjure himself or herself or give false testimony before any court, grand jury, board, commission, official hearing or Department hearing.

## 07-03/005.  SUBVERSIVE CONDUCT
No employee, whether on duty or not, shall conduct himself in such a manner as would be subversive to the good order or discipline of the district.

## 07-03/006.  DUTY TO OBEY ORDERS
Employees of the district shall obey all lawful orders.

## 07-03/007.  CONFLICTING ORDERS
When an order is received which conflicts with a previous order, the conflict will be respectfully pointed out to the supervisor giving the latter order. The supervisor issuing the conflicting order will then determine which order will take precedence and will be responsible for any consequences resulting from his or her decision.

## 07-04/000.  <u>SECTION 2</u>: DUTY RESPONSIBILITY

## 07-04-001.  SUBJECT TO CALL
Any employee of the Department may be called to duty at any time when necessary regardless of the employee's regularly assigned duty hours.

## 07-04/002.  BEARING/ALERTNESS
All employees shall remain alert, observant, and occupied with district business during their tour of duty and shall not conduct themselves in a manner that would merit criticism for inattentiveness, slovenly bearing, or waste of time

## 07-04/003.  DUTY TO MAKE REPORT
It will be the responsibility of all officers to make a proper report of all offenses investigated, observed, or reported.

## 07-04/004.  WITHHOLDING INFORMATION PROHIBITED
No member of the Department shall intentionally withhold information relating in any way to actual or suspected criminal activity when such information might prevent the commission of a criminal act, facilitate an ongoing investigation, or expedite the apprehension of an offender.

## 07-04/005.  DEBT COLLECTION
No employee shall be involved in collection of debts or repossession of property other than just debts owed to or property owned by the employee. No part of the police uniform, credentials or authority will be used for this purpose.

## 07-04/006.   VICTIM/SUSPECT COMPROMISE
No employee shall initiate or influence a compromise or other monetary arrangement between a person charged with or suspected of a criminal offense and the person who had suffered by his or her act.

## 07-04/007.   DUTY TO PROVIDE ASSISTANCE
Members of the Department will make every effort to assist citizens with problems or inquiries, even though such problems or inquiries may not relate directly to the member's assigned duties or to the services normally provided by the Department.

## 07-04/008.   REQUESTS FOR NAME/BADGE NUMBER
An employee shall politely furnish his or her name and badge number upon the request of any person unless instructed otherwise by proper authority. Officers will not be required to furnish such information if doing so would interfere with a police operation.

## 07-04/009.   ABSENCE WITHOUT LEAVE
Failure to report for duty without notification of a supervisor or leaving a place of duty or assignment without proper authorization will be considered "absence without leave" and is strictly prohibited.

## 07-04/010.   COWARDICE
Cowardice or failure to perform duties because of danger may subject an officer to disciplinary action.

## 07-04/011.   UNNECESSARY VIOLENCE
It shall be prohibited for an officer to use unnecessary violence against any person.

## 07-04/012.   MALICIOUS PROSECUTION
It shall be prohibited for an officer to direct malicious prosecution against any person.

## 07-04/013.   INCITING VIOLENCE PROHIBITED
It shall be prohibited for any employee of the Department to verbally ridicule, taunt, or belittle a person or to do anything for the purpose of inciting a person to violence.

## 07-04/014.   INDECENT/HARSH LANGUAGE
The use of indecent, profane, or unnecessarily harsh language in the performance of official duties will be prohibited.

## 07-04/015.   USE OF INTOXICANTS
Drinking intoxicants while wearing the uniform of the Beaumont Independent School District Police Department is prohibited. Drinking or being under the influence of intoxicants while on duty will be prohibited unless such practices are authorized and necessary for the performance of police operations.

No employee shall keep intoxicants for strictly personal use in or upon any property or vehicle owned by the district.

15

**07-04/016.  INVOLVEMENT IN POLITICAL AFFAIRS**
While on duty, in uniform, or on property allotted to the use of the district, no employee may take part in any political campaign, campaign management, or the management of political affairs further than to cast his or her own vote or to privately express a political opinion.

**07-04/017.  BUSINESS CARDS**
Business cards which show a connection with the Department may only be used by employees in the performance of their duties. Such cards must not contain any information not directly pertinent to the Department or to the employee's assigned duties.

**07-04/018.  SALUTE TO FLAG/NATIONAL ANTHEM**
During public occasions, uniformed officers shall salute the National Colors and the playing of the National Anthem with the military hand salute unless engaged in the performance of an official duty requiring the officer's immediate attention. Members of the Department who are not in uniform will be required to render the same honors to the National Colors and the playing of the National Anthem as are customarily accorded by the general public.

**07-04/019.  RESTRICTED ACCESS TO RECORDS FILES**
Access to files within the criminal justice system will only be available to criminal justice employees.

**07-05/000.  <u>SECTION 3</u>: PERSONAL CONDUCT**

**07-05/001.  GENERAL CONDUCT**
Employees shall conduct themselves at all times, whether on or off duty, in a manner which would not publicly discredit the Department or any member thereof and which would not impair Departmental operations.

**07-05/002.  MEMBERSHIP IN ORGANIZATIONS PROHIBITED**
No employee shall become a member of any organization, association, movement, group, or combination having adopted a policy of advocating, approving, or committing acts of force or violence, the purpose of which is to deny others their constitutional rights. Nor shall an employee affiliate himself with any group or organization whose goal is the alteration of the government of the United States by unconstitutional means.

**07-05/003.  MEMBERSHIPS IN LABOR ORGANIZATIONS**
Any employee may join, organize, or maintain membership in any labor organization.

No employee shall participate in the activities of any labor organization while on property allotted to the use of the district. This restriction includes such activities as union solicitation, labor union meetings and distribution of union literature or use of official bulletin boards or use of official bulletin boards for labor union purposes.

**07-05/004.  PARTICIPATION IN PROTEST DEMONSTRATIONS**

16

No employee shall participate in any violent or illegal protest demonstration, nor shall an employee act as spokesman, representative, or agent for any group engaged in or planning to engage in any such demonstration.

## 07-05-005. DRUG USE
Employees shall only use or be under the influence of drugs which have been legally prescribed and/or obtained. Prescription drugs may only be used as directed by a physician or dentist.

## 07-05/006. TELEPHONE REQUIRED
All employees of the Department are required to maintain telephone service at their private residences.

## RULES CHAPTER TWO:   CONFLICTS OF INTEREST

## 07-06-000.   SECTION 1:  GENERAL PROVISIONS

## 07-06/001.   COMPENSATION OTHER THAN SALARY
No employee shall accept a fee or compensation of any type for any service rendered in the performance of Departmentally assigned duties other than the salary paid the employee by the district.

Any reward, money, or gift paid or sent to a member of the Department for services rendered in the performance of Departmentally assigned duties, other than the member's regular salary, shall be relinquished to the Chief of Police who will place it in the General Fund.

## 07-06/002.   ASSOCIATION WITH KNOWN OFFENDER
No employee shall borrow money from or accept any gift or favor from any person known or suspected of being a felon or habitual violator of the law. Furthermore, it shall be prohibited for any employee to maintain regular social contacts with such persons.

## 07-06/003.   RECOMMENDING SERVICES PROHIBITED
No employee shall recommend any professional service or business to persons contacted in the line of duty for the purpose of promoting or aiding the business or service.

## O7-06/004.   OFFENSES INVOLVING EMPLOYEE/EMPLOYEE'S FAMILY
No employee shall personally investigate any criminal offense involving the employee or the employee's family.

## RULES CHAPTER THREE: UNIFORM, DRESS AND APPEARANCE

## 07-07/000.   SECTION 1:  GENERAL UNIFORM RULES
## 07-07/001.  PURPOSE
Uniform, dress and appearance rules are established to present police personnel to the

public who are clean and neatly groomed, to instill a degree of personal discipline among officers, to assure easy recognition of officers in the field and to ensure that clothing and hair styles will not be a detriment to officer safety or job performance.

## 07-07/002.  UNIFORM CONDITION
Each officer, when in a duty assignment that requires the uniform, shall wear the standard issue uniform of the Beaumont Independent School District Police Department. All items used or worn as part of the uniform as well as any other issue equipment shall be clean and in good repair. All shirts, jackets and trousers shall be pressed. All leather gear, footwear, belt buckles, cap and shirt badges, cap bands and articles of insignia shall be highly polished.

## 07-07/003.  UNIFORM WEAR PROHIBITED
With the exception of time spent traveling to and from work, no officer shall wear the uniform while off duty.

## 07-07/004.  UNAUTHORIZED ARTICLES
No officer, while in uniform, shall wear on or as part of the uniform, any item of clothing or equipment not specifically authorized herein or by the Chief of Police or his designee.

## 07-07/005.  CARE AND MAINTENANCE
Each officer shall be responsible for the care and maintenance of uniforms and related issue equipment. If an officer loses, misplaces and/or through neglect, damages the uniform or other items, the officer will be responsible for the dollar value for repair or replacement of same.

## 07-07/006.  DUTY UPON SUSPENSION
No officer shall wear the uniform or be armed while under suspension. Upon being notified of suspension, an officer shall immediately surrender the badge, gun and identification card to the Chief of Police, Assistant Superintendent for Administration and Operations  or the  Superintendent of Schools.

## 07-07/007.  DUTY UPON TERMINATION
In the event an officer is terminated, resigns or retires, the officer is obligated to return the entire uniform inventory as well as any other issued items. All such items will be returned clean, dry cleaned if necessary, and in good repair. Allowances will be made for normal wear and tear.

## 07-08/000.  <u>SECTION 2:</u> GENERAL APPEARANCE

## 07-08/001.  ON DUTY APPEARANCE
Unless expressly authorized by the Chief of Police, all Department employees, when on duty, shall be clean, well groomed, and attired in clothing appropriate to their duty assignments.

## 07-08/002.  ALIGNMENT

When the uniform is worn, the shirt button flap shall be aligned with the zipper flap of the trousers. The equipment belt buckle shall be centered on the zipper flap of the trousers.

## 07-08/003.   JEWELRY

While wearing the uniform short sleeve shirt, no jewelry shall be worn around the neck which would normally be visible due to the open collar.

## 07-08/004.   UNAUTHORIZED OBJECTS

Items such as keys, matches, papers, etc. shall not be attached to, hung on or protrude from any portion of the uniform nor shall bulging objects be carried in the pockets of the uniform. Exceptions shall be made for writing instruments protruding from the slots provided for same on the shirt pocket.

## 07-08/005.   HAIR STANDARDS - MALE EMPLOYEES

On duty male employees shall keep their hair properly trimmed. The hair shall be at least moderately tapered, shall not extend below the top of the shirt collar nor cover any portion of the ear.

Sideburns shall not extend below the bottom of the ear nor be wider at the bottom than at the top and shall be neatly trimmed.

Mustaches shall be neatly trimmed and shall not extend below or beyond the corners of the mouth nor over the defined line of the upper lip.

Employees shall report for duty clean shaven. Beards will only be permitted for documented medical reasons or when required by the nature of the assignment.

## 07-08/005.1.   HAIR STANDARDS - FEMALE EMPLOYEES

1. The hair will be cut, styled or worn so that when standing, looking straight ahead, the hair will not extend more than three inches below the bottom of the collar in the back. Depth of hair may not exceed two (2) inches at any point.
2. Ponytails may be worn but may not extend more than three (3) inches below the bottom of the collar.
3. Hair will not be dyed an abnormal color.
4. The bulk or length of the hair will not interfere with the wearing of all issued headgear. The hair will be arranged in a manner that presents a neat, well groomed appearance. Hair will not flare out over the ears or protrude onto the forehead below the headband.
5. Wigs are acceptable if they meet the prescribed requirements for hairstyles.
6. Items used to hold the hair in place will be concealed as much as possible and will be black or midnight blue, or of a color and style that blends with the hair. Decorative ribbons or bows will not be worn.
7. The use of makeup by female officers, both uniformed and plain clothes, will be conservative.

## 07-08/006.   HEADWEAR

Officers may wear issued baseball caps only in uniform and only if kept clean and in good repair. Officers may wear the issued Winter caps with the issued cap badge attached. Approved black or navy blue watch caps which fit closely and do not have any type of ornamentation may be worn. The military style, dress cap shall be worn with the dress uniform with the issued cap badge and band attached.

All billed caps shall be worn squarely on the head with bills to the front and not cocked up or down. The bills on the baseball caps are not to be creased, tented, rolled or deformed in any manner. No pins, patches, or other items shall be attached to the caps.

## 07-08/007.   FOOTWEAR

Officers may wear low quarter, lace up shoes or lace up military style boots. Western style boots without laces are acceptable as long as the toe is rounded and there is no decorative stitching. Footwear shall be black, without distinctively colored stitching, logos, or designs. Officers shall wear black or navy blue socks with low quarter shoes. Officers may wear appropriate black footwear during inclement weather.

## O7-08/008.   UNIFORM JACKET

Each officer, when in uniform, may wear the Department issued jacket or a windbreaker of the same color and similar in design to the issued jacket.

## 07-08/009.   RAIN GEAR

Officers shall wear Department issued rain gear.

## 07-08/010.   DRESS UNIFORM

Officers attending formal functions in uniform such as funerals, weddings, or other occasions determined by the Chief of Police or his designee, will wear the dress uniform. Officers wearing the dress uniform will wear a long sleeve uniform shirt and an issued black neck tie. The military style dress cap shall be worn.

Officers who attend a scheduled court appearance will wear the uniform or business attire.

## 07-08/011.  UNIFORM SHIRTS

Officers have the option to wear either long sleeve or short sleeve uniform shirts throughout the year. If a turtleneck T-shirt is worn beneath the uniform shirt, it will be black or navy blue in color. If a crew neck T-shirt is worn beneath the uniform shirt, it will be white, black or navy blue in color.

## 07-08/012.  TROUSERS

Each officer, when in uniform, shall wear the Department issued uniform trousers. The trousers shall be hemmed so the legs reach at least to the top of the footwear heel, but not past the middle of the heal and outside the top of the footwear.

## 07-08/013.  BADGE

The Department issued shirt badge shall be worn attached to the uniform shirt in the area provided.

## 07-08/014. BODY ARMOR

**Purpose** - The purpose of this policy is to provide officers with guidelines for the proper use and care of body armor.

**Discussion** - It is the policy of this department to maximize officer safety through the use of body armor in conjunction with the practice of prescribed safety procedures. While body armor provides a significant level of protection, it is not a substitute for sound, basic safety procedures.

**Procedures**

### 07-08/014.1. Issuance of Body Armor

    a. All body armor purchased by the officer must comply with the current minimum protective standards prescribed by the National Institute of Justice, Level II A.
    b. All officers will provide their own body armor.
    c. Body armor that is worn or damaged shall be replaced by the officer. Body armor that must be replaced due to misuse or abuse by the officer shall be paid for by the officer.

### 07-08/014.2. Use of Body Armor

    d. Officers that are assigned to a uniformed function are required to wear the issued body armor while engaged in field activities while on or off duty unless exempted as follows:
        1. When an agency-approved physician determines that an officer has a medical condition that would preclude use of body armor;
        2. When the officer is assigned to perform an administrative function; or
        3. When the department determines that circumstances make it inappropriate to mandate body armor.
        4. Officers shall wear only agency-approved body armor.

### 07-08/014.3. Inspections of Body Armor

    e. Each officer shall be responsible for ensuring that their own body armor is worn and maintained as required by this policy by a periodic documented inspection of their employee's body armor. Each officer shall be responsible for inspecting their own body armor, completing the annual inspection form and submitting it to the Chief of Police by February 1st of each year.
    f. There shall be an annual inspection by the Chief of Police of all body

armor for fit, cleanliness, signs of damage, abuse and wear.

**07-08/014.4. Care and Maintenance of Body Armor**

> g. Each officer is responsible for the proper storage of body armor in accordance with manufacturer's instructions and daily inspection for signs of damage and general cleanliness.
> h. As dirt and perspiration may erode ballistic panels, each officer shall be responsible for cleaning his body armor in accordance with the manufacturer's instructions.
> i. Officers are responsible for reporting any damage or wear to the ballistic panels or cover to the Chief of Police.

**O7-09/000.  SECTION 3:  OPTIONAL EQUIPMENT**

**07-09/001.  PORTABLE TWO-WAY RADIO WITH CARRIER**
While in uniform, officers may carry a Department issued radio in a carrier. The carrier, if worn, shall be attached to the equipment belt and positioned on the side opposite from the holster.

**07-09/002.  BATON WITH CARRIER**
While in uniform, officers may carry a Department approved baton with which the officer has qualified. The carrier shall be attached to the equipment belt.

**07-09/003.  UTILITY KNIFE WITH CASE**
While in uniform, officers may carry a folding knife with a blade or blades up to five inches (5") in length. The case shall be specifically designed for the knife carried and shall be of the same color, design and construction as the equipment belt.

**RULES CHAPTER FOUR: EQUIPMENT RULES**

**07-10/000.  SECTION 1:  EQUIPMENT RULES**

**07-10/001.  RESPONSIBILITY**
Each employee will be responsible for the security of all property issued to him or her by the police department and/or school district.

**07-10/002.  REPAIR/ALTERATION**
Each employee shall promptly report the need for repairs to any police property, for which he or she is responsible, to the person officially designated for such maintenance.

No employee shall alter, repair or in any way change, add to, or remove any parts or accessories from district-owned property without permission. This includes building, office equipment, machines, clothing, firearms, communications equipment, or motor vehicles.

**07-10/003. LOSS**   In cases involving the loss of police or district-owned property, such losses will be reported as soon as practicable.

**07-10/004.  RESTITUTION/DISCIPLINARY ACTION**
Any employee who has lost, damaged or destroyed any equipment issued by the district may be required to make restitution and may be subject to disciplinary action if the loss or damage is the result of negligence on the part of the employee.

**07-10/005.  CLEANLINESS**
Each employee is responsible for the cleanliness of any auto, equipment, or work area assigned to them.

**07-10/006.  UNAUTHORIZED USE/OPERATION**
No employee will permit the use or operation of district owned or issued property or equipment by any person who is not employed by the district and/or who is not authorized to use such equipment.

**07-10/007.  CELLULAR PHONES**
Cellular phones are provided to officers for official use. Calls that are not business related must be documented. The school district must be reimbursed for the cost of those calls.

**07-10/008.  LONG DISTANCE TELEPHONE AND FAX**
Each employee is responsible for documenting long distance telephone calls and long distance FAX. Documentation must be on a form provided and forwarded to Chief of Police immediately.

**07-10/009. RADAR GUN**
The radar gun shall be kept in secure storage and shall be signed out on a roster by an officer for daily use. Each officer must have documented training prior to use of the radar gun. Traffic enforcement will take place on streets contiguous to schools, athletic fields or other district property, or as it relates to school buses.

**07-10/010.  SURVEILLANCE EQUIPMENT**
Any audio or visual surveillance equipment will be used only upon the authority of the Chief of Police , or  the building principal.  The Chief of Police will be notified if surveillance of a school is authorized by a school principal.

**07-11/000. SECTION 2:  GENERAL VEHICLE RULES**

**07-11/001. UNAUTHORIZED PASSENGERS**
Officers shall not have passengers in police vehicles as "observers" without prior approval.

**07-12/000. SECTION 3:  ASSIGNMENT OF VEHICLES**

23

**07-12/001.  PURPOSE AND INTENT**
The policy of assigning take-home police units to supervisors has been adopted for the following reasons:

    a.  To increase the number of police units available for response to crime scenes and other urgent calls for assistance.
    b.  To enhance the Department's ability to summon off duty officers in emergencies and have them report directly to sites where they are needed.

**07-12/002.  OFFICERS RESIDING OUTSIDE DISTRICT**
Officers who live outside the district limits will not be assigned a take home vehicle without written permission.

**07-12/003.  PERSONAL USE**
Assigned vehicles will only be used for transport to and from work or for official police business.

**07-12/004.  AUTHORIZED PASSENGERS**
Persons who are not members of the district may not accompany an officer as passengers in an assigned vehicle except on official police business.

**07-12/005.  AUTHORIZED OPERATORS**
Assigned vehicles will only be operated by Department personnel or authorized service personnel.

**07-12/006.  SPECIAL PRIVILEGES**
Officers will not presume special privileges with an assigned vehicle such as parking in "reserved" or "no parking" areas of apartment complexes without permission.

**07-12/007.  RADIO USE**
On-duty officers will operate assigned vehicles with their radios turned ON.

**07-12/008.  LIGHT DUTY, VACATION, OR OTHER LEAVE**
Officers on light-duty status or on extended sick leave or vacation may be required to leave assigned vehicles at the district office or at the garage.

**07-12/009.  UNATTENDED VEHICLES**
Unattended vehicles assigned to off-duty officers must be locked at all times. If radios are left in unattended vehicles, they are to be locked in the trunk.

**07-12/010.  MAINTENANCE**
An officer with a permanently assigned vehicle will be responsible for the maintenance, care and appearance of the vehicle.

**07-12/011.  REPAIRS/ALTERATIONS**
Mechanical repairs to an assigned vehicle will ONLY be performed by garage personnel

or by personnel at businesses contracted by the district for such.

Officers shall not add any type of non-issue equipment or make any type of alteration to the vehicle without the approval.

## RULES CHAPTER FIVE: COURT APPEARANCES

07-13/000.  <u>SECTION 1</u>:  MEMBER RESPONSIBILITIES

07-13/001.  INTERFERENCE WITH COURT
No member of the Beaumont Independent School District Police Department shall knowingly interfere with the efficiency or integrity of the administration of criminal justice nor, having knowledge of such interference, fail to report same to competent supervisory authority.

07-13/002.  AVAILABILITY
All employees of the Department shall be present and available to testify in any criminal court or before any Grand Jury in Jefferson County when officially notified to appear.

07-13/003.  NOTICE TO APPEAR
Official notice to appear in or before any criminal court or Grand Jury Jefferson County will include legal subpoena, posted docket list, or any form of written or verbal notice from any such court or Grand Jury.

Appearances in ANY civil court, or in criminal courts or grand juries outside Jefferson County will be made in response to legal subpoena only.

07-13/004.  UNABLE TO ANSWER NOTICE
Any employee who is unable to answer an official notice to appear in court due to illness, conflicting court schedules, vacations, etc. shall, at the earliest possible time, contact the court, Grand Jury, or Criminal District Attorney's office and seek to be excused.

In order to safeguard against possible misunderstandings, it is recommended that an employee make note of the persons name by whom he or she has been excused from court along with the date and time contact was made with that person.

In the event that an employee will not be able to appear in court and circumstances make it impossible for the employee to personally contact the court or CDA's office, he or she will make the situation known to a supervisor who will make all necessary notifications.

07-13/005.  FAILURE TO APPEAR
Unexcused failure to appear in court may subject an employee to contempt of court charges as well as district disciplinary action.

07-13/006.  LEAVING COURT
No employee shall leave a court or witness room before being officially excused without

first obtaining permission to do so from the prosecuting attorney or Grand Jury foreman.

**07-13/007. WRITTEN RECOMMENDATION**
If extenuating circumstances make it necessary for a member to make a recommendation regarding a change in penalty or case disposition, the member shall put his or her reasons for such recommendation in writing.

**07-13/008. DEFENSE ATTORNEY INTERVIEWS**
Defense attorneys wishing to interview members of the Department regarding pending cases or investigations will be referred to the appropriate prosecuting attorney who may arrange such interviews when necessary.

**07-13/009. MEMBER AS DEFENSE WITNESS**
Any employee of the Department who intends to testify for the defense in a criminal proceeding shall make this intent known to the appropriate prosecuting attorney as soon as practical. This rule shall not apply to cases wherein an employee or a member or his or her family is a criminal defendant.

**RULES CHAPTER SIX: OUTSIDE EMPLOYMENT GUIDELINES**

**07-14/000. SECTION 1: GENERAL PROVISIONS**

**07-14/001. GENERAL RESPONSIBILITY**
Departmental authority shall prevail at all times over the authority of any outside employer in regard to a member's police responsibility. No officer shall fail to enforce any ordinance or law at the direction of an outside employer.

**07-15/000. SECTION 2: DEFINITIONS**

**07-15/001. OUTSIDE EMPLOYMENT**
Outside employment is defined as the owning or operating of any private business or as any activity performed by a member of the Beaumont Independent School District Police Department for which compensation is received by an person from an employer other than the district.

**07-15/002. POLICE-RELATED OUTSIDE EMPLOYMENT**
Police-related outside employment is defined as any outside employment involving law enforcement or security related activities.

**07-16/000. SECTION 3: AUTHORIZATION**

**07-16/001. TYPES OF EMPLOYMENT AUTHORIZED**
Off duty employment must be authorized by the Chief of Police in writing.

**07-16/002. DISCIPLINARY SUSPENSION**
No member of the Department will be permitted to participate in police-related outside

employment while on disciplinary suspension.

**07-16/003. SICK LEAVE/LIGHT DUTY**
Officers on sick leave or light-duty status will not be permitted to engage in outside employment.

## PROCEDURES CHAPTER ONE: ADMINISTRATIVE RULES AND PROCEDURES

**07-17/000. SECTION 1: WRITTEN COMMUNICATION/ORDERS**

**07-17/001.1.** Transmittal of written, interdepartmental communications will be restricted to the following:
   a. General Orders
   b. Special Orders
   c. Memorandum

**07-17/001. 2. GENERAL ORDERS**

1. Will only be issued by, or as authorized by, the Chief Of Police, Assistant Superintendent Administration and Operations, or the Superintendent;
2. Will only transmit information having an essentially permanent effect on District rules, policies, or procedures; and,
3. Will be distributed to every officer of the Department who will be responsible for maintaining same in the Department Manual until removal is authorized.

**07-17/001. 3. SPECIAL ORDERS**

1. May, as authorized by the Chief of Police, Assistant Superintendent, Administration and Operations, or the Superintendent transmit information having a temporary effect on Departmental rules, policies, or procedures; or,
2. May be issued as a written command by a supervisor ordering a subordinate to perform a specific task or function.

**07-17/001. 4. MEMORANDUM**
A memorandum may be used by any member of the District to communicate information to any other person or group of persons affiliated with the school district. Information transmitted by memorandum may not change or create (but may reiterate) Departmental rules, polices, or procedures.

**07-18/000. SECTION 2: PERSONNEL RECORDS/INFORMATION/PERSONNEL PRACTICES**

**07-18/001. ADDRESS/PHONE NUMBER**
Every employee of the Department shall keep the District informed of his or her current address and telephone number. Any change in address or telephone number shall be reported, within twenty four (24) hours, to the office of the Chief of Police.

27

**07-18/002.  PERSONNEL FILE**
A personnel file of all departmental employees will be maintained in the office of the Chief of Police. The release of any information contained in the file to any person or agency is prohibited.

**07-18/003.  RELEASE OF INFORMATION PROHIBITED**
Personal information about employees such as addresses or phone numbers or lists of employee's names will not be released to anyone not affiliated with the District except as specifically authorized.

**07-18/004.  DISCRIMINATION**
It is the police of the Beaumont Independent School District Police Department that no member of the Department or person seeking employment therewith shall be appointed, reduced or removed, or in any way favored or discriminated against because of the person's race, religion, color, sex or national origin. Any such act of discrimination by a member of the Department will be grounds for disciplinary action.

**07-18/005.  SEXUAL HARASSMENT POLICY**
It is the policy of the Beaumont Independent School District Police Department to provide a working environment free of sexual harassment and intimidation consistent with the provisions of Title VII of the Civil Rights Act of 1964.

**07-18/006.  SEXUAL HARASSMENT**
Sexual harassment is unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature when:

1. Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; or,
2. Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting that individual; or,
3. Such conduct has the purpose or effect of substantially interfering with an individual's professional performance or creating an intimidating, hostile, or offensive employment environment.

All personnel shall take prompt and appropriate action upon learning of instances of sexual harassment or any other type of harassment involving employees of the Department.

False or frivolous allegations of sexual harassment will be subject to appropriate disciplinary action.

**07-18/007.  HARASSMENT PROHIBITED**
Any act of sexual harassment or any other act of harassment based on a person's race, color, religion or national origin wherein such an act would create an intimidating, hostile, or offensive working environment is prohibited.

**07-18/008. HARASSMENT COMPLAINTS**
Complaints concerning harassment of Department employees will be taken directly to the Chief of Police.

**07-19/000. <u>SECTION 3</u>: INTERNAL AFFAIRS POLICY/PROCEDURE**

**07-19/001. POLICY/DEFINITIONS**
It is the policy of the district to effect a system whereby allegations of misconduct against members of the department can be promptly and thoroughly investigated.

It is the policy of the district, through the equitable administration of employee discipline, to encourage voluntary and uniform compliance with district rules, policies, and procedures and to emphasize determination of underlying causes for unsatisfactory behavior.

**07-19/002. CONFIDENTIAL INFORMATION**
All written records, discussions and conversation pertaining to any internal investigation or Departmental personnel matter are confidential and not to be disclosed to anyone except as authorized.

Confidentiality of information pertaining to internal investigations is necessary protection against:

      1. Civil liability;
      2. Invasion of privacy;
      3. Violation of constitutional rights; and,
      4. The possibility of jeopardizing criminal investigations.

**07-19/003. MISCONDUCT**
Misconduct is failure to comply with, violation of, or conspiracy to violate any departmental rule, policy or procedure or failure to comply with any lawful order or directive issued by proper authority.

**07-19/004. ADMINISTRATIVE INVESTIGATION DEFINITION**
For purposes of this section, an administrative investigation will be defined as any investigation conducted to document the facts surrounding a possible act of misconduct.

**07-20/000. <u>SECTION 4</u>: INTERNAL AFFAIRS AUTHORITY/RESPONSIBILITY**

**07-20/001. INVESTIGATIVE DUTIES**
The Chief Of Police is authorized to:

      1. Investigate allegations of misconduct against a member of the Department made in the form of a formal complaint;
      2. Assist in the investigation of cases involving personal harassment, threats, false accusations, or contrived situations which pertain to any member of

29

the Department;

3. Direct, to the appropriate level, citizen complaints which do not meet the criteria for a formal complaint;
4. Investigate officer-involved shooting incidents;
5. Investigate allegations against Departmental personnel involving the commission of a criminal offense;
6. Investigate any situation where an officer has been killed or injured by the willful or deliberate act of another person, and;
7. Investigate any situation where a citizen has been killed or injured by an officer, whether on duty or not.

**07-20/002.   OFFICER INVOLVED SHOOTINGS**
The Chief of Police will conduct administrative investigations of officer-involved shooting incidents concurrent with but separate from any related criminal investigation conducted by the Jefferson County District Attorney Office.

**07-20/003.  CUSTODIAL DEATH REPORT**
It is the responsibility of the Chief of Police to complete a Custodial Death Report which will be sent to the Attorney General of Texas within twenty (20) days of the death of any person while in police custody. A person is considered to be in custody if a police officer has, by word or action, indicated that he is attempting to make an arrest, even if the person is not actual in custody.

Supplementary information that is required in the report must be filed within sixty (60) days to the Attorney General's office.

**07-20/004.  CRIMINAL GUILT/INNOCENCE**
The Chief of Police will NOT investigate differences of opinion over guilt or innocence relating to criminal charges, arrest, or traffic summons unless there is a specific allegation of misconduct against an officer.

**07-21/000.  SECTION 5:  CITIZEN COMPLAINTS**

**07-21/001.  FORMAL COMPLAINTS**
A formal complaint is an allegation of misconduct usually made by a citizen which, at the direction of the Chief of Police, an Assistant Superintendent or the Superintendent will be investigated by the Chief of Police and which could result in disciplinary action.

**07-21/002.  FORMAL COMPLAINT REQUIREMENTS**
The requirements of a formal complaint are as follows:

1. The complaint must allege a specific act of misconduct;
2. The complaint must be in writing and signed by the complainant, and;
3. The complainant must have first-hand knowledge of the incident in question.

**07-21/003.  SWORN STATEMENTS**

A sworn statement may be required from a complainant at the discretion of the Chief of Police.

## 07-21/004. ORAL COMPLAINTS

An oral complaint is an allegation of misconduct, made by a citizen, which does not meet the criteria for a formal complaint and which would not normally result in disciplinary action. Situations in which all criteria are met for formal complaints may be handled as oral complaints at the request of the complainant.

Every effort will be made by supervisory personnel to resolve oral complaints at the initial contact.

## 07-21/005. TIME LIMIT

Complaints against employees will not be accepted more than thirty (30) days after the alleged incident unless:

1. The act complained of is criminal violation in which case the criminal statute of limitations will prevail; or,
2. The complainant can show good cause for the delay.

## 07-21/006. CRIMINAL INVESTIGATION

If, at any point during an administrative investigation, it appears that a member of the Department has violated or may have been involved in the violation of a criminal law, the administrative investigation will cease.

## 07-21/007. OFFICER'S RIGHTS/OBLIGATIONS

During investigation of a complaint against an officer, the officer:

1. Has the right to have counsel present ONLY at interviews which deal with criminal violations.
2. Has the right to refuse to take a polygraph examination ONLY when he is accused of a criminal violation.
3. Will, at his request, be given a polygraph examination to aid in establishing the true facts of an allegation.
4. Will be given the Miranda warning ONLY when he is accused of a criminal violation.
5. Will be protected against invasion of privacy with regard to private property but NOT regarding police property such as vehicles, lockers, etc..
6. May be ordered to participate in a lineup without demonstration of probable cause in non-criminal investigations.

## 07-21/008. FAILURE TO COMPLY

Failure to answer questions, render material and relevant statements to or comply with orders from a competent authority during an administrative investigation could be grounds for disciplinary action up to and possibly including termination.

## 07-21/009.  COMPLAINT CLASSIFICATION

Upon conclusion of an administrative investigation, the Chief of Police will classify the complaint as one of the following:

1. Unfounded-allegation is false or not factual.
2. Exonerated-incident complained of occurred but was lawful and proper.
3. Not Sustained-insufficient evidence either to prove or disprove the allegation
4. Substained-allegation is supported by sufficient evidence.

## 07-21-010.  MEMBER NOTIFICATION

After a complaint has been classified and a course of discipline, if any, is determined, the member who is the subject of the complaint will be notified as to the outcome of the investigation and will be given a copy of any disciplinary order or reprimand. Copies of disciplinary orders or reprimands will also be placed in the member's personnel file.

## 07-22/000.  SECTION 6:  BUDGET GOALS AND OBJECTIVES

## 07-22/001.  EMPLOYEE INPUT

Prior to the annual budgeting process, the Chief shall seek input in the annual goal setting process from all levels of the full time employees under his command.

Each suggested goal will be concisely written by the submitting employee and information concerning what the goal is expected to accomplish, along with any justification, supporting information, cost savings, etc., shall be forwarded by the employee.

## 07-23/000.  SECTION 7:  FAIR LABOR STANDARDS

## 07-23/001.  EMPLOYEE COMPENSATION

Commissioned officers shall be compensated at 1 1/2 times for hours worked in excess of 40 hours per week.

## 07-23/002.  MEAL BREAK

Commissioned officers work day will normally consist of 8 1/2 hours, of which 1/2 hour shall be an uncompensated meal break. Officers will be available for calls during the meal break.

## 07-24/000.  SECTION 8:  AMERICANS WITH DISABILITIES

## 07-24/000.1.  PURPOSE

It is the policy of this department to ensure that a consistently high level of police service is provided to all members of the community including people who may require special consideration in order to access these services.

## 07-24/000.2.  DEFINITIONS

1. The term "qualified individual with a disability" means an individual who, with or without reasonable modifications to rules; policies or practices; the removal of architectural, communication, or transportation barriers; or, the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

2. The term "disability" means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such impairment; or being regarded as having such an impairment.

## 07-24/001.  VISUAL DISABILITIES

One of the most difficult issues facing people in need who are blind or vision impaired is identifying police officials. Employees should offer detailed information in identifying themselves as members of the Department. If needed, badges may be offered to the individual to verify the officer's identity.

Knowing what not to do is as important as knowing what to do to assist a person who is vision impaired. Employees do not need to raise their voice when speaking. Employees should not grab the person's arm to lead him or her in a particular direction. If needed, the individual will take the officer's arm for guidance.

## 07-24/002.  MENTAL, EMOTIONAL AND PSYCHOLOGICAL DISABILITIES

The terms "mental illness," "emotional illness," and "psychological illness," describe varying levels of a group of disabilities in thinking, feeling, and relating.

Providing accessibility to police services for people with mental, emotional, and psychological disabilities usually involves providing only general assistance. At times, exceptional police service and safe custodial care may be required.

Employees must ensure that people with mental, emotional, and psychological disabilities are assisted in accessing agency services, which may require time and patience beyond that usually provided. For example, time spent on a call for service may have to be extended in order to reassure the individual, sort facts, interact with family members and others, and bring the call to successful resolution.

If an individual with a mental, emotional, or psychological disability is taken into custody, employees must make reasonable efforts, while taking precautions, to use the least restraint possible and protect the arrestee from self-injury.

Frequently, a family member or friend is of great value in calming an individual exhibiting unusual behavior as a result of mental or emotional impairment. If needed, steps should be taken to gain placement for the individual in an appropriate emergency medical, health care, or shelter facility.

Officers must become familiar with appropriate government agencies, nonprofit agencies, volunteer organizations, and emergency medical services available to provide assistance to people with mental, emotional, and psychological disabilities.

Officers must remain familiar with appropriate emergency commitment/detention procedures to be used when providing shelter care and related support to people with mental, emotional or psychological disabilities.

## 07-24/003.  MENTAL RETARDATION

Mental retardation encompasses a broad range of developmental disabilities from mild to profound. Mental retardation and mental illness are distinct conditions, with no similarity. The largest percentage of people with mental retardation are in the ranges termed "mild" or "moderate."

Employees should recognize that people who have mental retardation have varied degrees of limited intellectual functioning. In all situations, employees should ask short questions, be patient when waiting for answers, repeat questions and answers if necessary, have individuals repeat the question in their own words, and provide reassurance. In many situations, and particularly when dealing with someone who is lost or has run away, the employee may gain improved response by accompanying the person through a building or neighborhood to seek visual clues.

In responding to the needs of people with severe or profound mental retardation, the aid of family, friends, and teachers is invaluable.

## 07-24/004.  MOBILITY IMPAIRMENT

Among the disabilities that are the most visibly identifiable are mobility impairments. People with mobility-related impairments include those who have difficulty walking, those who use a wheelchair or other mobility aid, and those who are immobile.

In a critical or emergency situation, employees should be aware of the safest and most rapid methods for assisting people with mobility impairments to avoid causing them unnecessary strain or injury.

## 07-24/005.  INVISIBLE DISABILITIES

Many disabilities are difficult to notice. A law enforcement officer's failure to recognize characteristics associated with certain invisible disabilities could have serious consequences for the person with the disability. For example, outward signs of a disability such as epilepsy generally do not exist unless the person with the disability experiences a seizure. People with diabetes may have reactions from either too little insulin or too much insulin. Low blood sugar reactions are common and are usually treated by ingesting sugar. Detaining someone and preventing them from getting sugar could have serious health implications for the individual and liability consequences for the officer and department.

Officers should realize that involuntary behavior associated with some invisible

disabilities may resemble behavior characteristically exhibited by intoxicated or, less frequently, combative individuals. For example, a person experiencing a mild seizure may appear incoherent and physically imbalanced. The response is temporary.
An officer's patience and understanding of the characteristics commonly associated with invisible disabilities will lead to a successful outcome. An inaccurate assessment may lead to unnecessary confrontation, injury, and denial of needed medication and/or medical treatment.

As with all types of disabilities, an employee's first obligation is to protect the individual from unnecessary harm. When aiding a person experiencing a seizure, protection from obstacles, a calm reassuring manner, and patience are important responses. Family members and friends should be sought to provide information and assistance. Their presence may prove invaluable in understanding the needs of the person with the disability and guiding the officer's actions.

## 07-22/006.  SPEECH AND HEARING DISABILITIES
Like other invisible disabilities, officers may confuse the behavior of individuals with hearing and speech disabilities with those of people who intentionally refuse to cooperate or those who abuse illegal substances. Officers should be aware that an individual's failure to comply with or respond to verbal orders does not always constitute defiance, but may be the result of that individual's inability to hear the officer or respond verbally. Before committing themselves to a course of action, officers should attempt to identify whether or not they are dealing with a person who has a communication-related disability.

It is essential that officers take extra measures to protect the rights of suspects who are deaf and hard of hearing, as well as others who may not have educational or communications comprehension levels sufficient to fully understand the basic Miranda rights. Simply reading the rights to someone with a hearing disability and having the individual acknowledge that they are understood is insufficient.

## 07-24/007.  OFFICER RESPONSIBILITY
In providing police service to the public, it is incumbent on every employee to ensure that people with disabilities are afforded all rights, privileges, and access to the Department provided to those without disabilities.

People with disabilities may also be suspects or arrestees and require detention, transport, and processing. Employees must familiarize themselves with the proper methods of transport, arrest, and detention to ensure officer safety while providing all reasonable support to an arrestee with a disability.

Employees must develop the ability to recognize the characteristics of various disabilities, including symptoms, and physical reactions.

Employees must recognize that responses of people with certain disabilities may resemble those of people who have abused substances such as alcohol or drugs. At

35

times, such traits may be exhibited by people with diabetes, epilepsy, multiple sclerosis, hearing impairments, and other disabilities.

Employees should be able to identify and apply appropriate responses, such as emergency medical aid, protecting and/or calming the individual, securing professional medical attention, locating and enlisting support of family and friends, and rendering proper physical support.

Officers should be able to identify and apply appropriate restraint to a person with a disability, if needed to facilitate an arrest. When affecting an arrest of a person with a disability, officers should be able to access the support systems necessary to secure the rights of the individual. This may include use of interpreters, attorneys, and legal guardians.

In all cases, officer safety must prevail. No employee should jeopardize his or her safety or that of others in an attempt to accommodate a person with a disability.

## 07-24/008.   ARREST AND INCARCERATION

Employees should employ appropriate precautions and safety techniques in arresting and incarcerating all people, whether or not they have a disability. Officers should follow all policies and standard techniques for arrest and incarceration when taking a person with disabilities into custody.

Consideration should be given to the special needs of some people with disabilities in an arrest situation. Response in these situations requires discretion and will be based, in great part, on the officer's knowledge of characteristics and severity of the disability, the level of resistance exhibited by the suspect, and immediacy of the situation. In arrest and incarceration situations, employees may encounter the following:

1. A person whose disability affects the muscular and/or skeletal system may not be able to be restrained using handcuffs or other standard techniques. Alternative methods (transport vans, seat belts) should be sought.
2. Some people with disabilities require physical aids (canes, wheel chairs, leg braces) to maintain their mobility. Once the immediate presence of danger has diminished and the suspect is safety incarcerated, every effort should be made to return the device. If mobility aids must be withheld, the prisoner must be closely monitored to ensure that his or her needs are met.
3. Prescribed medication may be required at regular intervals by people with disabilities (diabetes, epilepsy). Medical personnel (the suspect's physician, on-call medical staff, emergency room medical staff) should be contacted immediately to determine the importance of administering the medication, potential for overdose, etc.
4. Some people with disabilities may not have achieved communications comprehension levels sufficient to understand their individual rights in an arrest situation. (For people who are deaf, there is no sign language for the term "waive" in regard to the Miranda rights. Yet, in an effort to be

36

cooperative, a suspect who is deaf may acknowledge that he or she is willing to give up his or her rights.) Officers must take extra care to ensure that the rights of the accused are protected.

5. The booking officer shall be notified of an arrestee's disability, and medicine or aids shall be given to the booking officer.

**07-25/000. SECTION 9: HIV/AIDS IN THE WORKPLACE.**

**07-25/000.1. PURPOSE AND INTENT**
The policy of the Beaumont Independent School District Police Department is to safeguard, to the highest degree possible, employees and the public who have come in contact with persons who have, or are suspected of having a communicable disease.

Precautionary measures contained in this policy are necessary under certain specified conditions or as set out by law to minimize the risk of infection to employees or citizens. This policy ensures access to appropriate services and protects the confidentiality of medical records relating to HIV infection.

**07-25/000.2. TRAINING AND EDUCATION**
All sworn Police Department personnel will receive training and education relating to infection control procedures regarding HIV/AIDS and other communicable diseases.

**07-25/001. OCCUPATIONAL EXPOSURE**

1. Any officer who has been bitten by another person, suffered a needle stick from a used syringe, or has been splashed in the eyes with blood/body fluids, or who has had physical contact with any body fluids of another person, while in the performance of their official duties as a peace officer shall be considered to have been potentially exposed to a communicable disease.

2. The Chief of Police shall be immediately notified if an officer suffers an occupational exposure.

3. All necessary reports and injury forms shall be completed and forwarded to the appropriate persons within 72 hours of the incident.

4. To qualify for worker's compensation or any other compensation due to an occupational exposure, an officer must provide the following:
   a. A sworn affidavit of the date, location, and circumstances of the exposure, submitted within 30 days of the incident; and
   b. A person subject to the above section, who may have been exposed to a reportable disease, including HIV infection, may not be required to be tested.

5. If an officer suffers exposure and criminal intent to expose the officer to HIV/AIDS is present, the below listed procedure will be followed in addition to any other procedures already stated:
   a. Before a suspect/arrestee is asked to submit to a voluntary blood

37

> test for HIV, he shall be read his "Miranda" warning, explaining that the results of this blood test could be used against him in a criminal prosecution.
>
> b. If a suspect/arrestee refuses to voluntarily submit to a blood test, then a court order is done according to Chapter 81, Health and Safety Code, Section 81.050.

## 07-25/002.  CONFIDENTIALITY OF MEDICAL INFORMATION

The Beaumont Independent School District Police Department's policy regards all medical information, including test results and information about HIV/AIDS with the strictest of confidentiality. The health authority shall determine who needs to know this medical information and shall document its release and the reasons for its release in the medical record.

HIV status will not be released to any officer or to this Department unless written consent is first obtained from the individual suspected of having HIV/AIDS, and the consent specifically names that officer or the Beaumont Independent School District Police Department.

Based on the Federal Privacy Act, Texas Commission on Human Rights, and the Texas Communicable Disease Prevention and Control Act, information provided by an HIV-infected employee to medical or management personnel must be considered confidential and private information. Anyone with access to confidential information regarding an employee must maintain strict confidentiality and privacy. A breach of confidentiality may be cause for litigation which could result in civil and criminal penalties and/or appropriate disciplinary action.

## PROCEDURES CHAPTER TWO: CRIMINAL INVESTIGATIONS

## WARRANTLESS SEARCH AND SEIZURE

## 07-26/000.  SECTION 1:  DEFINITIONS

## 07-26/001.  ABANDONED PROPERTY

Discarded object or property (other than land) over which all persons have fully relinquished ultimate control and any reasonable ownership or privacy interest.

## 07-26/002.  ACCESS AREA

The (area also known as the area of immediate control) into which a person might reach in order to grab a weapon or destructible evidence.

## 07-26/003.  CURTILAGE

The yard and buildings which relate to domestic activities and surround a residence or dwelling place, generally including garages, sheds, outhouses, driveways, barns, fenced in areas around the house and the like. It does not include vehicles, commercial business structures or open fields surrounding a residence. For apartments or multi-unit dwellings,

it also does not include fire escapes, lobbies or common hallways.

**07-26/004.  CUSTODIAL ARREST**
A procedure in which an officer arrests and then transports a person to a detention facility to await bond or an appearance before a magistrate.

**07-26/005.  FRISK**
Jargon referring to a weapons search of a person, generally limited to a patdown of his outer clothing to ensure the safety of the officer and others.

**07-24/006.  OPEN FIELD**
Unoccupied land outside the curtilage of any dwelling, in which no person has a reasonable expectation of privacy.

**07-26/007.  PROBABLE CAUSE**
That total set of apparent facts and circumstances based on reasonably trustworthy information which would warrant a prudent person (in the position of and with the knowledge of the particular peace officer) to believe something, for example, that a particular person has committed some offense against the law.

**07-26/008.  REASONABLE SUSPICION**
An officer's rational belief, based on credible and articulable information and circumstances, that something may be true (e.g., that an offense may have occurred or that a particular person may have committed an offense).

**07-26/009.  SEIZABLE PROPERTY**
All property subject to seizure including unlawful weapons, drugs, and other contraband, stolen or embezzled property (fruits of a crime), equipment, devices, instruments and paraphernalia for committing an offense (instrumentalities), and evidence of a particular crime (mere evidence).

**07-27/000.  SECTION 2:  OBSERVATION, PLAIN VIEW AND SEARCH INCIDENT TO ARREST**

**07-27/001.  SEIZURE WITHOUT WARRANT**
An officer, without a warrant, may seize any seizable property if the situation satisfies ALL of the following requirements:

1. The officer lawfully occupied his vantage point when the property was observed,
2. The officer can observe and seize the property without unreasonably intruding on any  person's reasonable expectation of privacy,
3. The officer actually observes the property through his senses,
4. The property actually observed by the officer lies in open view,
5. The officer immediately realizes that the observed property is "seizable property"; and,

39

6.  The observation of the property occurred inadvertently.

When practical, and if the imminent destruction or removal of the property appears unlikely, an officer should obtain a search warrant. If necessary and practical, an officer may guard the property until the search warrant can be executed.

## 07-27/002.  SEARCH OF PERSON/ACCESS AREA

An officer may search a person incident to that person's lawful custodial arrest. An officer shall only conduct a "strip search" (which cannot include a search of body cavities or extend beneath the body surface) if there is probable cause to believe that such a search is necessary to detect seizable evidence of a particular crime or a hidden weapon.

An officer shall confine a search incident to an arrest to the person and that person's access area at the time of the arrest. An officer may also search beyond the arrestee's access area for other persons who the officer has reason to believe endanger the safety of the officers. The search shall be limited to locating and controlling the movements of such persons.

## 07-27/003.  PRETEXT FOR SEARCH

A officer shall not make an arrest, even though legal, as a pretext to search for evidence. An officer should not plan an arrest in order to create a particular opportunity to conduct a search incident to that arrest.

## 07-27/004.  SEARCH WARRANT WITH ARREST WARRANT

Whenever practical, an officer shall obtain a search warrant whenever he or she obtains an arrest warrant if there is probable cause to believe that seizable items will be found at the expected place of arrest.

## 07-27/005.  CUSTODY SEARCH

An arrested person may be searched during the booking process in order to:

1.  Remove any seizable property and items he/she might use to escape or to injure himself; and,
2.  Inventory and protect the property from damage or theft while he/she is incarcerated.

When an officer has probable cause to believe that a person has seizable evidence in his mouth, the officer may use reasonable force to recover the evidence.

## 07-27/006.  SEIZABLE PROPERTY IN VEHICLE

When an officer has probable cause to believe that a vehicle contains seizable property, the officer shall obtain a search warrant or a consent to search authorized by a person "with standing" for the vehicle. However, when it appears that delay in obtaining a search warrant would probably cause the destruction, removal or disappearance of seizable

property, the officer need not obtain a search warrant. In determining whether a search without a warrant is appropriate under this rule, officers should consider at least:

1. Whether the vehicle could be easily removed from the jurisdiction;
2. Whether any person might obtain access to the evidence believed to be in the vehicle;
3. Whether the nature of the evidence makes it likely to be destroyed by the passage of time or exposure to the elements; and,
4. The likelihood that any person with access to the vehicle would know of the intended search and be inclined to remove or destroy the evidence.

When an officer has grounds for such vehicle searches, any part of the vehicle may be searched in which the item sought could be located whether or not an arrest or search incident to that arrest was made. Such searches should be conducted at the place where the officer first locates the vehicle or at a more convenient location to which the vehicle has been moved.

Officers should not rely on vehicle inventories as a means to discover contraband or evidence in closed containers found in vehicles, since it might not be admissible in court due to a Court of Appeals decision.

## 07-27/007. VEHICLE ACCESS AREA

When appropriate under the circumstances, an officer who has lawfully stopped a suspect may order that suspect to exit his vehicle or otherwise to move a reasonable distance to a safer location before frisking him. An officer may make a limited weapons search of the suspect's access area if it is reasonably suspected that the access area contains a weapon which endangers the officer or others. The frisk may extend to the access area of an automobile if the suspect has exited the automobile and will reenter it prior to being released.

## 07-28/000. **SECTION 3:** LIMITED SEARCH/EMERGENCY CIRCUMSTANCES

## 07-28/001. IMMEDIATE ENTRY

In an emergency, an officer may enter a vehicle or other location without a search warrant if there is probable cause to believe that entry must be made to:

1. Aide persons in immediate danger of death or bodily injury; or,
2. Prevent, if appropriate, the imminent destruction of property or evidence.

Prior to involuntary or forced entry, and within the limits allowed by the particular emergency, the officer shall reasonably attempt to obtain voluntary admittance to the vehicle or other location. Following entry, the officer may search only to the extent necessary to carry out the purposes of the entry.

## 07-28/002. SEARCH UPON FRESH PURSUIT

An officer in pursuit of a fleeing suspected felon may pursue him into a vehicle or

premises in order to arrest him. Following entry, the officer may search the premises only to the extent necessary to locate the suspect and to protect himself and others. Once the suspect has been arrested, any further search must comply with the other rules of the chapter.

**07-29/000. <u>SECTION 4</u>: OPEN FIELDS/ABANDONED PROPERTY**

**07-29/001. SEARCH OF OPEN FIELD**
An officer may, without a warrant, search for and seize any seizable property found in an open field. However, an officer shall not commit criminal trespass.

**07-29/002. ABANDONED PROPERTY**
An officer may, without a warrant, search and seize any abandoned property.

**07-30/000. <u>SECTION 5</u>: CONSENT SEARCHES**

**07-30/001. MAY REQUEST CONSENT**
Whenever an officer wants to make a warrantless search, he or she may request consent to search from any person who has authority over the thing or place to be searched. The officer shall advise the person whose consent is sought that he has the right not to consent and that if he consents, anything found may be seized and used as evidence.

**07-30/002. WRITTEN CONSENT**
If appropriate, such as when the subject cannot read or write, an officer should attempt to have a neutral third party (such as a neighbor) explain these rights to that person. Whenever possible, an officer shall not conduct a consent search unless the authorized person consents and signs the Department Consent Form.

**07-30/003. CONSENT LIMITED/REVOKED**
If the consent to search is later revoked, the officer must immediately stop the search. If the consent to search is later limited, the officer must restrict it to the new limitation. However, the officer may still seize all seizable property discovered prior to the withdrawal or limitation of consent. In addition, an officer may then seek a search warrant.

**07-30/004. INVITATION NOT CONSENT**
An invitation to enter the premises does not give the officer consent to search.

**07-30/005. CONSENT FROM ARRESTEE**
An officer who seeks consent to search from a person in custody or under arrest shall inform the person that:

1. He has the right not to consent;
2. If he consents, anything found may be seized and used as evidence; and,
3. He has the right to consult with an attorney before deciding whether or not to consent.

42

**07-31/000.  SECTION 6:  SEARCH OF VEHICLES AND OCCUPANTS**

**07-31/001.  EXIT/FRISK**
When an officer lawfully stops a vehicle (e.g., when he or she reasonably suspects a traffic law violation) if he or she reasonably suspects that a person in that vehicle has a weapon on his person or in his access area, the officer should require that person to exit the vehicle and submit to a frisk.

**07-31/002.  CUSTODIAL ARREST OF PERSON IN VEHICLE**
Whenever an officer makes a custodial arrest of a person in a vehicle, the officer should search that person and his access area, for evidence and weapons. This search should occur at the time and place of the arrest. However, if the officer only issues a traffic citation to a person and than releases him, the officer shall not search that person beyond any frisk which may be authorized under these procedures.

**07-31/003.  SEIZABLE PROPERTY IN VEHICLE**
When an officer has probable cause to believe that a vehicle contains seizable property, the officer shall obtain a search warrant for the vehicle. However, when it appears that delay in obtaining a search warrant would probably cause the destruction, removal or disappearance of seizable property, the officer need not obtain a search warrant. An officer should consider at least the following factors in determining whether a search without a warrant is appropriate under this rule:

1. Whether the vehicle could be easily removed from the jurisdiction;
2. Whether any person might obtain access to the evidence believed to be in the vehicle;
3. Whether the nature of the evidence makes it likely to be destroyed by the passage of time or exposure to the elements; and,
4. The likelihood that any person with access to the vehicle would know of the intended search and be inclined to remove or destroy the evidence.

When an officer has grounds for such vehicle searches, any part of the vehicle may be searched where the item sought could be located whether or not an arrest or search incident to that arrest was made. Such searches should be conducted at the place where the officer first locates the vehicle or at a more convenient location to which the vehicle has been moved.

Officers should not rely on vehicle inventories as a means to discover contraband or evidence in closed containers found in vehicles, since it might not be admissible in court due to a Court of Appeals decision (Autran v. State; 09/94).

**EXECUTION OF SEARCH WARRANTS**

**07-32/000.  SECTION 7:  DEFINITIONS**

**07-32/001. CURTILAGE**
The yard and buildings which relate to domestic activities and surround a residence or dwelling place, generally including garages, sheds, outhouses, driveways, barns, fenced in areas around the house and the like. It does not include vehicle, commercial business structures or open fields surrounding a residence. For apartments or multi-unit dwellings, it also does not include fire escapes, lobbies or common hallways.

**07-32/002. EXIGENT CIRCUMSTANCES**
An emergency or unforeseen occurrence or combination of circumstances which requires an officer to act immediately. For example, exigent circumstances may exist if:

1. A wanted suspect may escape;
2. Bodily injury may occur;
3. Evidence will be lost or destroyed; or,
4. Serious damage to property, real or personal, may occur.

**07-32/003. MERE EVIDENCE**
Property or items (other than contraband, fruits of a crime or instrumentality of a crime) constituting evidence of an offense or tending to show that a particular person committed an offense.

**07-32/004. NEXUS**
Probable cause which, by connecting mere evidence to an offense, permits an officer to seize mere evidence even if the search warrant does not describe it.

**07-32/005. PROBABLE CAUSE**
That total set of apparent facts and circumstances based on reasonably trustworthy information which would warrant a prudent person (in the position of and with the knowledge of the particular peace officer) to believe something, for example that a particular person has committed some offense against the law.

**07-32/006. REASONABLE SUSPICION**
An officer's rational belief, based on credible and articulable information and circumstances, that something may be true (e.g., that an offense may have occurred or that a particular person may have committed an offense).

**07-32/007. SEARCH WARRANT**
A written order, issued by a magistrate (on a showing of probable cause) and directed to a peace officer, commanding him to search for any property, person or thing and to seize the same and bring the same before the magistrate. A search warrant may also be issued to search for and photograph a child who is alleged to be a victim of injury to a child, sexual assault or aggravated sexual assault of child as defined in the Texas Penal Code.

**07-33/000.  <u>SECTION 8</u>:  GENERAL DUTIES**

**07-33/001.  WARRANT MANDATORY**

Unless permitted under district regulations regarding warrantless search and seizure, an officer shall never conduct a search or seize property without a search warrant.

## 07-33/002.  PROPER FORM

An officer shall presume that any search warrant which appears in proper form is valid. To be in proper form and valid on its face, a search warrant must:

1. Run in the name of the State of Texas;
2. Identify the property to be seized and the person, place or thing to be searched;
3. Command any peace officer of the proper county to conduct the search immediately; and,
4. Be dated and signed by the magistrate.

An officer shall execute a valid search warrant as provided by law and by these rules.

## 07-33/003.  IMPROPER FORM

If the search warrant lacks proper form, the officer shall not execute it but return it to the issuing magistrate. A warrant lacks "proper form" if it appears on its face to be incorrect or if it contains significant error in identifying the place to be searched or the property to be seized.

## 07-33/004.  POSSESSION OF WARRANT

Whenever an officer executes a search warrant, the warrant shall be brought to the scene and exhibited to the person, if any, in charge of the premises.

## 07-33/005.  FALSE REPRESENTATION

In order to obtain consent to search, or otherwise, an officer shall never falsely represent to any person that a search warrant has been issued or that the officer can obtain a search warrant.

## 07-34/000.  <u>SECTION 9</u>:  TIME AND SCOPE OF SEARCH

## 07-34/001.  TIME ALLOTMENT

A search warrant shall be executed as soon as practical after it is received, but in no event more than three (3) whole days after it is issued. In calculating the days allowed for execution, the day of issuance and the day of execution are excluded.

A search warrant authorizes only one search of a premises. Therefore, an officer cannot search the premises again under the same warrant once the warrant has been executed and the officer has left the premises.

## 07-34/002.  TIME OF DAY

The time of day for executing the search warrant shall be based on the following rules:

45

1. Execute during daylight unless circumstances make this dangerous or impractical.
2. Execute when the property to be seized is most likely to be present.
3. Execute when resistance is least expected and best controlled.
4. Minimize the inconvenience to persons who may be on the premises to be searched unless other circumstances make this impractical.
5. Balance the safety, effectiveness and convenience of the officer and the occupants.

## 07-34/003.   PLACES OF SEARCH

An officer shall only execute the search warrant and make the search at a place described in the warrant. An officer may search all buildings or structures within the curtilage of the described place where the items sought may be kept.

If the warrant describes the place to be searched as a limited portion of larger premises, the officer may not extend the search to other, unnamed portions. The search warrant should specify any vehicles to be searched at the premises. If it does not, an officer shall not search vehicles found upon the premises unless the officer has independent probable cause and exigent circumstances exist.

## 07-34/004.   SEARCH FOR ITEMS/PERSONS

An officer shall only search for items described in the search warrant. An officer shall not search those places or things which could not contain or conceal the items described in the search warrant. Upon entering, however, officers may search the entire premises for concealed persons who could pose a threat to officer safety.

## 07-34/005.   ITEMS NOT NAMED

An officer may seize items not named in the search warrant but which are discovered during a lawful search if such items were found in a place reasonably within the scope of the search and the officer has probable cause to believe the items are:

1. Contraband;
2. Fruits of a crime;
3. Evidence of a crime; or,
4. Instrumentalities of a crime.

## 07-34/006.   PERSON ON PREMISES

An officer may search a person found upon the premises:

1. Incident to an arrest of that person in accordance with other Departmental arrest procedures;
2. If the warrant gives the name or a reasonable description of the person;
3. If the officer has reasonable suspicion that a particular person is armed and endangers the officer or other persons; or,
4. To prevent the disposal or concealment of any instruments, articles or other things particularly described in the warrant if the officer has a reasonable

46

suspicion that the person may have such items on his person. In determining whether reasonable suspicion exists, officers should consider:

A.  The nature and physical quality of the item sought;

1.  The ease with which the item may be disposed of if so concealed;
2.  Whether the officer has located the item on the premises; and,
3.  The relationship of the person to the premises, and to those in control of the premises.
4.  If the person arrives after the initial execution of the warrant and is named in the warrant, or if   independent probable cause is developed, or if exigent circumstances exist.

## 07-34/007.   DAMAGE TO PREMISES
Officers shall diligently attempt to prevent and minimize damage to the premises and property searched.

## 07-34/008.   RECORD/CHAIN OF CUSTODY
During the course of the search, the officer in charge shall keep a record of the date and time, the areas examined, who examined them, the items seized and where each seized item was found.

Each officer shall safeguard the admissibility of all seized property by protecting the chain of evidence. The officer who actually seizes a particular item shall mark that item with his initials and the date and time. That officer shall then turn over all seized items to the single officer in charge of the search, or his designee, who shall also mark all items seized and deliver them to the appropriate agency.

As to all items seized, the officer in charge shall furnish a departmental receipt to the person from whose possession or control they were taken. The officer in charge shall complete the "return" to the search warrant by attaching to it an inventory of the items seized and shall deliver the completed "return" to the magistrate.

## 07-34/009.   LEAVING PREMISES
An officer shall leave the premises as secure as possible. Unless unavoidable, an officer shall not leave the premises in disorder or disarray caused by the search.

## 07-35/000.   SECTION 10:  ARRESTS DURING SEARCH

## 07-35/001.   IDENTIFICATION OF SUSPECTS
In cases of combined warrants commanding both arrest and search at a premises, or where an officer reasonably suspects that an occupant may be named in an outstanding arrest warrant, an officer may require persons on the searched premises to identify themselves in order to determine whether the arrest warrant names that person. An officer may also require persons on the premises who witnessed the search or arrest to identify themselves.

47

An officer may arrest anyone on the premises who refuses to identify himself if the officer has reasonable suspicion that such person has committed an offense.

## 07-35/002.  SUSPECT NOT NAMED IN WARRANT
During the search an officer may inadvertently find and seize contraband or some other item which gives the officer probable cause to believe that an offense has been committed. This evidence may also provide an officer with probable cause to obtain an arrest warrant for one or more particular persons on the searched premises. There the officer finds it impractical to obtain a warrant, Departmental policy regarding arrest without a warrant should be followed.

## 07-35/003.  RESISTANCE/INTERFERENCE
An officer may arrest any person who attempts to escape or who forcefully resists or interferes with the lawful execution of a search warrant.

## 07-35/004.  ALTERATION OF WARRANT
An officer shall never alter the information on any arrest warrant In any manner.

## CHAPTER THREE: PROPERTY/EVIDENCE HANDLING

## 07-36/000.  SECTION 1: GENERAL RULES

## 07-36/001.  ITEMS REQUIRED IN PROPERTY ROOM
Items of evidence, contraband, found property or items seized for safekeeping which do not require laboratory analysis will be turned in to the Beaumont Independent School District Police Department Property Room within eight (8) hours of the time possession was taken of same.

## 07-36/002. TELECOMMUNICATIONS STORAGE
Pagers, cellular phones and other telecommunications items that are confiscated in compliance with the Texas Education Code will be placed in the BISD evidence depository within 24 hours of confiscation.

## 07-36/003.  D.P.S. LABORATORY
All property requiring laboratory analysis such as controlled substances, marijuana, blood samples, etc. will be taken to the DPS laboratory within the same time period as required for other property.

## 07-36/004.  PROPERTY TO OTHER AGENCIES
At such time as property is to be turned over to another agency such as the DPS lab, the property will first be taken to the Property Room. After an BISDPD property sheet is made, it can then be taken to the other agency.

## 07-36/005.  PURCHASE/ACCEPTANCE OF PROPERTY
It is prohibited for an officer to purchase, offer to purchase or accept as a gift the property of another while such property is in the custody of the Department or in custody

of any member of the Department.

## 07-36/006.  DAMAGED/LOST PROPERTY
An employee may be required to make restitution for loss of or damage to the property of another when such property is in the employee's possession by reason of his or her assigned duties.

## 07-37/000.  <u>SECTION 2</u>:  ITEMS PROHIBITED

## 07-37/001.  PERISHABLES
Food or other perishable items will not be accepted for storage in the Property Room. Such items will either be disposed of by the officer or, when possible, retained by the owner.

## 07-37/002.  EXPLOSIVES
Explosive devices or materials such as bombs, large quantities of gunpowder, etc. will not be accepted for storage in the Property Room. The Bureau of Alcohol, Tobacco and Firearms will be consulted for proper procedures for disposal of such items.

## 07-37/002.1.  EXCEPTIONS
This section does not pertain to storage of rifle, shotgun or handgun ammunition.

All commercially produced fireworks will be turned over to the City of Beaumont Fire Marshall.

## 07-37/003.  FLAMMABLES
Flammable liquids will not be accepted for storage in the Property Room. Such liquids, other than portions necessary for analysis, will be disposed of by the officer.

Acceptance of containers which might contain combustible fumes will be at the discretion of the Property Custodian.

## 07-37/004.  OFFICER OVERSIGHT
In instances where property has not been returned to a person due to an oversight on the part of an officer, that property will be returned to the owner by the officer.

Examples of such instances would be an officer who has forgotten to return a driver's license after a traffic stop, an officer who forgets to place a prisoner's pocket knife with the rest of his property at the jail, etc.

## 07-38/000.  <u>SECTION 3</u>: EVIDENCE

## 07-38/001. CHAIN OF CUSTODY
In cases involving seized evidence, the investigating officer will detail, within the crime report, the chain of custody of all such property including:

49

1. Who seized the property if seizure was made by someone other than the investigating officer?
2. The location and method of property storage before placement in the Property Room.
3. The name of the submitting officer if different from the investigating officer.

## 07-38/002.  MARKING EVIDENCE

When items of evidence are turned in to the Property Room, serial numbers from those items will be recorded in the investigating officer's written report. Items which have no serial number will be marked in such a manner as would not diminish their value.

## 07-38/003.  CHECK FOR STOLEN

In cases involving property which has been booked as "check for stolen", the property must be released after 90 days to the person from whom seizure was made if charges have not been filed.

Responsibility for notification of persons to reclaim such property will rest with the officer who confiscated the property.

## 07-38/004.  FIELD TESTING ON SUSPECTED CONTROLLED SUBSTANCES

Seizing officers will perform field tests on all suspected controlled substances, unless the sample is very limited in quantity such that laboratory confirmation might be jeopardized due to insufficiency of sample. Results of field test will be noted in a supplement.

## 07-38/005.  EVIDENCE IN MISDEMEANOR MARIJUANA AND PILL CASES

Evidence in these cases is to be kept in the property room until it becomes necessary for a laboratory analysis report. It shall then be the investigating officer's responsibility to take the evidence to the DPS laboratory. The laboratory will be able to complete analysis 24 hours prior to a trial or hearing.

## 07-39/000.  SECTION 4:  FOUND PROPERTY

## 07-39/001.  DUTY TO RETURN

At such time as an officer comes into possession of found property, an incident report will be made listing all items. Officers will make a reasonable attempt to return found property to the owner before placing it in the Property Room.

## 07-39/002.  MAY CLAIM FOUND PROPERTY

When property is found by a private citizen, he will be advised by the officer to whom the property is relinquished that if the property is not claimed by an owner within 60 days, he will then be given 30 days to claim the property himself.

**07-39/003.  MAY NOT CLAIM FOUND PROPERTY**
All valuable articles of property found by officers in the performance of their duties will be turned in to the Property Room and may NOT be claimed by the officer at a later time.

**07-40/000.  SECTION 5:  SAFEKEEPING PROPERTY**

**07-40/001.  VEHICLE INVENTORIES**
If, during a vehicle inventory, a valuable piece of property is found such as jewelry, cash, etc., such property will be placed in the property room safe for safekeeping.

**07-40/002.  WEAPONS**
Weapons or other objects voluntarily relinquished to officers in connection with a domestic disturbance for the purpose of minimizing the risk of future violence will be placed in the property room safe and classified as "safekeeping" property.

**07-41/000.  SECTION 6: PROPERTY DISPOSITION**

**07-41/001.  RELEASE OF PROPERTY**
All property except that documented on a BISD as evidentiary will be released according to the Beaumont Independent School District Police Department policy.

**07-41/002.  TELECOMMUNICATIONS DEVICES**
Devices confiscated as required by the Texas Education Code shall be documented on a Property Report. One officer shall be assigned as the property control officer and shall administer the storage and disposition of the telecommunications device program. A notice shall be provided to the student's parent advising them of the $15 administrative fee due before the device can be released. If the device is leased from a company, a notice will be sent to that company advising them of the fee due for release of the device. No personal checks or credit cards will be accepted. Funds received for administrative fee will be placed in deposited according to BISD accounting procedures. Those devices not returned to the owner/company shall be documented on and sent to the appropriate department for disposal.  No device shall be so transferred for at least 30 days from the date of confiscation, or so long as the case is on appeal.

An BISDPD evidence envelope shall be properly and clearly filled out detailing the description and pertinent information concerning the device. The telecommunication device and removed batteries shall be sealed in the evidence envelope by placing the device inside, ensuring the clasp is securely fastened and tape is placed over the envelope opening. The officer shall place his or her initials and date over the tape then place the envelope in the property room evidence section.

The administrative report shall be submitted to the Police Chief. . Only the Police Chief, Captain, secretary are authorized to remove a device from the section.

**07-41/003.  FEDERAL FIREARM VIOLATION**
When a weapon is confiscated on a Federal violation, the Bureau of Alcohol, Tobacco and

51

**Firearms will be so notified by the officer who takes custody of the weapon.**

**07-42/000.   SECTION 7:  PROPERTY IN PAWNSHOPS**

**07-42/001.  HOLD ORDER**
**To place a hold on property found in a pawnshop, an officer must have probable cause to believe the property is stolen. The property must be identifiable by serial number or unique characteristics. The original form will be submitted to the Records and Communication unit for inclusion into relevant files. This form will contain the following information:**

1. **Date the hold order is effective;**
2. **Case number;**
3. **Description of the property placed on hold;**
4. **Expiration date of the hold order;**
5. **Signature of the officer placing the hold;**
6. **Date the pawnshop operator receives the written hold order; and**
7. **Signature of the pawnshop operator.**

**07-42/002.  HOLD TIME LIMITS**
**The expiration dates for holds are:**

1. **Cases originating with the Beaumont Independent School District Police Department or school district will not exceed thirty (30) days from the date the hold is initiated on the order for Pawnshop Hold.**
2. **When assisting another agency, the order for Pawnshop Hold will expire at the end of ten (10) day period from the date of initiation.**

**07-42/003.  INVESTIGATIVE RESPONSIBILITY**
**When an officer places a hold on pawned property alleged to be stolen, he shall conduct a follow-up investigation and articulate reasons for the hold in the proper reports. It is the responsibility of the officer initiating a hold on pawned property alleged to be stolen to notify the owner/operator of the pawnshop the date the hold expires and the current status of the property.**

1. **If criminal charges are filed as a result of the investigation, the investigating officer will take custody of the property by use of a search warrant or by voluntary compliance by the Pawnshop operator. The property will be placed in the Police Property Room as evidence where disposition will be determined by a magistrate of jurisdiction.**
2. **If insufficient evidence is developed for filing criminal charges, the investigating officer will file a detailed list of the property with a magistrate having jurisdiction for disposition of the property.**

**07-42/004.  SEIZURE OF PROPERTY**

Officers seizing pawned property alleged to be stolen will complete a Property Seizure and Receipt Form. Voluntary compliance by the owner/operator of the pawnshop is a prerequisite to use this form. Failure to voluntarily comply shall necessitate the need for a search warrant in lieu of a <u>Property Seizure and Receipt Form.</u>

A copy of the case report shall immediately be made to the magistrate having jurisdiction over the seized property. The report shall contain an inventory of property seized and its estimated value.

The form shall contain the following information:

1. Case report number;
2. Date of seizure;
3. Time of seizure;
4. Name of pawnshop owner/operator;
5. Address of pawnshop owner/operator;
6. Name of officer seizing the property;
7. Signature of pawnshop owner/operator; and
8. Description of property being seized.

The pawnshop owner/operator will be furnished a copy of the form at the time of seizure. The original copy will be submitted to the Records and Communications unit for inclusion into the appropriate file.

## 07-42/005. PROPERTY HEARINGS

The officer initiating the hold or physical seizure of the alleged stolen property will notify the victim and the pawnshop operator when no criminal charges are pending and that both have the right to a property hearing to determine who has the greater right to the property. If both parties want to proceed with the property hearing, the officer will furnish both with the Request for Restoration Form.

This form will contain the following:

1. Beaumont ISD. Police Department case number;
2. Date requested for property hearing;
3. Description and location of property in question;
4. Signature of the Petitioner requesting the hearing; and,
5. Names of all known persons with a vested interest in the property.

A magistrate of jurisdiction may conduct a hearing to determine the right of possession of the property on the petition of any person with a vested interest in the property.

When a property hearing is scheduled by a magistrate, the initiating officer will notify both parties of the time, date, and place of the hearing. <u>The Request for Restoration Form</u> may be hand delivered to the court by the officer or petitioner or it may be mailed.

**07-42/006. EXCEPTIONS**
Stolen firearms, confirmed by the originating agency, and upon probable cause, will be immediately seized and processed through the Beaumont Independent School District Police Department Property Room.

Firearms seized by a member of this Department will remain in the Police Property Room safe subject to the order of the proper court or magistrate.

## PROCEDURES CHAPTER FOUR: ARREST PROCEDURES

## ARREST WITHOUT WARRANT

**07-43/000.    SECTION 1:    DEFINITIONS**

**07-43/001.    ARREST**
The intentional seizure, whether actual or constructive, of a person or an officer acting under real or assumed legal authority, coupled with a recognition of the custody of the seized person, for the purpose of charging him with a criminal complaint.

**07-43/002. BODILY INJURY**
Physical pain, illness, or any impairment of physical condition.

**07-43/003. BREACH OF THE PEACE**
Any unauthorized and unwarranted act which involves violence, or which likely will provoke violence, and which significantly disturbs or threatens the peace and quite of a community.

**07-43/004. CLOSE PURSUIT**
An officer's immediate pursuit of a person, continuously or intermittently in the presence of the officer, in order to apprehend and arrest that person for the commission of an offense. (Procedures Chapter Eight on Emergency Driving/Pursuit defines and discusses "high-speed pursuit").

**07-43/005. CONTINUING MISDEMEANOR**
A misdemeanor which occurs over a period of time and without permission.

**07-43/006. FELONY**
An offense so designated by law or punishable by death or confinement in a penitentiary.

**07-43/007. FRESH PURSUIT**
Pursuit of a person without unreasonable delay, but not necessarily instantly or immediately, in order to apprehend and arrest that person for the commission of an offense. (Procedures Chapter Eight on Emergency Driving/Pursuit defines and discusses "high-speed pursuit").

**07-43/008. IN THE PRESENCE OF**

54

When an officer, through one or more of his five senses, has probable cause to believe that an offense is being committed, that offense occurs "in the presence of" that officer.

## 07-43/009. MISDEMEANOR

An offense so designated by law or punishable by fine, confinement in jail, or by both fine and confinement in jail.

## 07-43/010. OFFENDER

A person whom an officer has probable cause to arrest or detain.

## 07-43/011. OFFENSE

An act or omission, including misdemeanors as well as felonies, forbidden by law and for which, on conviction, the law prescribes a punishment.

## 07-43/012. PROBABLE CAUSE

That total set of apparent facts and circumstances based on reasonably trustworthy information which would warrant a prudent person (in the position of and with the knowledge of the particular peace officer) to believe something, for example, that a particular person has committed some offense against the law.

## 07-43/013. SERIOUS BODILY INJURY

Bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

## 07-44/000. SECTION 2: GENERAL PROCEDURES/PROBABLE CAUSE

## 07-44/001. TIME TO OBTAIN WARRANT

An officer who has reasonable time and opportunity to obtain an arrest warrant shall do so. An officer shall not make a warrantless arrest except as provided in these rules or otherwise expressly authorized by statute. Although the authority to arrest without a warrant is entirely statutory, an officer should exercise restraint in resorting to this authority.

## 07-44/002. GENERALLY SUSPICIOUS CONDUCT

Generally suspicious conduct not suggesting a specific kind of criminal conduct is alone insufficient to establish probable cause to arrest. In order to establish probable cause, an officer may further investigate suspicious conduct.

## 07-44/003. PROBABLE CAUSE TO ARREST

An officer may have probable cause to arrest a person without a warrant if the officer knows that such person committed an offense, even if the officer does not know which particular offense was committed. To establish probable cause, the officer does not need proof beyond a reasonable doubt that a person has committed an offense. Probable cause only requires that amount of evidence which reasonably shows that a person probably or most likely committed an offense.

55

## 07-44/004.  OFFICER MUST ARTICULATE

When an officer relies on information from an informant to establish probable cause, the officer must be able to articulate:

1.  His reason(s) for believing the informant to be reliable; and
2.  The underlying circumstances from which the informant concluded that a particular person committed an offense.

## 07-44/005.  GOOD FAITH

An officer's good faith will not alone justify an invalid arrest.

## 07-44/006.  CORROBORATION

If circumstances permit, an officer shall seek some corroboration or confirmation of the information received from a victim or witness. For example:

1.  The officer shall determine whether the victim or witness was able to observe and remember what happened.
2.  Visible results of an offense can help confirm whether an offense occurred.

Where the circumstances suggest that the victim's or witness' allegations may be untrue, the officer shall investigate further before making an arrest without a warrant. The more doubt an officer has about the victim's or witness' veracity, sincerity, or ability to perceive, the more the officer will need to confirm the information.

## 07-44/007.   REQUEST BY ANOTHER OFFICER

An officer may make an arrest without a warrant when requested to do so by another officer, provided that the arresting officer has no reason to doubt that the officer requesting the arrest has probable cause to make that arrest.

## 07-45/000.   SECTION 3:  OFFENSES COMMITTED IN THE OFFICER'S PRESENCE

## 07-45/001.  OFFENSES COMMITTED IN OFFICER'S PRESENCE

An officer acting within jurisdiction may, without a warrant, arrest an offender for any offense committed in the presence of that officer.

## 07-45/002.  ARREST OUTSIDE JURISDICTION

While outside his jurisdiction but within the state, an officer may, as a private citizen, arrest a person without a warrant for a felony or for an offense that breaches the peace which occurs in his presence or view.

## 07-45/003.  CRIME SCENE JURISDICTION

The responsibility in a preliminary criminal investigation should remain with the agency that began the investigation if the incident occurs in their jurisdiction. BISD police officers will not conduct investigations unless the crime or incident originated in the jurisdiction of the Beaumont Independent School District Police Department.

**07-46/000.   SECTION 4:   FRESH PURSUIT AND WARRANTLESS ARREST**

**07-46/001.   VEHICULAR PURSUIT**
This section discusses fresh pursuit as a concept relating to warrantless arrest.
Procedures Chapter Eight discusses vehicular pursuit.

**07-46/002.   ARREST AFTER FRESH PURSUIT**
A peace officer may, in accordance with this chapter, pursue an offender and arrest him
without a warrant even:

1.  If the officer is outside his normal jurisdiction; and/or,
2.  After the offense has occurred.

**07-46/003.   USE OF FRESH PURSUIT**
An officer may, without a warrant, use fresh pursuit to pursue an offender who is
escaping from the officer's presence only in the following cases:

1.  When the officer has probable cause to believe that the offender has
    committed a felony; or,
2.  When the offender has, in the presence of the officer, committed a felony or
    misdemeanor which involves a breach of the peace, and a reoccurrence or
    continuation of the offense is likely.

**07-46/004.   FRESH PURSUIT PROHIBITED**
A peace officer shall not engage in fresh pursuit if at any time he or she delays such
pursuit for an unreasonable amount of time, or for an extraneous reason.

**07-46/005.   ARREST WITHIN STATE**
An officer may use fresh pursuit in order to arrest an offender anywhere within Texas.
(Procedures Chapter Eight discusses vehicular pursuits)

**07-47/000.   SECTION 5:   OFFENSES COMMITTED OUTSIDE OFFICER'S PRESENCE**

**07-47/001.   WARRANT UNNECESSARY**
An officer shall obtain an arrest warrant whenever there is reasonable time and
opportunity to procure one. An officer need not obtain an arrest warrant if it would result
in:

1.  The loss or destruction of evidence;
2.  The escape of the offender; or,
3.  Potential bodily injury to the officer or others.

**07-47/002.   ARREST AUTHORIZED WITHOUT WARRANT**
An officer is authorized to make a warrantless arrest of a person when:

1.  A magistrate verbally orders the officer to arrest the person if that person

57

has committed, in the presence of the magistrate, a felony or an offense which breaches the peace; or,

2. The officer finds a person in a suspicious place and under circumstances that give the officer probable cause to believe that such person:
   a. Has committed a felony;
   b. Has committed an offense which is a breach of the peace and which will likely continue;
   c. Threatens to commit some offense against the law;
   d. Is about to commit some offense against the law;
   e. Has committed the offense of violation of court order, PC 25.08, pertaining to Family Violence.

## 07-48/000.   <u>SECTION 6</u>:   MISCELLANEOUS WARRANTLESS ARREST PROCEDURES

### 07-48/001.  MISDEMEANOR - TIME DELAY
An officer shall obtain an arrest warrant in order to arrest someone who committed a misdemeanor in the presence of that officer, if that officer did not immediately make the arrest:

1. At the time the misdemeanor occurred;
2. While there was a continuing danger of a renewal of the misdemeanor, if it was a breach of the peace.

### 07-48/002.  FELONY-TIME DELAY
An officer shall obtain an arrest warrant if a felony is committed in the officer's presence and the suspect is not arrested within a reasonable time, under the circumstances, after the offense occurred. A delay in making the arrest is reasonable when:

1. Necessary to overcome resistance by the offender;
2. Necessary for the safety of the officer or others; or.
3. The officer is in fresh pursuit of the offender.

### 07-48/003.  MIRANDA WARNING
The officer shall ensure that the person arrested knows that he is being placed under arrest. When appropriate, the officer should read the arrested suspect the Miranda warnings. If the suspect is in custodial arrest, an officer cannot question the suspect without first reading the Miranda warnings.

### 07-48/004.   OFFICER IDENTIFICATION
When not in uniform, an officer making an arrest shall display his badge (and/or other suitable identification) and state that he or she is an officer.

### 07-48/005.  INFORM ARRESTEE
When not impractical, the officer shall inform the person being arrested of the following factors:

1. That the officer intends to take him into custody; and,
2. The reason for the arrest.

## 07-48/006.  INCAPACITATED SUSPECT
The officer may place an unconscious, mentally ill, or injured person under arrest even though such person is incapable of understanding that he is under arrest.

## 07-48/007.  APPEARANCE BEFORE MAGISTRATE
Each arrested person shall be taken without unnecessary delay before a magistrate of the county where the arrest was made.

## 07-49/000.  SECTION 7:   ILLEGAL ALIEN ARREST POLICY

## 07-49/001.  STOP/DETENTION PROHIBITED
School District Police Officers may not stop, detain, question or arrest a person solely on the suspicion that the person is or may be an illegal alien or otherwise in violation of Federal immigration laws.

## 07-49/002.  ARREST CRITERIA
An officer may only arrest illegal aliens for violation of State Law and/or City Ordinances and only when such probable cause exists as would permit the arrest of any other person under similar circumstances.

## 07/49/003.  TIME RESTRICTION
If an officer stops a person who he or she reasonably suspects may be involved in violation of statutes which fall within that officer's authority of enforcement AND the officer also suspects that the person is in violation of immigration laws, the officer may notify an agent of the Immigration and Naturalization Service (I.N.S.) and may detain the suspect only for a reasonable time (e.g. 30 minutes) until the agent arrives.

## 07-49/004.  TRANSPORTING ILLEGAL ALIENS
Once an I.N.S. agent arrives and places a person under arrest, that person may be transported to the Jefferson County Jail by a School District police officer at the agent's request.

## 07-49/005.  I.N.S. UNABLE TO RESPOND
In cases where an I.N.S. agent is unable to respond and the person is not placed under arrest for other charges, the officer may write an incident report including the circumstances under which the suspect was stopped, probable cause to believe the suspect to be an illegal alien, and all personal information regarding the suspect. Such incident reports will be marked for distribution to Border Patrol.

## 07-49/006.  ARREST - OTHER CHARGES
If an officer arrests a person for violation of a statute which falls within that officer's authority of enforcement AND there is reason to believe that the person is in violation of immigration laws, the officer will then type or write "Notify Border Patrol" at the top of the

suspect's booking card.

**Responsibility for notification of an I.N.S. agent regarding a prisoner who is also suspected of being an illegal alien rests with County Jail personnel.**

**07-49/007.   IMMIGRATION HOLD**
**Only agents of the I.N.S. have the authority to place an "Immigration Hold" on persons suspected of being in violation of Federal immigration laws.**

**07-49/008.   U.S. DEPARTMENT OF STATE NOTIFICATION REQUIRED**
**In some cases, U. S. International Treaty obligations require notification to foreign authorities when foreign nationals are arrested or otherwise detained in the United States.**

1. **The arresting official should in all cases immediately inform the foreign national of his right to have his government notified concerning the arrest/detention.**
2. **In the foreign national asks that such notification be made, an officer should do so without delay by informing the nearest consulate or embassy.**
3. **Foreign consular officials have a treaty right to visit their arrested/detained countrymen unless the arrestee/detainee objects to such visits.**
4. **In the case of certain countries, immediate notification is mandatory regardless of whether the arrestee/detainee so wishes. These countries are:**

| | |
|---|---|
| **Antigua and Barbuda** | **Malta** |
| **Armenia** | **Mauritius** |
| **Azerbaijan** | **Moldova** |
| **Bahamas** | **Mongolia** |
| **Barbados** | **Nigeria** |
| **Belarus** | **Philippines** |
| **Brunei** | **Poland** |
| **Bulgaria** | **Romania** |
| **China (People's Republic)** | **Russia** |
| **Costa Rica** | **Saint Kitts and Nevis** |
| **Cyprus** | **Saint Lucia** |
| **Czech Republic** | **Saint Vincent and the Grenadines** |
| **Dominica** | **Seychelles** |
| **Fiji** | **Sierra Leone** |
| **Gambia** | **Singapore** |
| **Georgia** | **Slovakia** |
| **Ghana** | **Tajikistan** |
| **Grenada** | **Tanzania** |
| **Guyana** | **Tonga** |

| | |
|---|---|
| Hong Kong | Trinidad and Tobago |
| Hungary | Turkmenistan |
| Jamaica | Tuvalu |
| Kazakhstan | Ukraine |
| Kiribati | United Kingdom |
| Kuwait | U.S.S.R. |
| Kyrgyzstan | Zambia |
| Malaysia | Zimbabwe |

**5. NOTE:** All information was effective 7/12/99. If a person from any of these countries is arrested, and information is needed, call the numbers listed below.

U.S. Department of State: (202) 647-4415
After hours: (202)663-0812
Fax: (202)647-4802.

**6. Dimplomatic Immunity**

It is the policy of the U.S. Department of State with respect to alleged criminal violations by persons with immunity from criminal jurisdiction to encourage law enforcement authorities to pursue investigations vigorously, to prepare cases completely, and to pursue investigations vigorously, to prepare cases completely, and to document properly each incident so that charges may be pursued as far as possible in the U.S. judicial system.

When an officer is called to the scene of a criminal incident involving a person who claims diplomatic immunity, the following steps should be followed:

1. Verify the status of the suspect.  The suspect should have a State Department issued identification card.  Contact the U.S. Department of State to receive verification.

2. Once Status is verified, if the suspect has personal inviolability (protection against handcuffing, detention, arrest and searches), the suspect must be released.  In a case where public safety is in imminent danger, officers may intervene to the extent necessary to halt the criminal activity.

3. A complete report of the incident in accordance with mormal police procedures should be made.  A copy of the report should be faxed to the Department of State in Washington D.C.

4. Traffic citations. Persons enjoying inviolability may be issued

61

traffic citations. However, the person cannot be compelled to sign the citation. A copy of the citation should be forwarded to the Department of State.

## MISDEMEANOR FIELD RELEASE

**07-50/000. SECTION 8: DEFINITIONS**

**07-50/001. FIELD RELEASE CITATION**
The official departmental form that an officer issues to a violator and which states the offense allegedly committed. The Citation also contains both (1) a waiver of arrestee's rights to appear without unnecessary delay before a magistrate, and (2) a "notice to appear" that obligates the violator to appear at a stated time and place to face the charges against him.

**07-50/002. CUSTODIAL ARREST**
A procedure in which an officer arrests and then transports a person to a detention facility to await bond or an appearance before a magistrate.

**07-50/003. FIELD RELEASE**
A procedure in which an officer arrests the violator but immediately releases him after the violator signs the Citation's waiver and written notice to appear.

**07-50/004. IDENTIFICATION RELEASE**
A procedure in which an officer arrests the violator and takes him to be identified; the violator has a set of fingerprints and a photograph taken (also known as "printed and mugged"); and the violator secures his immediate release by signing the Citation's Waiver and Notice to Appear.

**07-50/005. MISDEMEANOR**
An offense so designated by law or punishable by fine, by confinement in jail, or both fine and confinement in jail.

**07-50/006. VIOLATOR**
Any person at least 17 years old whom an officer arrests, without an arrest warrant, for violating a municipal ordinance or committing a Class C misdemeanor other than a traffic violation.

**07-51/000. SECTION 9: OPERATING PROCEDURES**

**07-51/001. FIELD RELEASE AUTHORIZED**
An officer may use field release only if all the following factors are present:

1. The officer witnessed the violation of a Class C misdemeanor or municipal ordinance;
2. The violator has a local address and sufficient personal identification;

3. The officer has no articulable reason to believe that the violator will fail to appear;
4. The officer has no articulable reason to believe that after field release, the violator will likely suffer injury, continue the violation, or commit a more serious violation;
5. The violator is not the subject of an outstanding arrest warrant;
6. The officer has no reason to suspect that the violator is involved in a more serious offense; and
7. The violator voluntarily signs the notice to appear.

## 07-51/002.  IDENTIFY AND RELEASE AUTHORIZED

An officer may "identify and release" a violator when factors 1, 3, 5, and 7 (section 9A) are present but:

1. Removing the violator from the scene of the incident appears necessary to prevent a further or more serious violation; or
2. The violator lacks a local address or sufficient personal identification; or
3. The violator, though suspected of other offenses at the scene of arrest, is cleared after further investigation at the station before appearing in court; or
4. The violator should be fingerprinted or photographed.

## 07-51/003.  CUSTODIAL ARREST

An officer shall make a custodial arrest of a violator in all situations not covered by Section 9 A & B.

An officer may utilize a field release in instances in which the Jefferson County Jail will not accept the person as a prisoner. In such incidents, paperwork will be completed as in an arrest situation except that the release and the reason for release will be noted in the offense report.

## 07-51/004.  FIELD RELEASE CITATION

Where the officer makes a field release or an identification release, the officer shall use the Field Release Citation. An officer shall comply with the following procedures in completing the Citation:

1. The front of the Citation shall include the violator's name, address, and other pertinent information.
2. List each charge on a separate Citation.
3. For a field or identification release, the appearance date must not be more than twelve (12) days after the arrest.
4. For a field or identification release, the officer shall request the violator a duplicate copy of the Citation.
5. Any Citation issued involving a Class C Misdemeanor under the Penal Code requires a Crime Report.
6. An appropriate complaint shall be filed with the proper court as soon as practical.

**07-51/005. FIELD RELEASE CITATIONS - EDUCATION CODE**
Class C violations of the Education Code may be cited into Municipal Court or Justice Court. Criminal Trespass shall be coded as 561; other Education Code violations shall be cited as code 576.

## EXECUTION OF ARREST WARRANTS

**07-52/000.  SECTION 10:  DEFINITIONS AND GENERAL DUTIES**

**07-52/001.  PROBABLE CAUSE**
That total set of apparent facts and circumstances based on reasonably trustworthy information which would warrant a prudent person (in the position of and with the knowledge of the particular peace officer) to believe something, for example, that a particular person has committed some offense against the law.

**07-52/002.  REASONABLE SUSPICION**
An officer's rational belief, based on credible and articulable information and circumstances, that something may be true (e.g., that a person might be armed or involved in past, present, or future criminal activity).

**07-52/003.  ARREST WITHOUT WARRANT PROHIBITED**
Unless permitted under the preceding sections of this chapter, an officer shall never arrest anyone without an arrest warrant.

**07-52/004.  ALTERATION OF WARRANT**
An officer shall never alter the information on any arrest warrant in any manner.

**07-52/005.  VALIDITY OF WARRANT**
An officer shall presume that any arrest warrant, which appears in proper form, is valid. To be in proper form and valid on its face, an arrest warrant shall;

1. Issue in the name of "The State of Texas";
2. Specify the name of the person whose arrest is ordered (if name unknown, specify some reasonably definite description);
3. State that the person is accused of a named state offense; and
4. Be signed by the magistrate (whose office must be named).

**07-52/006.  OFFICER RESPONSIBILITY**
No employee of the Police Department will remove, hold, or willfully refuse or fail from neglect to execute any warrant that is made his duty by law to execute.

A court issued complaint is not an arrest warrant and will not be treated as such.

**07-52/007.  IMPROPER FORM**
If the arrest warrant lacks proper form, the officer shall not execute it but shall return it to

the magistrate who issued it.

## 07-52/008. VERIFICATION OF WARRANT

If an officer has any questions about the details or current validity of an arrest warrant, the officer shall attempt to verify the information on the warrant before making an arrest based on such warrant. Whenever practical, an officer shall automatically verify the currency of any arrest warrant.

## 07-52/009. C.D.A. ASSISTANCE

In situations wherein arrest of a felony suspect without a warrant is prohibited by Criminal Code of Procedure, Chapter 14, officers may seek assistance in obtaining such arrest warrants from the Criminal District Attorney's Office. When such assistance is required during non-business hours, an on-call list of CDA's office personnel will be utilized.

The CDA's office on-call list may also be used for other necessary assistance such as obtaining search warrants, etc.

The list, which will be provided by the Criminal District Attorney, will be maintained by each officer. In the event that an on-call attorney cannot be reached the CDA or his first assistant will be contacted for assistance.

## 07-53/000. <u>SECTION 11:</u> GENERAL PROCEDURES

## 07-53/001. LOCATION OF WARRANT

An officer need not have actual physical possession of an arrest warrant in order to execute it. However, before executing a warrant not in his possession, the officer shall personally determine the location of the warrant and, upon request of the arrestee, shall ensure that the arrestee sees a copy of the warrant as soon as possible after his arrest.

## 07-53/002. ARRESTEE TO BE INFORMED

In executing an arrest warrant, whether or not the officer has the warrant in this possession, an officer shall announce to the person being arrested that the arrest is made pursuant to an arrest warrant. If the officer has the warrant in his possession it shall be shown to the arrestee. If the officer does not possess the warrant, the officer shall tell the arrestee the offense charged and where the warrant is.

## 07-53/003. INTERROGATION

Unless an officer has read the arrestee his Miranda rights, the officer shall not interrogate the arrestee.

## 07-53/004. TRAFFIC WARRANT

In executing a locally issued arrest warrant for a minor traffic offense (not including negligent homicide-reckless driving, or drug or alcohol offenses), and in lieu of taking the person into custody, a police officer may telephone the subject of the warrant and request him to present himself voluntarily at municipal court within a reasonable time.

## 07-53/005.  OTHER AGENCY'S WARRANT

If an officer has knowledge that another Texas law enforcement agency holds a valid arrest warrant for a particular person, that officer may arrest that person. If an officer seeks to arrest such person, the officer shall:

1. Arrest and book the person named in the warrant in accordance with Departmental procedures;
2. Notify the agency holding the warrant that this Department executed the warrant and give the location of the arrestee;
3. Have the arrestee appear before an appropriate magistrate; and,
4. Hold the arrestee as the magistrate prescribes, until releasing the arrestee to the custody or charge of the department holding the warrant.

An officer shall also execute an arrest warrant telegraphed under the authority of an appropriate non-local Texas magistrate (for further reference, see Code Crime. Pro. Ann. arts. 15.06, .07, and .08).

## 07-53/006.  FELONY WARRANT/OTHER STATE

An NCIC/TCIC indication that a person is wanted on an out-of-state felony warrant justifies a stop, detention, and arrest. However, if there are no other charges, the person should only be detained pending receipt of warrant confirmation. Immediately upon notification that a person is being detained, communications personnel shall notify the agency holding the warrant and request teletype confirmation including the court of issuance and recommended bond. Confirmation should be teletyped to both the Police Department and the Sheriff's office.

The length of detention should be governed by Section 11 I of the Procedure Manual. Should a person attempt to leave the detention site prior to receipt of confirmation, he should be taken into custody as per Section 11 J of the Procedure Manual and as authorized by Article 51.13, Section 14, of the Code of Criminal Procedure.

After receiving confirmation, the suspect shall be arrested and booked into the County Jail under the charge listed on the warrant.

If time permits, as in the case of a planned arrest for an out-of-state warrant, confirmation should be received prior to detention or the suspect. Only felony warrants shall be executed.

## 07-53/007.  MISDEMEANOR WARRANT/OTHER STATE

An officer shall not execute a misdemeanor arrest warrant issued outside Texas.

## 07-53/008.  RECORDS CHECK

Whenever an officer lawfully stops or otherwise detains and identifies a person, he or she may concurrently initiate a records check to determine whether any arrest warrant is outstanding against that person.

**07-53/009.  TIME PERIOD/RECORDS CHECK**
To conduct a records check, an officer may detain a person (who has been lawfully stopped) for a reasonable period of time for a routine records check by radio, telephone, teletype, or computer terminal.

The detention should not exceed more than thirty (30) minutes. However, detention may exceed thirty (30) minutes (but not more than a total of sixty (60) minutes) if the officer has a reasonable suspicion that a warrant is outstanding but, because of unusual circumstances, the officer does not receive the requested information within that time period.

**07-53/010.  DETENTION FOR RECORDS CHECK**
An officer may prevent a person detained for a warrant check from leaving the officer's presence. The person may be required to wait in the officer's vehicle, in his own vehicle or in some other convenient place.

The person may be frisked if the officer reasonably suspects that he may be armed. (See Procedures Chapter Six for more information regarding Stop and Frisk).

**07-54/000.  <u>SECTION 12:</u>  PRISONER RIGHTS**

**07-54/001.  PROTECTION OF RIGHTS**
All employees shall protect the rights of any prisoner held in custody.

No employee shall verbally abuse, mistreat or use unnecessary violence against any person in police custody.

**07-54/002.  INJURY TO PRISONER**
All officers will exercise due care to ensure that while prisoners are in their custody that they are not injured, whether by their own actions or the actions of others.

**07-54/003.  DUTY TO MAKE INJURY TO PRISONER REPORT**
It shall be the duty of the arresting officer's immediate supervisor to see that the proper injury report forms are completed before the end of the tour of duty in which the injury occurred.

**07-55/000.  <u>SECTION 13:</u>  PRISONER SEARCH**

**07-55/001.  SEARCH UPON ARREST**
All prisoners shall be thoroughly searched as soon as possible after their arrest. Contraband, evidence, or anything with which the prisoner might possibly injure himself or others shall be confiscated.

**07-55/002.  SEARCH OF OPPOSITE SEX**
Officers shall only conduct a visual, exterior search of prisoners of the opposite sex unless there is reason to believe a more extensive search is absolutely necessary for the

67

officer's personal safety.

When a prisoner has not been searched, the officer shall request that the prisoner be searched immediately upon arrival at the County Jail by someone of the appropriate sex.

**07-56/000.  SECTION 14:  PRISONER TRANSPORTATION**

**07-56/001.  PROCEDURE**
During transportation of prisoners in Department vehicles:

1. Prisoners shall be transported in the back seat.
2. Prisoner shields shall be utilized when reasonably available.
3. Prisoners shall be securely handcuffed with the hands placed back to back behind the prisoner.
4. The handcuff chain or one handcuff maybe looped through the prisoners belt or belt loop for extra security.
5. Seat belts shall be used to restrain the prisoner.

   EXCEPTION: Alternative methods for prisoner transport and/or restraint may be utilized under extraordinary circumstances, i.e. elderly, ill or handicapped prisoners, very young or, extremely combative prisoners, etc.

**07-56/002.  MILEAGE/TIME**
When transporting a prisoner of the opposite sex, each officer shall broadcast his or her vehicle mileage both prior to and at the end of such transportation. Following both "mileage" broadcasts, the radio operator shall respond with the correct time.

**07-57/000.  SECTION 15:  PRISONER PROPERTY**

**07-57/001.  EVIDENCE/CONTRABAND**
When taken from a prisoner, contraband or evidence shall be placed in the Department property room. All other personal property taken from a prisoner shall be secured and cared for in the manner designated by the Jefferson County Jail administration.

**07-57/002.  LOST/DAMAGED PROPERTY**
Any employee who has lost, damaged or destroyed any property belonging to a person in police custody may be required to make restitution if such damage or loss is the result of negligence on the part of the employee.

**07-57/003.  CONFLICTS OF INTEREST**
No employee shall purchase or accept as a gift, any article whatsoever from any person under arrest or police detention.

No employee shall recommend or suggest the name of any lawyer or bail bondsman to a prisoner for the purpose of assisting the prisoner in obtaining release or assisting in the prisoner's defense.

**07-58/000.   <u>SECTION 16:</u>  ARREST ON CAMPUS**

**07-58/001.   DISTRICT POLICY**
Board policies GRA and GRA (legal) provides standards for arrests on campus.

**07-59/000.   <u>SECTION 17:</u>  EYEWITNESS IDENTIFICATIONS**

**07-59/001.   FAIR AND IMPARTIAL**
Officers shall conduct all eyewitness identification procedures in a fair and impartial manner in order to avoid suggestiveness or influence on any witness. An officer shall not say or do anything that might suggest to a witness the guilt or innocence of a suspect.

**07-59/002.   TWO OR MORE WITNESSES**
When there are two or more witnesses, each witness shall view the suspect or the suspect's likeness and make an identification separate from the other witnesses. Witnesses should be instructed not to converse or otherwise communicate with any other witness about the identification until all of the witnesses have completed their respective identifications.

**07-59/003.   FIELD IDENTIFICATION WITH ARREST**
Suspects, arrested near the scene of an offense and within approximately one (1) hour of its occurrence, may be held at the location of arrest for identification by a witness or taken to a witness for identification.

**07-59/004.   CONDITION OF WITNESS**
Prior to using a field identification, an officer should consider the mental and emotional condition of the witness. For example, if the witness appears hysterical or disoriented, an officer should not hold a field identification but should use a lineup after an appropriate delay.

**07-59/005.   FIELD IDENTIFICATION WITHOUT ARREST**
If there is probable cause to arrest a suspect and the suspect consents to a field identification, the officer may conduct the field identification procedure without first having arrested the suspect.

Without probable cause to arrest a suspect, if an officer reasonably suspects that a person committed that offense, the officer may detain him for no more than 30 minutes in order to conduct a field identification. The witness shall be brought to the scene of the detention as soon as possible. Without the suspect's consent, the suspect shall not be taken to the witness' location. The suspect has no right to counsel at a field identification held during a temporary detention.

**07-59/006.   MEDICAL EMERGENCY**
Following the arrest of a suspect, an officer may arrange a field identification if a medical emergency exists and medical authorities approve. A medical emergency exists when a witness is in danger of death or blindness or the suspect is in danger of death.

**07-59/007.  MULTIPLE WITNESSES**
If there are two or more witnesses, to the extent practical, only one witness should view the suspect. The other witnesses should be used at a lineup to verify the identification.

**07-59/008.  WRITTEN RECORD**
The officer shall make a written record of the circumstances of the field identification which should include:

1. A description of the place where the field identification occurred including lighting   conditions;
2. The distance during the identification procedure between the suspect and the witness;
3. The number and identity of each witness who viewed the suspect;
4. The name of all persons present during the field identification; and,
5. All remarks made by witnesses, officers, the suspect or anyone else present during the field identification.

## COMMUNICATIONS BETWEEN POLICE AND SCHOOLS

**07-60/000.    SECTION 18:  GENERAL PROVISIONS**

**07-60/001.  LEGAL AUTHORITY**
The Texas Family Code mandates communication between law enforcement agencies and the district when a student is arrested or taken into custody on any of the offenses as enumerated in Texas Education Code 37.015; Reports to local law enforcement.

**07-60/002.  DEPARTMENT RESPONSIBILITY**
This department is responsible for the receipt and dissemination of custodial or arrestee information (oral and written) from police departments, sheriffs departments or any other agencies that arrests adults or juveniles, prosecutors, probation, and parole departments. Any employee receiving oral notification shall document same on the form provided, and shall immediately notify the effected school.

Receipt of written notification shall be documented on the form provided, and the written notification will be forwarded to the effected school no later than the next school day.

**07-60/003.  BEAUMONT INDEPENDENT SCHOOL DISTRICT POLICE DEPARTMENT ARREST**
Arresting officers are responsible for the oral and written notification, and for documentation of the notification.

## PROCEDURES CHAPTER FIVE: USE OF FORCE

**07-61/000.  SECTION 1:  PURPOSE AND INTENT**

**07-61/000.1.  PURPOSE**

The purpose of this policy is:

1. To identify when and to what degree a police officer is justified in using force; and,
2. To establish procedures for reviewing incidents involving the use of force.

## 07-61/001.    INTENT

The intent of this policy is to help officers make rational decisions when the need for action is critical and there is little time for meditation or reflection. Officers shall not unnecessarily or unreasonably endanger themselves in applying these rules to actual situations.

## 07-61/002.    DEPARTMENTAL USE

This policy is for Departmental use only and does not apply in any criminal or civil proceeding. Department policy should not be construed as a creation of higher legal standard of safety or care in an evidentiary sense with respect to third party claims. Violations of this policy will only form the basis for Departmental administrative sanctions. Violations of law will form the basis for civil and criminal sanctions in a recognized judicial setting.

## 07-62/000.    SECTION 2:  DEFINITIONS

## 07-62/001.    AUTHORIZED WEAPON

A weapon approved by the Beaumont Independent School District Police Department for official use by its officers. Weapon for on-duty use must be owned by the officer and approved by the Chief of Police. All weapon of the Department will be uniformed except for second weapons worn on the ankle or carried as a pocket weapon.

## 07-62/002.    BODILY INJURY

Physical pain, illness, or any impairment of physical condition.

## 07-62/003.    DEADLY FORCE

Force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

## 07-62/004.    DEADLY WEAPON

A firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury, or anything that in the manner of its use or intended use can cause death or serious bodily injury.

## 07-62/005.    NON-DEADLY FORCE

Force which, under the circumstances, is not reasonably capable of causing death or serious bodily injury.

## 07-62/005.    PHYSICAL STRENGTH AND SKILL

Any physical actions by one or more officers (e.g., holding, restraining, pushing and

71

pulling) which may include special skills (e.g., boxing, karate and judo) but do not include the use of deadly force or any authorized or other weapons.

**07-62/006.   PROBABLE CAUSE**
That total set of apparent facts and circumstances based on reasonably trustworthy information which would warrant a prudent person (in the position of and with the knowledge of the particular peace officer) to believe something, for example, that a particular person has committed some offense against the law.

**07-62/007.   SERIOUS BODILY INJURY**
Bodily injury that creates a substantial risk of death or causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

**07-63/000.   <u>SECTION 3</u>:  USE OF NON-DEADLY FORCE**

**07-63/001.   USE OF FORCE, GENERALLY**
In each individual event, lawful and proper force is restricted to only that force necessary to control and terminate unlawful resistance and to preclude any further physical attack against the police officers or any other persons.

In general, an officer must strive to achieve the following lawful objectives:

1. To preserve the peace, to prevent commission of offenses and to prevent suicide or self-inflicted injury;
2. To make lawful arrests and searches, to overcome resistance to such arrests or searches and to prevent escapes from custody ;
3. To prevent or interrupt an intrusion on or interference with the lawful possession of property.

**07-63/002.   REQUIREMENTS FOR USE OF FORCE**
Before an officer may use any force against any suspect, the officer must:

1. Have probable cause to arrest that suspect; and,
2. Manifest his purpose to arrest and identify himself as a peace officer (unless the officer reasonably believes that the suspect already knows his purpose and identity or unless the officer cannot reasonably make that information known to the suspect); and
3. Give the reason for the arrest, unless impractical.

**07-63/003.   APPLICATION OF FORCE**
An officer shall only apply force using the methods and weapons listed below. Unless impractical, an officer shall first exhaust every reasonable means of using the lowest level of force before escalating to a higher and more severe level of force.

1. Officer presence;

2. Verbal commands;
3. Physical strength and skill;
4. Chemical Agents;
5. Authorized baton;
6. Authorized service revolver, or other approved firearm with approved ammunition.

However, an officer may use any unauthorized weapon (or use any weapon in an unauthorized manner) if emergency circumstances make it necessary to do so.

## 07-63/004.   NO OBLIGATION TO RETREAT

An officer has no obligation to retreat or back down before resorting to the approved use of force. However, if it would not increase the risks to himself or others, an officer should consider retreat or withdrawal where delay (e.g., to secure assistance) could increase the likelihood of a peaceful arrest.

## 07-63/005.   BATONS

If the use of the baton becomes necessary, an officer shall:

1. Avoid knowingly using baton techniques capable of causing permanent injury;
2. Not raise the baton above the head to strike someone; and,
3. Deliver only those baton techniques to vulnerable areas of the human body designed to control and restrain or temporarily incapacitate the violator.

Officers must carry an approved baton and be trained in the proper use of batons.

## 07-63/006.   HANDCUFFS

An officer shall only carry Department approved handcuffs. An officer should always use approved handcuffs or other approved restraining devices on an arrestee, unless unnecessary (e.g., for the elderly, young juveniles, crippled, injured or other appropriate suspect). An officer should reasonably protect an arrestee from injury caused by handcuffs or other restraining devices.

## 07-63/007.   OLEORESIN CAPSICUM-PEPPER FOAM.

Officers shall carry only department approved pepper foam and shall be trained in the proper use of Chemical Aerosol Defensive Sprays.  It is the officer's responsibility to protect the arrestee from injury while under the effects of pepper foam.  The arrestee shall be decontaminated within a reasonable time period.

Prompt decontamination shall take place in an area that can reasonably be secured such as in the nurse's office, locker room, or restroom. Juvenile arrestees shall be transported directly to the MRJJC.

**07-64/000.  SECTION 4:  USE OF DEADLY FORCE/FIREARMS DISCHARGE**

**07-64/001.  USE OF DEADLY FORCE/FIREARMS DISCHARGE, GENERALLY**
It is the policy of this Department that officers shall attempt all reasonable means of apprehension and control within their command before resorting to the use of deadly force. However, an officer shall not unreasonably endanger himself in applying these rules in actual situations. Caution shall be exercised for the protection of other life and property whenever a weapon is discharged. Any incident involving an officer's use of deadly force or discharge of a firearm will be thoroughly, investigated and reviewed by the Firearms Review Board.

**07-64/002.  USE OF DEADLY FORCE**
Officers may use deadly force:

1. To defend themselves or other persons from what the officer reasonably perceives as an immediate risk of death or serious bodily injury: or,
2. To effect an arrest or prevent an escape when an officer reasonably believes the suspect or escapee has taken or endangered human life, or will endanger human life and alternative means have been attempted or would involve a risk of death or serious bodily injury to the officer or other persons.

**07-64/003.  JUSTIFICATION LIMITED TO FACTS KNOWN TO OFFICER**
Justification for the use of deadly force must be limited to what reasonably appears to be the facts known or perceived by an officer at the time he decides to use deadly force. Facts unknown to an officer, no matter how compelling, cannot be considered later to justify the use of deadly force.

**07-64/004.  PROHIBITED USE OF FIREARMS**
Officers shall not discharge their firearms under the following circumstances:

1. When the discharge of firearms or use of deadly force is not in accordance with the provisions of this chapter;
2. As a warning shot;
3. At the occupants of a moving vehicle unless the occupants are using or attempting to use deadly force against an officer or other person, unless authorized in Section 4 B.
   Furthermore, no officer shall position themselves in the direct path of any moving vehicle in an attempt to stop the vehicle. Positioning oneself in the direct path of any moving vehicle in an attempt to stop the vehicle will not justify the use of Deadly Force;
4. At a fleeing vehicle, recklessly fleeing vehicle or otherwise dangerously driven vehicle;
5. At a fleeing felon, unless authorized in Section 4 B.
   The assumption that a fleeing felon may escape and later arm themselves, does not authorize the use of deadly force as permitted in Section 4 B.
6. Firing into buildings or other places where a suspect is hiding unless:

74

a. The suspect is directing deadly force at police officers or others; and,

b. There is no doubt about the suspects location.

## 07-64/005.  DRAWING OF FIREARMS

Justification for the use of deadly force must be limited to what reasonably appears to be the facts known or perceived by an officer at the time they decide to use deadly force. Officers may draw or display a firearm when they have reason to fear for their own personal safety or the safety of others.

## 07-64/006.  RISK TO INNOCENT BYSTANDERS

To the extent an officer has reasonable time for consideration, he shall never use deadly force when it appears likely that an innocent person may be injured.

## 07-64/007.  DESTROYING INJURED ANIMALS

Officers are not authorized to destroy an injured animal.

## 07-65/000.  SECTION 5:  SPECIAL OPERATIONS

## 07-65/001.  STAKEOUTS

Officers taking part in a stakeout:

1. Shall notify the Dispatcher that the stakeout is taking place; and,
2. Shall consider the risk to innocent persons and take steps to ensure their safety before attempting to arrest a suspect at a stakeout scene.

## 07-65/002.  PLANNED ARREST AND SEARCH WARRANT SERVICE

This procedure shall be used when it is believed that the suspects at the arrest or search scene may forcibly resist the officers when the service is attempted.

Officers taking part in such planned arrest or search warrant services:

1. Shall notify the Dispatcher  that the arrest or search is taking place; and,
2. Shall consider the risk to innocent persons and take steps to ensure their safety before attempting the arrest or search.
3. Shall identify the group as police officers by having uniformed officers lead the entry into the premises.

## 07-66/000.  SECTION 6:  AUTHORIZED WEAPONS

## 07-66/001.  AUTHORIZED WEAPONS

An authorized firearm must be one of the following:

1. A Department issued or approved firearm with which the officer has qualified;
2. An auxiliary firearm, that:
   A. Has been certified for use by a certified firearms instructor;

      1. An officer has qualified with; and
      2. Is registered to an individual officer.
      3. An off-duty firearm that meets the requirements of an auxiliary firearm (see Section B above) and is either:
    B. A double action revolver
      1. with a minimum 2" barrel
      2. with a capacity of 5 or more rounds
    C. A semi-automatic pistol

## 07-66/002.  AUXILIARY FIREARMS
Officers may carry an authorized auxiliary firearm concealed from public view.

## 07-66/003.  ON DUTY FIREARMS
All officers, in uniform or civilian attire, shall be armed with the Department issued or approved firearm at all times when on duty.

Officer who desire to carry a firearm other than the Department issued or approved weapon must receive prior written approval from the Chief of Police.

## 07-66/004.   SHOTGUNS
Shotguns shall not be carried.

## 07-66/005.   EMERGENCY USE OF WEAPONS
An officer may use any weapon, authorized or unauthorized, if <u>emergency</u> circumstances make it necessary to do so.

## 07-66/006.  MODIFICATION OF WEAPONS
No officer shall in any material way modify or alter an authorized weapon.

## 07-66/007.  AUTHORIZED AMMUNITION
Officers shall carry ammunition that has been certified for use by the Police Chief. Ammunition carried shall not be altered in any way from its original condition.

## 07-67/000.  <u>SECTION 7:</u>  CARRYING OF WEAPONS

## 07-67/001.  CARRYING WEAPONS, GENERALLY
All weapons carried by an officer shall be approved by the Department and no officer shall carry any weapon without first being trained in its use.

## 07/67/002.  HOLSTERS
Firearms shall be carried in a Department approved holster.

## 07-67/003.  FIREARMS SECURITY
Officers shall provide maximum security for all firearms in their custody.

## 07-67/004.  CARRYING FIREARMS OFF DUTY

The carrying of a firearm off duty shall be at the option of the officer. The officer shall not be subject to disciplinary action if an occasion should arise in which he could have taken action but did not do so because he was unarmed.

An officer will be armed and prepared to initiate police action while operating a police vehicle.

When an officer anticipates that he will consume alcoholic beverages in an off duty situation, he is advised not to carry his firearm.

Any member of this Department found intoxicated and carrying a weapon, shall be subject to disciplinary action.

07-68/000.   <u>SECTION 8:</u>  DISCHARGE OF FIREARMS

07-68/001.   DISCHARGING FIREARMS, GENERALLY
Every discharge of a firearm by an officer, whether on or off duty, shall be reported and investigated, except for discharges:

      1. At firing ranges;
      2. At recognized sporting activities and hunting activities; and,
      3. For ballistics or scientific testing.

07-68/002.   REPORTING FIREARMS DISCHARGES
Whenever an officer, on or off duty, discharges a departmental firearm either accidentally or intentionally, he shall immediately or as soon as practical:

      1. Determine if any injury has occurred (if injury or death has occurred, the incident shall be handled under the procedures set forth in Section Nine this Chapter); and
      2. Notify the Police Chief or Assistant Superintendent of the incident and location.

The officer shall then:

      a. Remain at the scene, if practical;
      b. Protect the weapon for examination as evidence; and,
      c. Prepare a detailed report of the incident.

07-68/003.   DISCLOSING INFORMATION ABOUT AN OFFICER INVOLVED SHOOTING
All criminal investigations pertaining Beaumont  Independent School District Police Department Employees are confidential and are not to be discussed or disclosed to anyone except as authorized by the Chief of Police, Assistant Superintendent or Superintendent of Schools.

An officer involved in a shooting may discuss the incident with:

1. Supervisory and assigned investigative personnel;
2. The assigned District Attorney;
3. The Department psychologist and the officer's personal attorney, chosen clergy or other appropriate counsel and immediate family.

## 07-68/003.1.  REVIEW PROCEDURES

Officer involved shootings shall be reviewed under the procedures set forth in Section 10 of this chapter.

## 07-69/000.  <u>SECTION 9:</u>  DISCHARGE OF FIREARMS RESULTING IN INJURY OR DEATH

## 07-69/001.  DUTIES OF INVOLVED OFFICER

An on or off duty officer involved in a shooting resulting in injury or death, if not incapacitated:

1. Shall check the condition of any injured person and summon medical aid. Medical aid shall be summoned even that an injured person appears to be deceased.
2. Shall notify Communications of the incident and location.
3. Shall identify any witnesses and turn them over to backup units when they arrive.
4. Should remain at the scene for he arrival of the assigned investigators.
5. Shall protect his weapon for examination and submit it to the assigned investigators.
6. Shall prepare a detailed report of the incident after being released from the incident scene.

## 07-69/002.  ADMINISTRATIVE LEAVE

Upon completion of the preliminary report of the incident, an officer involved in a shooting resulting in injury or death shall be placed on administrative leave. Such leave:

1. Shall be without loss of pay or benefits, pending the result of the investigation.
2. Shall not be interpreted to imply or indicate that the officer has acted improperly.

While on administrative leave, the involved officer:

a. Shall be available during normal business hours for official interviews and statements regarding the incident.
b. Shall be debriefed by the Department psychologist.
c. Shall be subject to recall to duty at any time.

Upon return to duty, the officer may be assigned to "administrative duty" for a period of time if deemed appropriate.

**07-69/003.  PSYCHOLOGICAL SERVICES**
The psychological debriefing shall not be related to any Departmental investigation of the incident and nothing discussed in the briefing will be reported to the Department. The debriefing session(s) will remain protected by the privileged physician- patient relationship. If desired, the services of the Department psychologist may also be extended to include the involved officer's family.

**07-70/000.  <u>SECTION 10</u>:  USE OF FORCE REVIEW PROCEDURES**

**07-70/001.  EXCESSIVE FORCE ALLEGATIONS**
Use of excessive force allegations other than firearms will be investigated consistent with the procedures set forth in Departmental Procedures.

**07-70/002.  REVIEW PROCEDURES, GENERALLY**
The procedures in this section will be used to investigate <u>every</u> incident of a firearms discharge by a Department member except:

1. At firing ranges;
2. At recognized sporting activities or hunting activities; and,
3. For ballistics or scientific testing.

**07-70/003.  FIREARMS REVIEW BOARD**
The Firearms Review Board shall convene and review circumstances attendant to each discharge of a firearm by a Department officer. The board shall consist of:

The Chief of Police, Executive Director of Human Resources, and the Assistant Superintendent of Schools.

The Review Board shall evaluate in explicit and fact-finding fashion each aspect of an officer involved shooting. Such evaluation shall include:

1. A thorough review of the criminal investigation report;
2. A thorough review of the internal affairs report; and
3. Hearing of direct testimony, if necessary, from officers and witnesses.

   The review board will develop findings and make recommendations in the following areas:

   1. Whether the shootings was within policy, out of policy, or accidental;
   2. Tactical considerations;
   3. Training considerations;
   4. Quality of supervision.
   5. Discipline considerations;
   6. The post-shooting investigative processes and quality;
   7. The adequacy of the present use of force policy.

79

## PROCEDURES CHAPTER SIX:  PATROL PROCEDURES

## HANDLING DOMESTIC DISTURBANCES

**07-71/000.   SECTION 1:** DEFINITIONS - DOMESTIC DISTURBANCES

**07-71/001.   ASSAULT**
A criminal act which causes bodily injury to another, including one's spouse; a threat against another, including one's spouse.

**07-71/002.   BODILY INJURY**
Physical pain, illness, or any impairment of physical condition.

**07-71/003.   BREACH OF THE PEACE**
Any unauthorized and unwarranted act which involves violence, or which likely will provoke violence, and which significantly disturbs or threatens the peace and quiet of a community.

**07-71/004.   CHILD**
A person under 18 years of age who is not and has not been married or who has not had his disabilities of minority removed for general purposes.

**07-71/005.   DEADLY WEAPON**
A firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use can cause death or serious bodily injury.

**07-71/006.   DOMESTIC DISTURBANCE**
A dispute, whether of a civil or criminal nature, that occurs between members of the same family (or between persons who share a similarly intimate relationship) and results in contact with a law enforcement agency.

**07-71/007.   FAMILY**
Includes individuals related by consanguinity or affinity, individuals who are former spouses of each other, individuals who are the biological parents of the same child, without regard to marriage or legitimacy, and a foster child and foster parent, whether or not those individuals reside together.

**07-71/008.   FAMILY VIOLENCE**
Means the intentional use or threat of physical force by a member of a family or household against another member of the family or household, but does not include the reasonable discipline of a child by a person having that duty.

**07-71/009.   HOUSEHOLD**
Means a unit composed of persons living together in the same dwelling, whether or not

they are related to each other.

## 07-71/010.  IN THE PRESENCE OF
When an officer, through one or more of his five senses, has probable cause to believe that an offense is being committed, that offense occurs "in the presence of" the officer.

## 07-71/011.  INTOXICATION
Any disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

## 07-71/012.  PRIVATE PREMISES
A permanent or temporary personal residence including, but not limited to, a house, and the grounds immediately surrounding it, an apartment, a hotel room, and a trailer.

## 06-71/013.  PROBABLE CAUSE
That total set of apparent facts and circumstances based on reasonably trustworthy information which would warrant a prudent person (in the position of and with the knowledge of the particular peace officer to believe something, for example, that a particular person has committed some offense against the law.

## 07-71/014.  PUBLIC PLACE
Any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops.

## 07-71/015.  SERIOUS BODILY INJURY
Bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

## 07-72/000.  <u>SECTION 2:</u>  FAMILY VIOLENCE AND PROTECTIVE ORDERS

## 07-72/001.  DUTIES OF OFFICER
The primary duties of an officer who investigates a family violence allegation or who responds to a disturbance call that may involve family violence are to protect any potential victim of family violence, enforce the law, and when necessary, make lawful arrests of violators.

## 07-72/002.  FAMILY VIOLENCE REPORT
Officers who have reason to believe an offense involving family violence has occurred shall:

1.  Make a written report including visible or reported injuries, description of the incident, action taken, and the officer's assessment as to whether the arrested party poses a potential threat to the victim for further bodily injury without an extended "cooling off" period (in order for magistrate to

81

determine further detention requirements);
2. **Complete a Family Violence Form;**
3. **Issue a crime Victim's Bill of Rights manual; and**
4. **When appropriate, a Texas Crime Victim's Compensation Information form.**

## 07-72/003.   FAMILY VIOLENCE REPORT

An officer who has reason to believe that an offense involving family violence has occurred shall make a written report, including but not limited to:

1. **The names of the suspect and complainant;**
2. **The date, time, and location of the incident;**
3. **Any visible or reported injuries; and,**
4. **A description of the incident and a statement of its disposition.**

## 07-72/004.   ARREST FOR VIOLATION OF PROTECTIVE ORDER

Officers **may** arrest, without warrant, any person(s) who the officer has probable cause to believe has committed the offense defined by Section 25:07, Texas Penal Code (Violation of a Protective Order) if the offense is not committed in the presence of the officer.

Officers **shall** arrest if this offense is committed in the presence of the officers.

## 07-72/005.   VERIFICATION

If necessary to verify an allegation of a violation of a Protective Order, an officer shall follow procedures established under Section 71.18, Texas Family Code and Article 14.03(c), Texas Code of Criminal Procedure, without leaving the scene of the investigation if there is a possibility of the further commission of family violence.

**Officers may not arrest if the Order is a Temporary Ex Parte Protective Order given under section 71.15 of the Family Code.**

If conduct constituting an offense defined by Section 25.07, Texas Penal Code, also constitutes an offense under another section of the code, the actor may be prosecuted under either section or both sections. Reconciliatory actions or agreements made by persons affected by a Protective Order do not affect the validity of the Order or the duty of the officer to enforce the Order. An officer may not arrest a person protected by the Order for a violation of the Protective Order.

## HANDLING DISORDERLY CONDUCT

## 07-73/000.   SECTION 3:  DEFINITIONS - DISORDERLY CONDUCT

## 07-73/001.  DISORDERLY CONDUCT

Acts proscribed under the Texas Penal Code Annotated and analogous municipal ordinances as: Disorderly Conduct (Section 42.01), Public Lewdness (Section 21.07), Indecent Exposure (Section 21.08), Obstructing Highway or Other Passageway (Section 42.03), Disrupting a Meeting or Procession (Section 42.05), Public Intoxication (Section

42.08), Hindering Proceedings by Disorderly Conduct (Section 38.13).

## 07-73/002.  FIRST AMENDMENT ACTIVITIES

The lawful exercise by one or more persons of the constitutional right (without prior restraint or fear of arbitrary subsequent punishment) to assemble, to speak, or to engage in communicative behavior which expresses a point of view. Although first amendment activities usually involve political, social, economic, or religious ideas, issues or opinions, they are not limited to those topics.

## 07-74/000.  <u>SECTION 4:</u>  GENERAL PROCEDURES - DISORDERLY CONDUCT

## 07-74/001.  PREVENTIVE APPROACH

Officers should be primarily concerned with the maintenance of public order rather than the punishment of offensive conduct. Officers should take a preventive rather than punitive approach to the enforcement of disorderly conduct statutes.

## 07-74/002.  INTERVENTION

An officer shall not intervene in a disorderly conduct situation except as provided in this section.

## 07-74/003.  APPLICATION

This section applies only to disorderly conduct committed by individuals, not to the handling of riots as defined in Texas Penal Code, Section 42.02.

This chapter applies only when the individual's illegal behavior amounts to no more than disorderly conduct, as defined by these rules. This chapter does not apply where an officer has probable cause to arrest the offender for a more serious offense.

## 07-74/004.  LEAST INTRUSIVE METHOD

When intervening in disorderly conduct situations, each officer shall use the least intrusive method of intervention which will re-establish order.

Possible methods or intervention, starting with the least degree Or intrusiveness, include:

1. Mediating;
2. Informing the person(s) or appropriate social, medical, or legal counseling;
3. Contacting friends or relatives of the disorderly person;
4. Giving a warning;
5. Informing about peace bond or complaint procedures;
6. Giving an order;
7. With the consent of the disorderly person, taking him home or to an appropriate treatment center; and
8. Using physical restraint and arrest.

enable the officer to accomplish his purpose rather than to methods (F) through (H).

## 07-74/005.  TYPE OF INTERVENTION

In determining the type of intervention to use, the officer should examine the circumstances of a particular incident, the purpose of the intervention, and the speed with which the officer must act.

## 07-74/006.  FIRST AMENDMENT RIGHTS

Officers shall not intervene to stop an individual from exercising his first amendment rights simply because the officer or anyone else finds the individual's ideas unpopular, unpleasant, annoying, irritating, or insulting.

## 07-74/007.  IMPARTIAL/TACTFUL

An officer must remain impartial and deal tactfully with disorderly individuals by:

1. Avoiding brusqueness;
2. Establishing their authority in a firm but unbiased manner; and
3. Directing their approach and effort to reducing tension.

## HANDLING MENTALLY ILL PERSONS

## 07-75/000.  SECTION 5:  DEFINITIONS - MENTAL ILLNESS SITUATIONS

## 07-75/001.  EMERGENCY ADMISSION

A statutorily prescribed process (Tex.Rev.Civ.Stat.Ann. art 5547-Ä26 through ÄÄ30) by which a peace officer, who has probable cause to believe that a person is mentally ill and is therefore likely to injure himself or others if not immediately restrained, may obtain a warrant from any magistrate and take such person into custody and immediately transport such person to the nearest appropriate hospital for temporary detention.

## 07-75/002.  MENTAL HOSPITAL

A hospital whose facilities provide in-patient care and treatment for the mentally ill.

## 07-75/003.  MENTALLY ILL PERSON

A person who displays symptoms of substantially impaired mental health and who is in danger of causing injury to himself or to the person or property of others or is in danger of being injured by others.

## 07-75/004.  MENTAL PATIENT

A person admitted or committed to any mental hospital or a person under observation, care, or treatment in a mental hospital.

## 07-75/005.  VOLUNTARY HOSPITALIZATION OR VOLUNTARY ADMISSION

A procedure in which the head of a mental hospital may admit as a voluntary patient any person for whom a proper application is filed, if he determines upon the basis of

84

preliminary examination that the person has symptoms of mental illness and will benefit from hospitalization.

## 07-76/000.  SECTION 6:  GUIDELINE

### 07-76/001.  ABSENCE OF VIOLATION
Neither insanity nor any other form of mental illness violates any criminal statute. In the absence of a criminal violation or suspected violation, persons encountered by officers will not be handled in the same manner as criminal suspects.

### 07-76/002.  OFFICER INTERVENTION
Although the law limits the degree to which an officer can intervene in situations involving a mentally ill person, the officer should respond and take lawful action in an attempt to:

1. Protect the public from harm caused by a mentally ill person;
2. Protect the mentally ill person from harm which he or others may cause;
3. Provide a stabilizing force in any conflicts which may arise from the actions of the mentally ill person; and,
4. Aid in acquiring proper medical attention for the mental ill person.

### 07-76/003. INTERVENTION APPROACH
Incidents involving a mentally ill person require tactful, patient, and understanding responses. To the extent reasonably possible an officer should:

1. Attempt to learn as much as possible about the individual and the situation, by talking with the mentally ill person, his family, his friends, and witnesses;
2. Regardless of the circumstances (e.g., verbal abuse directed at the officer), respond in an objective, unexcited, non-abusive, unthreatening manner in order to calm and control the subject; and
3. Not deceive the mentally ill person (Deception often thwarts the chance for trust and endangers the subject's potential for recovery. Trust enhances the opportunity for controlling the situation).

## 07-77/000.  SECTION 7:  PROCEDURES

### 07-77/001.  TWO OFFICERS
Whenever possible if it appears likely that a situation involving a mentally ill person will require immediate police intervention in order to prevent personal injury or extensive property damage, two officers should be dispatched initially. A lone officer who encounters such a situation should, whenever possible, request a back-up officer.

### 07-77/002.  USE OF FORCE
If an officer must control and restrain a mentally ill person, the officer shall use the least amount of force necessary in accordance with the rules in Chapter Five on the Use of Force.

**07-77/003.   ESCAPE FROM INSTITUTION**
If the officer has reason to believe that a person may be a mental patient who has left institutional care without authorization, the officer should investigate and notify the institution and let the institution arrange for the patient's return.

**07-77/004.   PROCEDURES**
An officer should handle a mentally ill person who needs attention in the following manner:

1. Attempt to locate responsible relatives or friends attend to the needs of the mentally ill person;
2. If asked for advice, the officer may provide information about the availability of voluntary hospitalization; or,
3. If the mentally ill person has no friends or relatives who will take responsibility for him and he will not apply for voluntary hospitalization, the officer should refer the matter to the proper health authorities or to a magistrate.

**07-77/005.   EMERGENCY DETENTION WITHOUT WARRANT**
Any peace officer, who has reason to believe and does believe upon the representation of a credible person, or upon the basis of the conduct of a person, or the circumstances under which the person is found, that the person is mentally ill and because of such mental illness represents a substantial risk of harm to himself or others unless immediately restrained, which harm may be demonstrated either by the person's behavior or by evidence of severe emotional distress and deterioration in his mental condition to the extent that the person cannot remain at liberty, and who believes there is not sufficient time to obtain a warrant, may, without first obtaining a warrant, take such person into custody and immediately transport the person to the nearest appropriate inpatient mental health facility or other suitable detention facility and shall immediately file application with the facility for the person's detention. In no case shall a jail or other similar detention facility be deemed suitable except in an extreme emergency. Persons detained in a jail or other non-medical facility shall be kept separate from those persons charged with or convicted of a crime.

**The Application To Facility For Emergency Detention Without a Warrant And Acceptance For Preliminary Examination is to be filled in and signed by a peace officer and also to be signed by a representative of the facility accepting the patient. (The Preliminary Examination form is merely for the brief detention period until an application for commitment can be filed in court.)**

**The application for Emergency Detention shall contain the following information:**

1. That the officer has reason to believe and does believe that the person evidences mental illness.
2. That the officer has reason to believe that the person has reason to believe

86

and does believe that the person evidences a substantial risk of serious harm to himself or others, which risk of harm shall be specified and described;

3. That the officer has reason to believe and does believe that the risk of harm is imminent unless the person is immediately restrained;

4. That the officer's beliefs are based on specific recent behavior, overt acts, attempts, or threats, observed by or reliably reported to the officer, which behavior, acts, attempts, or threats shall be described in specific detail; and,

5. The names and relationship to the person, if any, of persons reporting or observing such recent behavior, acts, attempts, or threats.

Upon presentation of the application, the facility shall temporarily accept the person for the purpose of conducting a preliminary examination by a physician.

## 07-77/006.  WARRANT OF COMMITMENT
When seeking a warrant of commitment, an officer shall by affidavit or in person before the magistrate, indicate those specific facts and circumstances which would lead a reasonable person to believe that the subject suffers from mental illness and requires observation and treatment in a mental hospital for his own protection or the protection of others.


## STOPS AND SEARCHES

## 07-78/000.  SECTION 8: DEFINITIONS - STOP AND FRISK

## 07-78/001.  ACCESS AREA
The area (also known as the "area of immediate control") into which a person might readily reach in order to grab a weapon.

## 07-78/002.  ARMED
Carrying a weapon or other object capable of inflicting death or serious bodily injury.

## 07-78/003.  FRISK
Jargon referring to a weapons search of a person generally limited to a pat down of his outer clothing to ensure the safety of the officer and others.

## 07-78/004.  NON-SUSPECT
A person who an officer has no reasonable suspicion to believe is involved in any criminal activity.

## 07-78/005.  PROBABLE CAUSE
That total set of apparent facts and circumstances based on reasonably trustworthy information which would warrant a prudent person (in the position of and with the knowledge of the particular peace officer) to believe something, for example, that a particular person has committed some offense against the law.

87

**07-78/006.  REASONABLE SUSPICION**
An officer's rational belief, based on credible and articulable information and circumstances, that something may be true (for example, that an offense may have occurred or that a particular person may have committed an offense).

**07-78/007.  STOP**
A temporary investigative detention, generally including limited field questioning of a suspect.

**07-78/008.  SUSPECT**
A person who an officer reasonably suspects of involvement in criminal activity

**07-79/000.  <u>SECTION 9:</u>  STOPS FOR QUESTIONING**

**07-79/001.  SUSPICION OF CRIMINAL ACTIVITY**
An officer may stop and question a person (including a pedestrian or motorist) who he or she reasonably suspects may be involved in past, present, or future criminal activity.

**07-79/002.  USE OF FORCE**
To the extent necessary and reasonable, an officer may use limited, non-deadly force to prevent a suspect from leaving the scene of a lawful stop.

**07-79/003.  SPECIFIC CONDUCT**
Before an officer stops a person for questioning, the officer must be able to describe specific suspicious conduct or circumstances to justify that stop. For example the following factors (generally a combination of one or more of these factors) towards justifying a stop:

1. The suspect is making evasive or furtive movements;
2. The suspect fits a "wanted" notice;
3. The suspect has a felony record;
4. The suspect is near the scene of a recently committed crime;
5. The suspect's actions, clothing, vehicle, or presence appear unusual for the time or the place; and,
6. The officer observes some other factor or has received information (even if anonymous) which links the suspect to criminal activity.

**0-79/004.  OFFICER TRAINING/EXPERIENCE**
In evaluating a person's suspiciousness, an officer should rely on his training and experience.

**0-79/005.  SERIOUSNESS OF OFFENSE**
An officer must balance the level of his suspicions and the seriousness of the offense against the extent of interference with the stopped suspect.

**0-79/006.  LENGTH OF DETENTION**

An officer may detain a person who has been lawfully stopped for a reasonable length of time to:

    1. Verify his identification:
    2. Account for his conduct;
    3. Account for his presence; and
    4. Ascertain whether a crime occurred.

Unless the officer receives authorization the officer shall release a suspect if the officer cannot develop probable cause to arrest the suspect within a reasonable time (e.g., thirty (30) minutes).

## 07-79/007. MIRANDA RIGHTS

If the questioning remains brief, casual, and relatively neutral and non-coercive, an officer need not read the suspect his Miranda rights. However, if the questioning begins to focus on the suspect (e.g., by becoming an accusatory interrogation regarding a specific offense) the officer shall cease the questioning or read the suspect his Miranda rights before proceeding.

## 0-79/008. SUSPECT IDENTIFICATION

An officer may inform a lawfully stopped suspect that the officer will consider, in determining whether probable cause exists to arrest that suspect, the suspect's refusal or inability to produce identification or otherwise satisfactorily answer the officer's questions. However, inability to produce identification is not an offense.

## 0-79/009. CONCEALED HANDGUNS

    1. It is the policy of this Department that persons licensed to carry a concealed handgun under Texas law will not be unnecessarily hindered in the exercise of that privilege. At the same time, Officers will continue to be vigilant toward threats to their safety and to the safety of the public during contacts with persons who are found to be armed and who may or may not be committing a criminal offense. Officers encountering License Holders carrying a concealed handgun under circumstances that are grounds for suspension or revocation of a Concealed Handgun License will properly document such circumstances for reporting to the Texas Department of Public Safety.

    2. During traffic stops, contacts with suspicious persons, or calls involving a suspect in an offense, officers asking for identification should ask if the person has a Concealed Handgun License. Anyone who says they have a CHL should be asked to produce the license.

    3. When officers prepare to return a handgun to a disarmed license holder, officers need to ensure that the handgun is returned in such a manner as to minimize a real or perceived threat of harm to any individual.

Some options officers may consider for returning the handgun include, but are not limited to:

4. Placing the handgun in the trunk or back floorboard of a vehicle out of the immediate control of the license holder until the officer has left the scene;

5. Placing the handgun in the saddlebags of a motorcycle or in the tool box in the back of a pickup truck out of the immediate control of the license holder until the officer has left the scene, and;

6. If a vehicle is not involved in the incident, unloading the handgun, separating ammunition from the weapon and informing the license holder not to load the weapon in the officer's presence.

Due to the greater possibility of accidental discharge this method should only be used when absolutely necessary. Officers will be held strictly accountable for any accidental discharge as they are with the handling of any weapon under any circumstance.

## 07-79/000.  SECTION 10:  FRISKS

### 07-80/001.  FRISK AUTHORIZED

An officer may frisk a suspect he or she lawfully stops only if the officer reasonably suspects that the suspect is armed and dangerous. If appropriate to protect himself or others, an officer may frisk such suspect immediately, without providing an opportunity for the suspect to identify himself or explain his presence.

### 07-80/002.  JUSTIFYING FRISK

Before an officer frisks a suspect, the officer must be able to describe specific factors which produce a reasonable suspicion that the suspect is armed and dangerous. In combination with the factors underlying the stop the following factors might contribute towards justifying a frisk:

1. The suspect attempts to flee from the officer when stopped;
2. The suspect fails to produce valid identification;
3. The suspect refuses to explain his actions or presence or offers a false or unbelievable story;
4. A companion of the suspect is armed;
5. The suspected crime involved use of a weapon;
6. The suspect has a suspicious bulge in his clothing or attempts to conceal an object; or
7. The officer has received information that the suspect customarily or occasionally carries a weapon.

### 07-80/003.  PROCEDURE

When practical, before an officer begins a frisk, he or she should have the suspect remove and set aside any hand carried or similar items (e.g., packages. purses. parcels, shoulder bags, knapsacks, briefcases). After the frisk, if the officer still reasonably suspects that the suspect is dangerous and that such items could be readily opened and

squeezing flexible items or opening inflexible items) of those items before returning them.

## 07-80/004.  TERMINATE FRISK
An officer shall end the frisk as soon as the officer no longer reasonably suspects that the suspect is armed and dangerous.

## 07-80/005.  VEHICLE ACCESS AREA
When appropriate under the circumstances, an officer who has lawfully stopped a suspect may order that suspect to exit his vehicle or otherwise to move a reasonable distance to a safer location (e.g., away from a crowd, out of a dark alley) before frisking him. An officer may make a limited weapons search of the suspect's access area if the officer reasonably suspects that the access area contains a weapon which endangers the officer or others. The frisk may extend to the access area of an automobile if the suspect has exited the automobile and will re-enter it prior to being released.

## 07-80/006.  WEAPONS/CONTRABAND
While conducting a frisk, if an officer reasonably suspects that an object he or she feels or otherwise discovers is a weapon, the officer may remove that object for closer examination. If the removed object is a weapon and the suspect has no exemption which permits him to carry a weapon, the officer should arrest the suspect, inventory the weapon as evidence, and conduct a full search of the arrestee.

If the removed object is contraband, or other seizable property, the officer should arrest the suspect, inventory the seized property, and conduct a full search of the arrestee.

## 07-81/000.  <u>SECTION 11:</u>  MISCELLANEOUS PATROL PROCEDURES

## 07-81/001.  REPORT AND INVESTIGATION RESPONSIBILITY
The officer assigned a call will be in charge of the investigation and will have the responsibility of making the report. Where two officers are assigned to a vehicle, the ranking or senior officer will be in charge.

## 07-81/002.  STAYING IN ASSIGNED DISTRICT
All officers assigned to a specific district will remain in that district unless granted permission to leave by a supervisory officer.

## 07-81/003.  MEAL BREAKS
Each officer assigned to an 8 hour shift may take a meal break during his or her tour of duty. Such meal break shall not exceed 30 minutes during which time the officer will remain subject to call for service.

## 07-81/004.  FIREARM SAFETY
When weapons are brought into the police station or school district building for storage, they shall be unloaded. When these weapons are taken out for use, the using officer will be responsible for keeping the safety device securely locked to prevent accidental

discharge.

**07-81/005.  LOST CHILDREN**
When a lost child is reported, an officer will be assigned immediately. The officer, if unable to locate the lost child within a reasonable time, shall call for assistance.

**07-81/006.  INVENTORY OF VEHICLES IMPOUNDED OR STORED**

1. In order to conduct an inventory of a vehicle, it must be lawfully impounded or stored. An inventory is done for the following reasons:

   a. Protection of property in the vehicle.
   b. Protection of police against claims of loss.
   c. Protection of police from dangerous items in the vehicle.

   Contraband and evidence of a crime found during an inventory will be seized and turned in at the Police Property Room.

2. The inventory is an administrative search procedure and is not a way to circumvent probable cause to search for evidence of a crime. Officers will articulate the reasons and authority under which the impoundment is made and will inventory consistent with the three purposes stated in "1" above.
3. In cases where the vehicle is impounded as a result of custodial arrest, the property inventory should be conducted at the place of arrest and in the presence of the arrested person when feasible.
4. The interior of a vehicle will be inventoried and all contents listed in writing as to the description and location where found within the vehicle.
5. Closed containers found within a vehicle will not normally be opened during a ROUTINE INVENTORY. Officers should record the existence of and describe all closed containers in the written inventory.
6. The inventory list should be as detailed as the value of the items inventoried dictates and the nature of the items reasonably permits.
7. Small valuable items such as money, jewelry, and firearms subject to easy removal, will be secured by the officer and placed in the Property Room and note din the officer's report.
8. Items which the officer reasonably believes are fruits of a crime, instruments used to commit a crime, contraband, or evidence of a crime are to be secured by the officer and placed in the Property Room.
9. An inventory will be completed for every vehicle impounded on the back of the impound slip.
10. The responsibility for the inventory lies with the officer who impounds a vehicle.

**07-81/007.  SUICIDE REPORTS**

92

filed on a Crime Report.

## 07-81/008.   NOTIFYING NEXT OF KIN

When an incident involving death or serious injury is investigated, it will be the responsibility of the investigating officer responding to the scene to notify Criminal Investigative Unit of the District Attorney Office.  The victim's nearest relatives as soon as possible.

Notification of death or serious injury should be made in person by an officer of this Department if the relative lives within the city limits of Beaumont ISD. Other law enforcement agencies should be used to notify those relatives who live outside the City of Beaumont.

## 07-81/009.   BOMB REPORTS

If a bomb is found, do NOT MOVE it. Evacuate the area and call the Bureau of Alcohol, Tobacco, and Firearms who will have bomb experts to deactivate the bomb.

It is the responsibility of the principal or person in control of a building to make the decision on whether or not to evacuate the building.

## 07-81/010.   LOCK PICKING DEVICES

The use of any type of device to circumvent the locking mechanism to any business, residence, locker, desk or any other place which is locked to insure privacy or security is prohibited unless specifically authorized by the Chief of Police.

## 07-81/011.   VEHICLE INVENTORY RECORD

The purpose of this directive is to aid in the safeguarding of all items of property contained in ANY motor vehicle which is caused to be impounded by any member of the Beaumont Independent School District Police Department.

All property which is not part of the vehicle itself must be listed. List such items as the spare tire, lug wrench, jack, etc., which could be removed without breaking a lock or fastening device. The inventory should be detailed in most respects but may be general in nature where such items as a tool box containing a large number of tools or a suitcase containing only items of personal clothing are concerned. Then these items should be listed as follows:

1. (1) Tool box, gray in color, medium size, full of mechanic tools.
2. (1) Suitcase, brown in color, large, containing women's clothing.

Small valuable items such as money, jewelry, firearms, fruits of a crime, instruments used to commit a crime, contraband or evidence of a crime is to be secured by the officer and placed in the property room.

In cases where the vehicle is impounded incidental to an arrest, the property

93

inventory must be conducted at the place of arrest and in the presence of the arrested person when feasible. In such cases, the inventory is to be listed on a supplement or original crime report.

In cases where a vehicle is impounded for reasons not connected with a criminal violation such as stalled or abandoned vehicles, if the vehicle owner is not present at the time of the impound the officer will list the contents of the vehicle on an incident report along with a brief narrative explaining the impound.

## PROCEDURES CHAPTER SEVEN:  TRAFFIC INVESTIGATION/ENFORCEMENT

07-82/000.  **SECTION 1:**  GENERAL ENFORCEMENT

07-82/001.  **UNIFORM TRAFFIC ENFORCEMENT POLICY**
Traffic enforcement will be applied in a uniform manner by all officers. Enforcement will be based on the seriousness of the offense and conditions observed by the officer surrounding the incident. At no time will the violator's status, social position, occupation, office or standing in the community be used as a determining factor in whether a violator is charged or not charged with any offense.

07-82/002.  **RACIAL PROFILING**

1. No officer shall conduct a traffic or pedestrian stop based upon a person's race or ethnicity.
2. A citizen who believes he or she has been a victim of racial profiling by a member of this department may make a complaint to the Chief of Police.  The Chief of Police shall conduct an investigation and shall notify the complaining party of the outcome of the investigation.
3. An officer found to be in violation of this policy may be subject to administrative or other appropriate sanction.
4. Definitions:
   a. Race or ethnicity means of a particular descent, including Caucasian, African, Hispanic, or Native American descent.
   b. Pedestrian Stop means an interaction between a peace officer and an individual who is being detained for the purpose of a criminal investigation in which the person is not under arrest.  This does not include an interaction that takes place inside a school, gym, administrative building, support facility (i.e. Durham), or an athletic facility.
   c. Traffic Stop means an interaction between a peace officer and the driver and/or occupants of a motor vehicle for an alleged violation of a law or ordinance regulating traffic.
   d. Racial Profiling means the unequal treatment of any person including stopping, questioning, searching, detention, or arrest on the basis of their

94

racial or ethnic characteristics.

**07-82/003.   RACIAL PROFILING REPORT.**
A Racial Profiling Contact Card must be completed for each pedestrian stop, and for every occupant of a vehicle stopped for a suspected criminal or traffic violation.  Those cards must be submitted along with the officer's daily activity sheet.  The number of Racial Profiling Cards must also be noted in the appropriate box of the activity sheet for Racial Profiling Contact Cards.

**07-83/000.   <u>SECTION 2:</u>  CITATIONS**

**07-83/001.   GENERAL PROCEDURE WHEN ISSUING CITATIONS**
When issuing citations, the officer should observe the following:

1. Do not apologize for doing your job. Be courteous but firm while stating the facts of the incident. If you feel it necessary, merely say that the violation is serious enough to warrant a citation.
2. Do not discuss any penalty for the offense charged. The penalty will be imposed by the judge based on the reason and factors he finds germane to the individual case.

**07-83/002.   ISSUING CITATIONS IN CERTAIN TRAFFIC ACCIDENTS**
No citations will be issued to a violator in vehicular accidents resulting in the death of another person involved in the accident or in situations where the death of another person involved in the accident appears imminent. This is to avoid possible double jeopardy situations and speedy trial conflicts if greater offenses are filed.

**07-83/003.   PERMISSION TO INSTANTER TICKET**
Instantered citations will not be issued unless:

1. A warrant is outstanding for the arrest of the violator; or,
2. A person is stopped for a traffic violation and a more serious offense is discovered.

  For example, after stopping a person for a red light violation an officer finds a weapons violation. The person may be arrested for the weapons violation and may be issued an instanter ticket for the red light violation without permission from a supervisor.

**07-83/004.   OFFICER'S PRESENCE OR VIEW**
Under no condition will a ticket be marked instanter for a violation occurring out of the officer's presence or view. For example, an officer investigates a traffic accident which occurred out of the officer's presence or view and the violator refuses to sign a ticket resulting from the officer's investigation. The ticket will be marked "refused to sign" and a copy issued to the violator.

**07-83/005.  INSTANTER TICKETS TO JUSTICE OF PEACE COURTS**
When Justice of Peace Courts is in session, a violator receiving an instanter ticket will be taken immediately before the court which will conduct the review.

**07-83/006.  PROCEDURE FOR VOIDING CITATIONS**
When it becomes necessary to void a citation, the following procedures will be observed without exception:

1.  The word "VOID" will be printed diagonally across the race of the original (white) copy of the citation.
2.  The issuing officer will write a note explaining his reason for voiding the citation under the "officer's notes" section on the back of the original white copy of the citation. The officer will sign this note.
3.  The Police Chief or Assistant Superintendent will review the officer's note and will place his signature number on the back of the citation if he approves the reason for voiding the citation.
4.  The white copy, with the yellow copy attached, will be forwarded in the same manner as all citations issued.
5.  In the event that a citation needs to be voided after the alleged violator has left with the violator (yellow) copy, above procedures A, B and C will be followed. It will be the responsibility of the issuing officer to take the white (original) copy of the citation to the Justice of Peace Court to ensure termination of any court proceedings related to the offense alleged in the voided citation.
6.  An officer shall not attempt to void a citation that has been issued by another agency. If the officer receives a complaint about another agencies citation(s), the officer shall refer the complainant to the issuing agency.

**07-83/007.  PROCEDURE FOR ISSUING A COURTESY NOTICE**
May be issued for any violation not involving excessive disregard for safety, law or courtesy to other drivers or pedestrians. In making this decision, officers should take into account the violators apparent honest misunderstanding or ignorance of law.

The original shall be retained by Officer, and the yellow copy will be left on the windshield of the violator's vehicle.

**07-83/008.  PROCEDURE FOR DISMISSING OR REDUCING CHARGES**
Prior to attempting to have Class B or higher charges dismissed/reduced, the officer shall submit a written notice to the Chief of Police for approval. Upon receiving approval from the Chief of Police, the officer may submit a supplement report or contact the District Attorney's Offices.

**07-84/000.  <u>SECTION 3:</u>  GENERAL ACCIDENT INVESTIGATION**

**07-84/001.  ACCIDENTS INVOLVING HAZARDOUS LOADS**

The Fire Department will be called to the scene of any incident involving a vehicle carrying hazardous material. Hazardous material includes but is not limited to flammable liquids or gasses, explosives, radiological material, poisonous caustic or noxious chemicals and certain biological products. In such incidents, it will be the responsibility of the Officer or the District Supervisor to notify other City, State or Federal departments or agencies when necessary.

**07-84/002.  REMAIN AT SCENE**
An officer involved in a traffic accident will remain at that scene of that accident unless reasonable circumstances dictate otherwise.

The officer will NOT be required to wait for release by a supervisor if, at the time of the accident:

1. The officer is engaged in pursuit; and,
2. The officer has no obvious reason to believe that any person has been injured as a result of the officer involved accident; and
3. The officer has reason to believe that the need for apprehension outweighs the need to remain at the scene based on:
   a. The reason(s) pursuit was initiated;
   b. The severity of damage caused by the accident;
   c. The probability of injury should pursuit continue; and
   d. The availability of assistance.

**07-84/003.  STATEMENTS**
An officer involved in a traffic accident will make no statement to any other person(s) involved in the accident regarding who may have been at fault. Determination of factors contributing to the cause of an accident will be the responsibility of the investigating officer.

**07-84/004.  OFFICER ASSISTANCE**
An officer involved in a traffic accident will not assist the investigating officer in any way that might prejudice the investigation.

**07-85/000.  <u>SECTION 4:</u> SCHOOL BUS ACCIDENTS**

**07-85/001.  NOTIFICATION AND RESPONSE**
The bus driver shall notify Transportation Center who will notify Beaumont Independent School District Police Department and the City of Beaumont Police Department.

**07-85/002.  TRAFFIC AND ADMINISTRATIVE AUTHORITY AND RESPONSIBILITY**
Traffic Accident occurring on district property, the traffic will be conducted by the BISD Police Department. Traffic Accidents involving Beaumont School Buses occurring off district property maybe after consultation with the Beaumont City Police Department be investigated by District Officers. If the accident involving a bus is handle by the Beaumont City Police Department, the District Police officer will assist as needed.

97

**District officers shall:**

1. Determine the need for additional personnel such as bilingual, special education or a photographer, and shall notify the Assistant Superintendent for Administration and Operations for approval to have the requested staff dispatched to the appropriate area.
2. Provide preliminary information to the Assistant Superintendent for Administration and Operations who can brief other administrators;
3. Notify the Assistant Superintendent for Administration and Operations and the Director of Public Information if there are injuries and the names of the hospitals that are receiving the injured;
4. Ensure that the principals of the involved school have been notified. Approximately every fifteen minutes, officers shall update these principles regarding the status of injured students remaining at the scene.
5. Obtain from the bus driver the seating assignment for each person, their age and extent of injury; and
6. Provide the occupant information to the investigating officer or to the police traffic section within 24 hours.

## PROCEDURES CHAPTER EIGHT:  EMERGENCY DRIVING/PURSUIT

**07-86/000.  SECTION 1:  PURPOSE AND INTENT**

**07-86/000.1.  POLICY**
The series of orders contained herein sets forth policy and procedures aimed at reducing injuries and deaths of police officers and citizens resulting from vehicular pursuits.

**07-86/001.  DUE REGARD FOR SAFETY**
No provision of State law or Department policy regarding high speed pursuit or emergency calls for service shall relieve the driver of a police vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

**07-86/002.  LEGAL DISCLAIMER**
This policy is for departmental use only and does not apply in any criminal or civil proceeding. Department policy should not be construed as a creation of higher legal standard of safety or care in an evidentiary sense with respect to third party claims. Violations of this policy will only form the basis for departmental administrative sanctions. Violations of law will form the basis for civil and criminal sanctions in a recognized judicial setting.

**07-87/000.  SECTION 2:  DEFINITIONS**

**07-87/001.  HIGH-SPEED PURSUIT**
Police vehicular pursuit of another vehicle at speeds, which exceed the legal speed for non-emergency vehicles.

**07-87/002.  ROADBLOCK**

Any method, restriction, or obstruction used to prevent free passage of motor vehicles on a highway, in order to effect the apprehension of an actual or suspected violator in a motor vehicle.

**07-87/003.  PROBABLE CAUSE**

That total set of apparent facts and circumstances based on reasonably trustworthy information which would warrant a prudent person (in the position of and with the knowledge of the particular peace officer) to believe something, for example, that a particular person has committed some offense against the law.

**07-88/000.  <u>SECTION 3:</u>  VEHICULAR PURSUIT**

**07-88/001.  PRIMARY CONSIDERATION**

The primary consideration regarding a vehicular pursuit is an officer's obligation to balance necessity for pursuit and immediate apprehension against the danger to life and property inherent in pursuit situations.

The following factors shall be considered in determining whether or not to engage in pursuit:

1. The seriousness of the offense committed by the suspect who is being pursued;
2. The extent to which the suspect may later be identified if not immediately apprehend;
3. Knowledge of the suspect's possible destination or direction of travel;
4. The present ability to apprehend the suspect without pursuit;
5. The likelihood that the suspect may be armed or forcibly resist apprehension; and,
6. Potential for harm to persons or property resulting from a high-speed pursuit based on road and weather conditions, time of day, traffic and pedestrian density, available routes of escape, etc.

**07-88/002.  VEHICLE PURSUIT TACTICS**

1. All units involved in a pursuit shall operate their police vehicles in compliance with all provisions of this general order.
2. There shall be no attempt by any unit to pass another unit engaged either directly or indirectly in pursuit-related activities unless specifically requested to do so by the officer in the unit being passed.
3. Officers shall not drive on the wrong side on streets, freeways, or any other type of roadway. In the event the pursued vehicle is going the wrong way, the following options shall be utilized:
   a. Maintain visual contact with the pursued vehicle by paralleling on an adjacent street, on the correct side of the roadway.
   b. Request other units to proceed to and monitor exits available to the

99

pursued vehicle.

4. Loss of pursued vehicle:

    c. If visual contact with the pursued vehicle is lost, other than momentarily, the pursuit and Code 3 status shall be immediately discontinued.

    d. The primary unit shall immediately broadcast available information and coordinate a search for the vehicle as needed.

## 07-88/003.   PURSUIT PROHIBITED

An officer shall NOT engage in vehicular pursuit if:

1. The potential harm to persons or property arising from the pursuit outweighs the potential harm threatened by the escape of the suspect;
2. A safe and expedient identification and apprehension of the suspect can be made by other means; or,
3. There is a civilian in the officer's vehicle.

## 07-88/004.   CONSTANT PURSUIT

An officer engaged in pursuit need not maintain a constant view of the suspect, but the pursuit must be constant and continuous and without unreasonable or extraneous delays. If the officer engages in activities unrelated to the pursuit which remove him from the pursuit, he may not renew the pursuit.

## 07-88/000.   PRIMARY UNIT

The primary unit is the unit, which initiates a pursuit, or any unit, which assumes control of the pursuit. The primary unit has responsibility for following the suspect vehicle, for directing the movement of all other units involved in the pursuit and for the arrest of the suspect upon termination of the pursuit.

Upon initiation of a high-speed pursuit, the primary unit shall inform the radio operator of the following:

1. That the unit is in pursuit;
2. The unit's location and direction of travel;
3. The description of the vehicle being pursued;
4. The description of the vehicle occupants; and,
5. The officer's reason for pursuit.

## 07-88/001.   SECONDARY UNIT

The secondary unit shall be responsible for following and assisting the primary unit as necessary.

## 07-88/002.   ADDITIONAL ASSISTANCE

Only the primary and secondary units shall become involved in a high-speed pursuit. No other unit shall become involved in or move toward the route of a high-speed pursuit.

1. Intercepting units shall never intersect the path of an oncoming high-speed

vehicle.

2. There shall be no caravanning of units either behind a suspect vehicle or on routes parallel to a pursuit.

3. No unit shall attempt to pass the primary pursuit unit unless ordered to do so by a supervisor or at the request of the primary unit.

## 07-88/003.  EMERGENCY EQUIPMENT

No police unit shall engage in high-speed pursuit without the use of siren and red lights.

## 07-88/004.  UNMARKED VEHICLES

Officers operating an unmarked vehicle shall abandon pursuit at such time as a marked unit is available to assume the responsibilities of the primary pursuit unit.

## 07-89/000.  <u>SECTION 4:</u>  TERMINATING THE PURSUIT

## 07-89/001.  CONDITIONS

When conditions indicate there is an unreasonable risk of injury to the pursuing officers or to any other persons, the pursuit shall be abandoned.

## 07-89/002.  HEAVY TRAFFIC

A Code 3 pursuit into heavy traffic shall be abandoned if the original offense was a traffic offense, Class C Misdemeanor, (or a warrant for either); no felony has been committed during the pursuit; and there is no reason to believe that the pursued person is escaping from apprehension for any felony involving physical harm to persons.

## 07-89/003.  RISK OF HARM

The pursuing officer and supervisor shall continuously consider whether the pursuit itself will bring a greater risk of harm to persons or property than the loss of the suspect.

## 07-89/004.  BROADCAST

In the event that either the primary unit or a supervisor determines that a pursuit should be abandoned, a broadcast shall be made of that determination and all units involved shall immediately abandon the pursuit.

## 07-89/005.  MANDATORY TERMINATION ACTION

When a pursuit is terminated, all involved officers shall:

1. Turn off all emergency equipment and return to lawful speed;
2. Broadcast to dispatch that you have returned to service;
3. Make no attempt to follow the offender; and,
4. Return to normal patrol.

## 07-90/000.  <u>SECTION 5:</u>  USE OF FORCE IN VEHICULAR PURSUIT

## 07-90/001.  GENERAL PROVISIONS

The following measures shall be taken ONLY when established departmental policy would allow the use of deadly force:

1. Intentional striking or ramming of the suspect's vehicle by any portion of the police vehicle;
2. The use of one or more police units to physically contain and stop a fleeing vehicle during high speed pursuits; or,
3. The use of firearms.

## 07-90/002. BLOCKADES AND BARRIERS

Blockades or barriers shall not be constructed tactics such as establishing a physical barricade (road block), boxing in, heading off, ramming, driving alongside the pursued vehicle, or getting in front of the vehicle and slowing down are extremely dangerous and prohibited.

The sole exception to this policy is a police vehicle may be used as a stationary barricade only when necessary to protect human life, e.g. injured person lying in the roadway that cannot be moved. In such cases, when possible, officers shall use emergency lights, flares, and any other device available, to warn of the barricade.

## 07-90/003. PURSUIT BY OTHER AGENCY

When a high speed pursuit has been initiated by an officer of another agency and is in progress within the city limits of Beaumont, BISD officers shall only render assistance to that officer in accordance with Departmental policy. Such assistance may be discontinued by order of a Beaumont City Police Department Supervisor or a Beaumont Independent School District Police Supervisor.

## 07-90/004. MOBILE HOSTAGE SITUATIONS

1. The officer in charge on the scene shall be in full command until properly relieved.
2. The officer in charge shall be responsible for coordinating all police activities.
3. The officer in charge shall be responsible for deciding the number of patrol units to be assigned and any escalation of force to be used.
4. If jurisdictions change during the pursuit, only the authorized number of patrol units may participate.
5. Once a mobile hostage situation is contained or becomes stationary, officers will secure the perimeter, and tactical negotiations will commence to have the hostages released.
6. The safety of the hostages may be the primary consideration in determining the tactics that will be utilized to effect the release of the hostages and apprehension of the suspects, but officers must also consider the risk of harm to other persons or property.

**07-91/000.   SECTION 6:  EMERGENCY CALL RESPONSE**

**07-91/001.   OFFICER RESPONSIBILITY**
After receiving all pertinent information regarding a call for service, it will be the officer's responsibility to determine the appropriate call designation. An officer may be ordered by a supervisor to use a call designation other than that which would normally be authorized by Department policy.

**07-91/002.   CALL DESIGNATION**
Call response shall be designated as follows:

1. Non-Emergency Call Response:
   Officer shall respond to the call without using emergency equipment or procedures. Such calls will be designated as "CODE ONE" calls.
2. Emergency Call Response:
   Code 3 vehicle mode is operation of a police vehicle contrary to traffic rules and regulations and requires use of both emergency lights and siren. Police officers may drive contrary to traffic laws and regulations, if they are operating under Code 3, as specified in V.A.C.S. 67old Sec 24, in the following instances.
   A. In answering calls assigned by the Chief of Police and designated with a Code 3 response.
   B. In immediate pursuit of an actual or suspected violator of the law if at least one of the following conditions is met:
      1. A felony offense has been committed in the officer's presence or probable cause exists to believe a felony offense has been committed and the offender is escaping.
      2. A misdemeanor offense has been committed in the officer's view and the offender is escaping.
      3. An officer has a warrant of arrest for the person and the person is escaping.

   C. Code 3 operation is subject to the following limitations and restrictions:

      1. The driver must be a commissioned peace officer.
      2. The vehicle must be a marked police unit.
      3. The police vehicle must have both emergency lights and siren operating.
      4. The officer in charge shall notify the base operator of Code 3 operation.
      5. The base operator shall notify the BPD Communications center of the Code 3.

**07-91/003.   VEHICLE OPERATION**
When responding to an emergency call for service, an officer may:

103

1. Park or stand irrespective of the provisions of the Uniform Act.
2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.
3. Disregard regulations governing direction of movement or turning in specified directions.
4. Exceed the maximum speed limit by no more than 10 miles per hour. Exceeding the speed limit by MORE than 10 miles per hour shall only be permitted if:
   a. A life threatening situation exists; and,
   b. Traffic conditions permit such speeds without causing an unreasonable risk.

## PROCEDURES CHAPTER NINE: RADIO/COMMUNICATIONS PROCEDURES

**07-92/000. SECTION 1: GENERAL REQUIREMENTS**

**07-92/001. OFFICERS**
On-duty officers will monitor the radio except when instructed otherwise or when conducting necessary business on another channel.

**07-92/002. ANSWERING RADIO**
Officers will acknowledge promptly when their unit is called by a dispatcher.
Officers will answer with their basic location. It is not necessary to elaborate on a location with unnecessary references to landmarks, nearby businesses, etc.

**07-92/003. BREVITY**
Officers are admonished to keep radio transmissions as brief as possible. No radio transmission should EVER exceed 20 seconds. Messages requiring more than 20 seconds will be broken into segments which will periodically allow time for emergency transmissions.

**07-92/004. CLEARING BY DISPATCHER**
Following any transmission to a dispatcher, it is the officer's responsibility to ensure that the dispatcher clears on the transmission.

**07-92/005. REPEATER DELAY**
There is a delay of approximately 0.8 seconds between the time the radio mic is keyed and the time transmission can begin. Therefore, it is essential that officers pause briefly before speaking after the mic is keyed.

**07-92/006. TEN CODES**
The following set of "ten codes" will be utilized as much as possible during radio communications:

| Code 1 | Non -Emergency |
|--------|----------------|
| Code 3 | Emergency Call Response |
| 10-4 | Acknowledgment (OK) |
| 10-7 | Out of service |
| 10-9 | Subject has Misdemeanor Warrant |
| 10-10 | Subject has Felony Warrant |
| 10X | Officer Need Assistance |
| 10-13 | Deceased peron |
| 10-15 | Fight |
| 10-20 | Location |
| 10-99 | Wanted/stolen indicated |

**07-92/007. PHONETIC ALPHABET**
**The following phonetic alphabet will be used for transmission of separate letters when necessary:**

| | | | |
|---|---|---|---|
| A | Alpha | N | November |
| B | Bravo | O | Oscar |
| C | Charlie | P | Papa |
| D | Delta | Q | Quebec |
| E | Echo | R | Romeo |
| F | Foxtrot | S | Sierra |
| G | Golf | T | Tango |
| H | Hotel | U | Uniform |
| I | India | V | Victor |
| J | Juliette | W | Whiskey |
| K | Kilo | X | X-ray |
| L | Lima | Y | Yankee |
| M | Mike | Z | Zulu |

**When using the phonetic alphabet for spelling purposes, it is not necessary to use each letter before its phonetic equivalent. For example, the word "hat" should be spelled "hotel-alpha-tango" instead of "H,hotel-A,alpha-T,tango."**

**07-92/008.  TRANSMIT ON CLEAR CHANNEL**
**Officers shall listen to the radio before transmitting to determine whether or not the channel is clear.**

**07-92/009.  PROHIBITED TRANSMISSIONS**
**The following types of radio transmissions are strictly prohibited by the Department as**

105

well as by Federal Communications Commission regulations:

1. Unnecessary signals, messages, or communications of any kind
2. Profane, indecent, or obscene language
3. Unlawful or malicious interference with other radio communications and
4. Unidentified transmissions

**07-92/010.  SLANG**
Slang shall be avoided during radio transmissions.

**07-92/011.  EXPRESSION OF EMOTION**
During radio transmissions, the expression of attitudes or emotions such as humor, anger, sarcasm, gratitude and excitement is prohibited. Such expressions evidence an unprofessional attitude as well as making radio transmissions difficult to understand.

**07-92/012.  USE OF NAMES**
Names of officers and/or dispatchers will not be broadcast or used over the radio unless absolutely necessary.

**07-92/013.  UNNECESSARY QUESTIONS/INFORMATION**
Officers should refrain from asking unnecessary questions of a dispatcher or continuing to ask questions after the dispatcher has stated "no other information".

**07-89/014.  INFORMATION REQUESTS**
Officers should not request communications personnel to conduct records checks, make phone calls, or perform other tasks which are not immediately necessary.

**07-92/015.  PERSONAL MESSAGES**
The Department radio will only be used for personal messages in cases of emergency.

**07-92/016.  CALLING BISDPD. DISPATCHER**
When calling a dispatcher, officers need only identify themselves by unit number. For example:

Unit            "100"

Dispatcher   "100"

**07-92/017.  BISD COMMUNICATION CHANNEL**
Radio traffic will be in plain English without ten-codes.

**07-93/000.  <u>SECTION 2:</u>  CALL RESPONSE**

**07-93/001.   IMMEDIATE RESPONSE**
An officer, when dispatched on a call of any nature, will proceed to that call as expeditiously as possible. Response to a dispatched call will only be delayed due to an emergency situation or other "on-view" situation encountered enroute to the dispatched call.

An officer unable to make immediate response to a call will so notify the dispatcher.

**07-93/002.   ACKNOWLEDGE A CALL**
At such time as an officer is assigned a call, he/she will orally acknowledge the call. It is not necessary to state such things as "ENROUTE", "OFF BEAT ENROUTE", "I'M A LONG WAY OFF", etc. A mic pop is not sufficient to acknowledge a call.

**07-93/003.   OFFICER INITIATED ACTIVITY**
At such time as an officer initiates or becomes involved in activity which will put him/her out of service, the officer will so notify the dispatcher.

Upon stopping a traffic violator, the officer will so advise the dispatcher and will also broadcast his/her location as well as the vehicle license number.

**07-93/004.   EMERGENCY TRAFFIC**
Immediately following sounding of the alert tone or the words "10-33 traffic" by a dispatcher, all units not involved in the emergency situation will refrain from using the primary radio channel.

During extended periods of emergency traffic on the primary channel, all unaffected units may be directed to monitor the secondary radio channel by a dispatcher.

**07-93/005. CANCELING ASSIGNED BACKUP**
An officer should refrain from canceling his/her assigned back-up unit unless the officer has already arrived on the scene of the call and is fully aware of the situation.

**07-93/006.   UNASSIGNED RESPONSE**
An officer should not respond to a call to which he/she has not been assigned unless authorized to do so by the dispatcher or a supervisor.

**07-93/007.   ARRIVAL AT SCENE**
When an officer arrives at the scene of a dispatched call, the officer will so inform the dispatcher.

**07-90/008.   IN SERVICE**
An officer going in service after any activity is required to notify the dispatcher. At the time an officer returns to service, the details of any previous activity will only be broadcast when absolutely necessary.

**07-93/009.   LEAVING ASSIGNED DISTRICT**

An officer will notify the dispatcher prior to leaving his/her assigned district for any reason other than shift change or an assigned call.

## 07-93/010.   INFORMATION FOR GENERAL BROADCAST

An officer investigating a serious crime involving an "at large" suspect will provide all pertinent information to the dispatcher for general broadcast.

## 07-93/011.   INFORMATION NOT FOR BROADCAST

The following types of information will not be broadcast over the police radio. Officers shall not request a dispatcher to broadcast such information:

1. The names of complainants and,
2. The names of witnesses

## PROCEDURES CHAPTER TEN: PRESS RELATIONS

## 07-94/000.   SECTION 1:   PURPOSE AND INTENT

### 07-94/000.1.   PURPOSE AND INTENT

This chapter is intended to direct Departmental personnel toward good press relations by identifying their responsibilities in dealing with the news media.

It is not the responsibility of the Department to act as a filter or censor of information, or to use its authority to make decisions about the amount or type of information made available to the community. It is the policy of the Department to observe such legal guidelines as will protect individual rights to privacy without jeopardizing the criminal investigation process.

## 07-95/000.   SECTION 2:   MAJOR INCIDENTS

### 07-95/000.1. PRESS CREDENTIALS

Legitimate reporters and photographers will be allowed access to scenes of police incidents pursuant to restrictions placed on them by the ranking officer at the scene or detailed in other sections of this chapter. If deemed necessary by the scene supervisor, news media members may be required to display Texas Department of Public Safety press credentials for admission to the scene.

Amateur photographers and persons without proper media accreditation will be regarded as bystanders and will be given no more liberty at the scene of an incident than other members of the general public.

## 07-96/000   SECTION 3:   CRIME SCENES

### 07-96/001.   MEDIA ACCESS

Members of the news media will be given access to crime scenes as soon as determined practicable , with the following exceptions:

1. When the presence of the news media might adversely affect the preservation of the crime scene. This restriction shall be considered to apply to all homicide scenes.
2. When news media presence would interfere with a police investigation or operation.
3. When members of the news media, in the judgment of the scene supervisor, are exposed to clear and present danger.

## 07-96/002.   PHOTOGRAPHS/FILM FOOTAGE

Still photographs or film footage may be taken in or from any area to which the news media has been given access. Officers may restrict the use of high-intensity lighting when such illumination might hinder a police operation.

Police personnel will not compel arrestees to pose for news media cameras. However, officers will not interfere with a photographer or video camera operator photographing or filming suspects, arrestees, victims or witnesses provided such activity originates from an area to which the news media has been given access.

## 07-96/003.   INTERVIEWS

Members of the news media will not be denied interviews with crime or disaster victims when these persons express no objection to being interviewed. Officers may make an exception when victims are injured, emotionally out of control or otherwise incapable of making sound decisions.

## 07-97/000.   <u>SECTION 4:</u>   RELEASE OF INFORMATION

## 07-97/001.   RELEASE AUTHORIZED

Departmental personnel will, as soon as practicable, make available to the news media the following factual information pertaining to criminal investigations:

1. The offense committed including the time, date and location of the crime; identification and description of the victim; and a detailed description of the offense including, but not limited to, the premises, property and vehicles involved.
2. Facts and circumstances of arrest including the date, time and place of arrest, resistance, pursuit and use of weapons. The race, sex, age, occupation, city of residence and physical condition of the suspect also may be released, but the name and street address of the suspect will remain confidential until the suspect, if at least 17 years of age, becomes the subject of formal charges. Names and street addresses of juvenile offenders will at no time be released.
3. The identity of the investigating and arresting officers, if this information will not compromise an undercover investigation.
4. A general description of evidence seized avoiding details that might hinder the investigation or jeopardize the case.
5. The nature of the charge including notation of any release or transfer.

109

**07-97/002.   RELEASE NOT AUTHORIZED**
Information will NOT be released pertaining to the following:

1. Identification and description of witnesses.
2. Statements concerning anticipated testimony or credibility of witnesses.
3. Existence or contents of any statement, admission or confession.
4. Officers' opinions about suspects or evidence.
5. Personal history and arrest records.
6. Names of persons killed or seriously injured prior to notification of next-of-kin.
7. Investigative information developed by comparative or analytic procedures involving suspects or evidence. This includes, but is not limited to, results of breath or blood analysis, polygraph examination, photographic or live lineup, fingerprint comparison, ballistic identification, or tool mark comparison. Information gained from such forensic procedures and tending to substantiate guilt of a suspect is not to be released outside the criminal justice system before presentation in open trial. This restriction does not prohibit inclusion of details in a crime report narrative relating to circumstantial evidence observed by or related to an officer.

**07-97/003.   EXCEPTION**
An exception to this restriction exists with regard to blood or breath testing for determination of intoxication of a motor vehicle operator involved in a traffic accident. The State motor vehicle accident report form, which is a document of public record, requires the type and result of such testing to be noted on the reverse side of the form. This shall be done unless the suspect is a juvenile.

**07-97/004.   INFORMATION REQUESTS DURING FOLLOW-UP**
Requests for information regarding any investigation not released at the scene or included in the initial crime report should be directed to the officer assigned follow-up investigative responsibility.

**07-97/005.   OTHER INFORMATION**
Any information which might adversely affect the outcome of an investigation or any other type of information not covered within this Chapter will only be released following consultation with and approval from a supervisor.

**07-97/006.   INFORMATION FROM POLICE FILES**
Information from Departmental files will NOT be provided to any person who is not a part of the criminal justice system with the exception of such information as may be contained in the following:

1. Traffic accident reports
2. Crime reports (This does NOT include supplemental and incident reports)
3. Jail booking forms when such forms are not obtained from personal history and arrest records

**07-98/000.  SECTION 5:  DISTRICT SPOKESMAN**

**07-98/000.1.  PUBLIC INFORMATION DIRECTOR**
The district spokesman is the Public Information Director. Media requests for information or interviews shall be referred to that spokesman.

**PROCEDURES CHAPTER ELEVEN:  JUVENILE PROCEDURES/INVESTIGATIONS**

**CHILD ABUSE INVESTIGATION**

**07-99/000.  SECTION 1:  DEFINITIONS**

**07-99/001.  ABUSE**
Non-accidental infliction or threat or infliction of physical injury or emotional or mental damage to a child by a person responsible for the child's health or welfare.

**07-99/002.  BODILY INJURY**
Physical pain, illness, or any impairment or physical condition.

**07-99/003.  CHILD**
A person under 18 years of age who is not and has not been married or who has not had his disabilities of minority removed for general purposes. Under statutes regarding crimes against children, however, the age of a "child" varies from under 14 to under 17.

**07-99/004.  CHILD PROTECTIVE WORKER**
A staff member of the child protective services of the Texas Department of Human Resources (DHR) who is trained to investigate child abuse and to handle civil legal actions involving child abuse.

**07-99/005.  COURT**
The District Court or Family District Court which has jurisdiction in all civil proceedings affecting the parent-child relationship.

**07-99/006.  AUTHORIZED AGENCY**
A public social agency authorized to care for children or to place children for adoption or for private association, corporation, or person approved for that purpose by DHR through a license, certification, or other means.

**07-99/007.  EMERGENCY REMOVAL**
Removal of a child from his home without written consent of his parents and before a court hearing, upon reasonable cause to believe that an immediate danger exists to the child's physical health or safety.

**07-99/008.  EMOTIONAL NEGLECT**
Failure of the parent or caretaker to provide adequately for the developmental needs of

111

the child (such as stimulation or affection) and to provide consistent care for the child.

**07-99/009.   EXPLOITATION**
The forcing or undue encouragement of a child to participate in activities detrimental to his well being, by a person responsible for the child's health or welfare.

**07-99/010.   LACK OF SUPERVISION**
A failure of parents to account for a child's actions and whereabouts. Examples of lack of supervision include a young child left unattended while the parents are working or a pre-teen left to take care of very young children for long periods of time.

**07-99/011.   MEDICAL NEGLECT**
A failure of parents to secure necessary medical, surgical or psychiatric treatment to correct some condition in the child. Examples of medical neglect include a long-term failure to treat a seriously ill child, a malnourished child, or an emotionally disturbed child.

**07-99/012.   NEGLECT**
Depriving the child of living conditions, which provide the minimally needed physical and emotional requirements of life, growth and development by a person responsible for the child's health or welfare. Examples Or child neglect include inadequate housing, clothing or food; lack of supervision; lack of needed medical attention; and abandonment.

**07-99/013.   SERIOUS BODILY INJURY**
Bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

**07-99/014.   SEXUAL ABUSE**
The obscene or pornography or photographing, filming or depiction of a child for commercial or other purposes or the sexual assault, molestation, incest, prostitution or other such forms of sexual exploitation of a child.

**07-99/015.   SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP**
A suit brought under Title 2 of the Texas Family Code in which the appointment of a managing conservator, access to or support of a child or establishment or termination of the parent-child relationship is sought.

**07-100/000.   <u>SECTION 2:</u>   ABUSE INDICATIONS**

**07-100/001.   GENERAL INDICATIONS**
The officer should be aware of the following indications of possible child abuse or neglect:

    1.  Burns, especially patterns of burns, (e.g., those with a definite boundary that suggest immersion in hot liquid or a particular kind of instrument such as a

hot iron) or cigarette burns

2. Signs of nausea, drowsiness, unequal pupil sizes and little reaction to light stimulation, which are symptoms of brain injury
3. Bruises, especially if extensive, in various stages of healing, or suggest a specific type of instrument (e.g., coat hangers, electrical cords, wires)
4. Unexplained abdominal injuries indicated by swelling of the abdomen, tenderness and serious vomiting
5. Problems in talking
6. Poor physical development for the child's age
7. Extremely undernourished infants
8. Behavioral extremes and
9. Attempted or threatened suicide

## 07-100/002.   SEXUAL ABUSE INDICATIONS

An officer responding to a report of child sexual abuse should make note of:

1. Difficulty in walking or sitting
2. Statements made by the child, regardless of his or her age or
3. Reported physical symptoms such as irritation, pain or injury to the genital or anal areas

If possible, information for the report should be obtained from a parent or other knowledgeable person rather than from the child.

## 07-100/003.   ENVIRONMENTAL CIRCUMSTANCES

An officer investigating possible child abuse or neglect offense should take note of the following environmental circumstance:

1. The physical condition of the parents. e.g., intoxicated, drugged, disoriented, and helpless in dealing with the child
2. Explanations given for the injury, especially any inconsistencies in the explanations given
3. Indications that the parent(s) has tried to obtain medical treatment for the injuries (regardless of the explanation given)
4. Indications that one child has been singled out for "punishment"
5. Bizarre forms of punishment, e.g., locking children in dark areas for long periods of time or signs of torture, which indicate mental instability on the part of the caretakers
6. Outright abandonment for long periods of time
7. Lack of supervision, taking into consideration the duration and time of day when the children are left alone, and the ages of any older children left to take care of any younger children
8. The presence of possible environmental dangers, e.g., broken glass, leaking gas, poisons within easy reach, exposed wiring, lead paint
9. Inadequate food, clothing or warmth
10. Inadequate alternative care arrangements, e.g., a landlady to "keep an eye

113

on" several children from time to time
11. General cleanliness of the dwelling and the children and,
12. Indications that the children need medical or dental attention.

## 07-101/000.   SECTION 3:   REPORTING CHILD ABUSE/NEGLECT

### 07-101/001.   DUTY TO MAKE REPORT

Any officer having cause to believe that a child's physical or mental health or welfare has been or may be affected by abuse or neglect shall file a Crime Report when a crime has been committed or an Incident Report if the circumstances are non-critical in nature. A copy of the report, addressed to DHR, shall be forwarded to the Chief of Police.

An officer who receives a report of child abuse or neglect from an individual by telephone or otherwise should obtain the following information:

1. Name, age, and address of the child
2. Name and address of the parents or persons in charge of the child
3. The incident or injury that prompted the report or details to support the belief that child abuse or neglect has occurred
4. The present condition of the child and,
5. Any siblings at the home.

## 07-102/000.   SECTION 4:   RESPONSE/INTERVENTION

### 07-102/001.   RESPONSE MANDATORY

An officer must respond to situations of child abuse or neglect regardless of the means by which the officer learns of the abuse or neglect.

### 07-102/002.   BASIS OF ACTION

An officer responding to a report of child abuse or neglect should act based on:

1. His assessment of injury to the child; the potential risk to the child
2. The social agencies available to assist him at various times and,
3. Community standards.

### 07-102/003.   CHILD NEGLECT

If the responding officer finds signs of child neglect at the scene such as unsafe environmental conditions or lack of supervision, which do not require emergency removal, he should:

1. Upon determining no adult is available but before entering the home, have a supervisor present
2. Identify the location of the parents or persons in possession of the child
3. Arrange for temporary care in the home, whenever possible, with responsible adult relatives or neighbors, so that the child may remain in a familiar environment.

**07-102/004.    NONCRITICAL CHILD ABUSE**
If the officer finds signs of noncritical child abuse at the scene, he should:

1. Attempt to speak to the parents regarding the officer's concern for the safety of the child
2. Encourage the parents or person in charge to obtain any required medical treatment for the child
3. If asked, inform the parents about possible resources within the community to help them with the care of their children.
4. If necessary, inform the parents about the criminal consequences of child abuse.

**07-102/005.    INTERVENTION MANDATORY**
An officer must intervene on behalf of a child, whether in the home or otherwise, whenever:

1. A child has suffered serious bodily injury as a result of neglect, lack of supervision or child abuse
2. Substantial likelihood exists that a child is in imminent danger of physical injury, either inflicted nonaccidentally or as a result of neglect or lack of supervision
3. A child has been sexually abused or,
4. A child needs immediate medical attention to prevent death, severe disfigurement or substantial impairment of bodily functions, and the parents are unwilling or unavailable to provide or consent to needed treatment

**07-102/006.    INTERVENTION OUTSIDE THE HOME**
If an officer encounters a child in distress outside the home, the officer should:

1. Identify the child's parents or person in charge whenever possible.
2. Notify the parents or person in charge of the child, whenever possible, of the child's condition.
3. Take the child and return him to the parents or person in charge
4. If a child refuses to return home, transfer the child to DHR.
5. When appropriate, send the child to a medical facility where the parents (or designated persons) can give consent to treatment or
6. Contact DHR if the parents cannot be reached, to permit follow up investigation by the social agency.

**07-102/007.  THREAT TO CHILD - NON-EMERGENCY**
If the child is in the home and the threat to the child requires intervention, but not immediate removal, the officer should:

1. Remove the child from the home upon voluntary delivery of the child by one of the parents or persons entitled to possession of the child or,

115

2. **Notify DHR and stand by for their arrival.**

## 07-102/008.  NON-EMERGENCY MEDICAL TREATMENT
Whenever an officer has reason to believe that a child, with signs of child abuse, needs medical attention (but not emergency treatment), he should try to get the permission (or cooperation) of the parents for medical treatment. If such cooperation is refused, the officer should notify DHR and stand by for their arrival.

## 07-103/000.  SECTION 5: CRIMINAL INVESTIGATION/SOCIAL AGENCY COOPERATION

## 07-103/001.  AGENCY RESPONSIBILITY
Whenever a Child Protective Services staff member notifies a Police Department of serious harm or injury to a child, the Police Department has the responsibility to investigate.

## 07-103/002.  RELATED OFFENSES
The following offenses relate directly to child abuse:

1. Indecency With a Child, 21.11 PC
2. Sexual Assault, 22.011 PC
3. Aggravated Sexual Assault, 22.021 PC
4. Injury to a Child, 22.04 PC
5. Abandoning or Endangering a Child, 22.041 PC
6. Leaving a Child in a Vehicle, 22.10 PC
7. Sale or Purchase of a Child, 25.06 PC
8. Solicitation of a Child, 25.06 PC
9. Compelling Prostitution, 43.06 PC
10. Sale, Distribution or Display of Harmful Material to a Minor, 43.24 PC
11. Sexual Performance of a Child, 43.25 PC
12. Possession of Child Pornography, 43.26 PC and
13. Contributing to the Delinquency or Dependency of a Child, Ch. 72, Texas Family Code

## 07-103/003.  INFORMATION FROM DHR
The investigating officer should ask for and obtain from DHR:

1. Results of any civil (social) investigation of the family
2. Plans by DHR to return a child to his home or to close the case
3. Notice of court action removing the child from the home
4. Notice of removal of the child by a child protective worker before obtaining a court order and,
5. A complete written report whenever sufficient grounds exist for the institution of suit affecting the parent-child relationship.

The investigating officer has a right to receive information the child protective services staff may have about the family or the alleged abuser. An officer may

116

request assistance from DHR personnel in conducting the investigation.

## 07-103/004.   CHILD INTERVIEW - DHR ASSISTANCE
When particular expertise in interviewing children is needed, the investigating officer may ask the child protective services staff to assist in questioning a child victim or a child who witnessed child abuse or neglect. However, the child protective services worker cannot question the child without a court order or permission from the parents.

## 07-103/005.   ASSISTANCE PROHIBITED
An officer may NOT ask a child protective worker to gather evidence from other sources or to question any other person.

## 07-103/006.   MIRANDA WARNING
When questioning the parents or other persons suspected of committing child abuse, the officer shall read them their Miranda rights.

## 07-103/007.   REPORTING PARTY IDENTITY
The officer need not tell the person under investigation the name of the person who reported the child abuse.

## 07-103/008.   SEPARATE INTERVIEWS
The officer should interview the parents or other suspects separately, and check for vagueness or inconsistencies in the explanations of incidents in the report of child abuse.

## 07-103/009.   CHILD INTERVIEW CONSIDERATIONS
Whether or not an officer interviews a child (victim or otherwise) in the home depends on:

1. Whether permission was given by the parents, legal caretakers or court order
2. The child's age
3. The child's ability to evaluate what happened
4. The child's emotional state at the time
5. The possibility of retaliation against the child and
6. Previous interviews of the child by child protective workers

Whenever possible, the interviewer should be of the same sex as the child victim, but especially in cases of reported sexual abuse.

## 07-103/010.   PARENTAL PERMISSION
Parental permission should be obtained, whenever possible, to interview the child outside of the presence of the parents.

## 07-103/011.   UNDERSTANDABLE LANGUAGE
An officer should conduct the interview in language that the child can understand and allow the child to explain the situation, as much as possible, in his own way.

**07-104/000.   SECTION 6:   EMERGENCY REMOVAL**

**07-104/001.   REMOVAL WITHOUT CONSENT**
Officers should remove a child from the home without parental consent (or the consent of the persons entitled to possession of the child) or without court order only upon probable cause that the child faces immediate danger to his physical health or safety, and no time exists to obtain a temporary restraining order or attachment of the child. A staff member of the Texas Department of Human Resources shall be notified immediately and on the scene, if possible, when a child is removed.

**07-104/002.   ENTRY - PRIVATE PREMISES**
Whenever officers need to enter a private premise, they shall first make diligent efforts to enter peacefully. However, an officer may use reasonable force to enter private premises and remove a child in an extreme emergency, i.e., to rescue a child the officer has probable cause to believe is in eminent danger of serious bodily injury.

**07-104/003.   UPON REMOVAL**
Upon removal of the child, the officer should send the child to the proper medical facility for examination, if needed, and contact DHR for assistance in obtaining a court order for treatment.

**07-104/004.   REPORT**
An officer who removes a child must immediately submit a report that describes the circumstances of taking the child into possession, the details of the physical injury, threat of physical injury or threat to safety and the names of the people involved.

**07-104/005.   JAIL/DETENTION FACILITY**
An officer shall not place a child who has been removed from his home, pursuant to this section, in jail or in a juvenile detention facility.

**07-105/000.   SECTION 7:   POLICY/PURPOSE CURFEW ORDINANCE**

**07-105/001.   JUVENILE CURFEW POLICY**
It is the policy of the Beaumont Independent School District Police Department to enforce the provisions of the ordinance of the City of Beaumont which sets specific hours of curfew for persons younger than seventeen (17) years of age, herein referred to as sub-minors, and which also defines the legal responsibilities of a sub-minor's parent or guardian.

**07-105/002.   PURPOSE AND INTENT**
It is the intent of the Department to enforce the provisions of the Curfew Ordinance in order to ensure the welfare of sub-minors. to contribute to the general protection of life and property, and to diminish the rate of delinquency among the City's juvenile population.

**07-105/002.   DEFINITION**

With exceptions, a sub-minor is in Violation of the City of Beaumont Curfew Ordinance if the sub-minor is in or upon any public place or establishment within the City of Beaumont:

1.  Between 2300 hours and 0600 hours on a night preceding a school day or
2.  Between midnight and 0600 hours on any Friday or Saturday night or on a night preceding a specified school holiday

## 07-105/003.   EXCEPTIONS
A sub-minor is NOT in violation of the Curfew Ordinance, regardless of the time of day:

1.  When accompanied by a guardian or authorized adult supervisor
2.  When in the exercise of constitutional rights regarding freedom of speech, religion or assembly connected with any legal parade or demonstration or other bona fide religious, social or school activity involving the right to assemble
3.  When performing an errand or other legitimate business at the direction of a parent, guardian or supervising adult
4.  When on the sidewalk at the place where the sub-minor resides or on the sidewalk of either next door neighbor when said neighbors do not object to such presence or
5.  When engaged in employment activities
6.  In a  motor vehicle involved in interstate travel
7.  Involved in an emergency
8.  Married or had been married or had disabilities of minority removed in accordance with Chapter 31 0f Texas Family Code.
9.  Engaged in lawful volunteer or charity work at a recognized charity institution or is going to or coming from such activity without detour or stop.

All of the above exceptions include travel to and from such activity by a direct route.

## 07-106/000.   <u>SECTION 8:</u>   ENFORCEMENT

## 07-106/001.   FILING OF CHARGES
A Field Release Citation shall be issued and filed through the Justice Court.

## 07-106/002.   FIRST OFFENSE
The first time a sub-minor is found to be in violation of the Curfew Ordinance:

1.  A field interview card will be completed and forwarded to the Juvenile Section and to the district police office by the officer who detects the violation
2.  The violator may
    a.  Be directed to go home and may be followed by the officer

Case 1:14-cv-00314-RC Document 28-7 Filed 01/20/15 Page 125 of 134 PageID #: 463

    b. The violator's parent(s) may be contacted and either informed of the minor's whereabouts or asked to come and get the minor or

    c. The officer (with the violator's consent) may transport the violator home if obviously necessary for the violator's welfare

## 07-106/003.   SECOND OFFENSE

The second time a sub-minor is found in violation of the Curfew Ordinance, the same procedures will be followed as those for the first time officer with the following exception. If the second offense occurs within six months of the first offense, charges will be filed against the parents.

## 07-106/004.   THIRD OFFENSE

At such time a sub-minor is found in violation of the Curfew Ordinance for the third time (thereby making him or her a habitual curfew violator) or any time thereafter:

1. A field interview card will be completed indicating the curfew violation
2. The violator will be taken into custody
3. Charges will be filed against the violator's parent(s) or guardian

## 07-106/005.   USE OF OFFICER DISCRETION

The U.S. Fifth Circuit Court has ruled in <u>Aladdin's Castle, Incorporated v. City of Mesquite</u> and in <u>Johnson v. City of Opelousas</u> that minors have the right to association, and such right includes minors patronizing game parlors or amusement centers. All officers will exercise caution in relying on the curfew ordinance as an enforcement tool. Rather, as these court decisions indicate, the problem should be addressed through the penal system or through enforcement of Family Code provisions.

## <u>RULES CHAPTER TWELVE:  JUVENILE ARREST PROCEDURES</u>

## 07-107/000. <u>SECTION 9:</u>   DEFINITIONS

## 07-107/001.   ARREST

The intentional seizure, whether actual or constructive, of a person by an officer acting under real or assumed legal authority, coupled with recognition of the custody of the seized person, for the purpose of charging him with a criminal complaint or violation of the Texas Family Code. The manner of disposition (released to parents or taken to Minnie Rogers Juvenile Justice Center) is immaterial.

## 07-107/001.   CHILD

A person who is ten (10) years of age or over, and under seventeen (17) years of age.

## 07-107/002.   CLASS C MISDEMEANOR

A violation of the penal laws of this state of the grade of misdemeanor that is punishable by fine only or a violation of the penal ordinances of any political subdivision of this state.

**07-107/003.  JUVENILE COURT**
A court designated to exercise jurisdiction over proceedings under Title 3 of the Texas Family Code (Delinquent Children and Children in Need of Supervision).

**07-107/004.  MINNIE ROGERS JUVENILE JUSTICE CENTER**
The juvenile detention facility, commonly known as MRJJC.

**07-107/005.  ARREST AND PROSECUTION SHEET**
A form, which contains information on juvenile arrestees as required by Title 3 of the Texas Family Code. The Arrest and Prosecution sheet is the juvenile equivalent of the adult booking card.

**07-107/006.  STATUS OFFENSE**
An act that is a violation of the law if committed by a juvenile, but is not a violation of the law if committed by an adult. Truancy is an example of a status offense.

**07-108/000.  <u>SECTION 10:</u>  APPLICATION OF JUVENILE ARREST PROCEDURES**

**07-108/001.  ARRESTEES**
The provisions of this section shall apply to all juvenile arrestees, regardless of where they are from.

**07-109/000.  <u>SECTION 11:</u>  FIELD RELEASE CITATIONS**

**07-109/001.  ISSUANCE**
A field release citation may be issued ONLY when the child is:

1. In violation of Sec. 106.05 of the Texas Alcohol Beverage Code (Minors in Possession of Alcohol) or
2. Is fourteen (14) years of age or older and commits a traffic offense under V.C.S. 6701-d (Uniform Act) or
3. Ten (10) years of age or older and commits a violation of any state or local criminal statute punishable as a Class C misdemeanor
4. Curfew Violation
5. Any Penal Code offense requires a crime report.

**07-109/002.  TEEN COURT REFERRALS (Class C Misdemeanor's)**
In cases where a student commits an offense whether or not the offense occurred within your view and there is not a person as a victim or the victim does not wish to file charges, however the school representative does i.e.; D.O.C./Theft/P.I./ Criminal Mischief the following should occur:

1. You shall fill out an Administrative Report
2. In the space marked Case Number you will insert "BISD"
3. You will issue a BISDPD citation
4. You will list the student as A-___ on the report

5. In the space on the citation marked Case Number you will insert "BISD"
6. List the citation number in the narrative of the report
7. You will give the yellow copy of the citation to the student
8. Attach the original copy of the citation to the Administrative Report and forward it to Teen Court.

**07-109/003.   ARRESTS REPORTS (Class C Misdemeanor's)**

1. In cases where a person commits an offense and the offense DID NOT occur within your view, but the victim wishes to file charges i.e.; Theft/Criminal Mischief/Assault the following should occur:
   a. You shall fill out an BISDPD case report.
   b. In the space marked Case Number you will insert "BISD Case Number"
   c. DO NOT issue a citation.
   d. You will list the person as S- __ on the report.
   e. Note that the suspect was released pending filing of charges in the narrative of the report.
   f. Advise the suspect that charges may be filed.
   g. Forward the report to the Secretary, Chief of Police BISDPD for dissemination

2. In cases where a person commits an offense and the offense DID occur within your view, and the victim or you wish to file charges i.e.; Theft/Criminal Mischief/Assault the following should occur:
   a. You shall fill out an BISDPD case report.
   b. In the space marked Case Number you will insert "BISD Case Number".
   c. You may issue  a BISDPD citation.
   d. You should list the person as A- __ on the report.
   e. List the citation number in the narrative of the report.
   f. You will give the yellow copy of the citation to the person.
   g. Forward the report and the citation to the Secretary, Chief of Police BISDPD for dissemination.

**07-109/004.   INSTANTER CITATIONS**
Citations issued to a child shall not be instantered.

**07-110/000.   <u>SECTION 12:</u>  JURISDICTIONS**

**07-110/001.   MUNICIPAL COURT/ JUSTICE COURTS**
Municipal Court or Justice Court shall have has jurisdiction on:

1. All Class C misdemeanors committed by a child and
2. All Class C traffic offenses under V.C.S. 6701-d (Uniform Act) committed by a child fourteen (14) years of age or older.

122

**07-110/002.  JUVENILE COURT**
The Juvenile Court has jurisdiction over a child arrested for:

1. Any offense of the grade Class B misdemeanor or above
2. Runaway
3. Offenses which prohibit driving while intoxicated or under the influence of intoxicating liquor or driving while under the influence of any narcotic drug or of any other drug to a degree which renders the child incapable of safely driving a vehicle and
4. Public Intoxication

**07-110/003.  NON-JURISDICTIONAL OFFENSES**
Police officers are authorized to take non-jurisdictional status offenders into custody and return them to their parents, guardian, or other responsible adult.

**07-111/000.  SECTION 13:  ARREST REPORTS**

**07-111/001.  CRIME REPORTS**
A crime report is required whenever a juvenile is arrested.

**07-111/002.  REPORTS TO MINNIE ROGERS JUVENILE JUSTICE CENTER**
A complete copy of the hand written crime report and Arrest and Prosecution report shall accompany any child taken to the MRJJC. They will not accept a child without these reports.

**07-112/000.  SECTION 14:  POLICE CUSTODY**

**07-112/001.  TIME LIMIT**
A juvenile may be held in police custody a maximum of five (5) hours. They MUST be released to a parent, guardian, or other responsible adult, or, if they qualify for acceptance, be taken to Minnie Rogers Juvenile Justice Center by the end of this time limit.

**07-112/002.  PROPERTY INVENTORY**
The transporting officer shall not take any property other than weapons or contraband from the arrestee, and all other property will remain with the arrestee until he is released to either MRJJC or a parent/guardian.

**07-112/003.  DRIVING UNDER THE INFLUENCE BY A MINOR**

1. Release:
   a. Issue DUI/M citation and serve DIC-25 (Notice of Suspension)
   b. Complete and submit DIC-23 and copy of DIC-25 to Austin within 5 business days.
2. "Arrest" for Purposes of Requesting Specimen of Blood or Breath.

    a. **Give DIC-24 DWI Statutory Warning**
    b. **When Breath is requested, videotape the Request and Response if the minor is a "Child".**
    c. **For specimen results over .00 issue DUI/M citation, serve minor with copy of DIC-24 and 25.**
    d. **Do not serve DIC-25 if blood is taken.**
    e. **If minor is a "Child" process in one of the ways listed in Family Code Section 52.02(a).**
    f. **Complete and submit all ALR paperwork, (e.g. DIC-23, DIC-24, DIC-25) and Breath Test Result slip (if any) within 5 business days.**

## 07-112/004.   DRIVING WHILE INTOXICATED BY A MINOR

1. **Develop PC through Field Sobriety Tasks.**
2. **Arrest, read warning, take breath or blood specimen if provided, and serve with appropriate paperwork.**
    a. **When breath is requested, statute requires videotaping of request and response if the minor is a "Child".**
    b. **Charge the minor with DWI if evidence warrants it.**
    c. **Process "Child" in one of the ways listed in Family Code Section 52.02(a.)**
    d. **Complete and submit all paperwork to DIC in Austin within 5 business days.**

## 07-112/005.   ARREST OF STUDENT
**School district policy GRA and GRA (legal) provide standards for the arrest of students.**

## 07-112/006.   JUVENILE ARRESTS
**An officer taking a child into custody, without unnecessary delay and without first taking the child elsewhere, shall do one of the following:**

1. **Take the child before the officer or official designated by the juvenile court or**
2. **Take the child to a detention facility designated by the juvenile court**

## 07-113/000.   <u>SECTION 15:</u> DISPOSITION ON ARRESTEES

## 07-113/001.   JUVENILES UNDER TEN (10) YEARS OF AGE
**Regardless of the classification of offense, all juvenile offenders under ten (10) years of age shall be released to a parent, guardian, or other responsible adult.**

## 07-113/002.   CLASS C MISDEMEANORS/NON-JURISDICTIONAL OFFENSES
**A child arrested for a Class C misdemeanor or non-jurisdictional offense only shall be released to a parent, guardian, or other responsible adult.**

## 07-113/003.   CLASS A AND CLASS B MISDEMEANORS AND FELONIES

A child arrested for a Class A or Class B misdemeanor must be taken to Minnie Rogers Juvenile Justice Center and have the Texas Juvenile Justice Reporting Form (CR-43J) completed; and, if necessary, the (CR-44J) supplement report.

The forms are to be completed by the arresting officer and he/she will fill out all information requested on the form using the Book-In manual located at the Juvenile Justice Center. The officer will be responsible for obtaining a Juvenile Book-In number from the Records Center of Beaumont Independent School District Police Department. This number will be noted as a "J" number, which will be used on Form CR-43J and will also be used on the photograph identification plaque. The officer will also be responsible for taking the arrestee's photograph with the camera furnished at MRJJC, then be responsible for taking the arrestee's fingerprints. Form CR-43J has an attached fingerprint card.

The arresting officer will fill out another fingerprint card, which is located in the processing room in the Minnie Rogers Juvenile Justice Center.

If the arrestee is to be released to a parent, guardian, or another responsible adult, the arresting officer will still need to fill out form CR-43J, take a photograph, and take two sets of fingerprints. Then, the arrestee may be released to the parent, guardian, or another responsible adult.

This procedure will be followed on all arrests that are Class B and higher.

07-113/004.   MANDATORY PLACEMENT AT MINNIE ROGERS JUVENILE JUSTICE CENTER

A child shall be taken to Minnie Rogers Juvenile Justice Center if:

1. The child is arrested for any felony offense
2. A Writ of Immediate Custody or Directive to Apprehend has been issued for the child (these will be on the current runaway list in the dispatch center).

07/113/005.   NOTIFICATION OF PARENTS OR GUARDIAN

Whenever a juvenile is arrested, the arresting officer shall make a reasonable effort to advise the arrestee's parents or guardian of the arrest.

If a juvenile is released to a parent, guardian, or other responsible adult, they shall be instructed to phone the Juvenile Section at 0900 hours the following day and talk to a juvenile officer regarding final disposition on the case.

07-114/000.   SECTION 16:  MINNIE ROGERS JUVENILE JUSTICE CENTER

07-114/001.   DETENTION FACILITY: Minnie Rogers Juvenile Justice Center is the only detention facility where a child may be incarcerated.

**07-114/002.   ACCEPTANCE CRITERIA**
Generally, under Title 3 of the Texas Family Code, Minnie Rogers Juvenile Justice Center may accept only those arrestees who fall within the jurisdiction of the Juvenile Court.

Minnie Rogers Juvenile Justice Center will accept a child arrested for a Class C misdemeanor or non-jurisdictional offense if:

1. There is an additional charge that falls under the jurisdiction of the Juvenile Court
2. The child is on official probation or parole from any jurisdiction
3. The child is under court ordered supervision from any jurisdiction or
4. There are pending delinquent charges against the child from any jurisdiction (the child is scheduled to appear in Juvenile Court).

**07-115/000.   SECTION 17:   JUVENILE COURT STATUS**

**07-115/001.   ARRESTEES FROM OTHER JURISDICTIONS**
When a child from another jurisdiction is arrested, does not appear to be eligible for acceptance at Minnie Rogers Juvenile Justice Center and no one can be located to release the child to, a supervisor shall call a juvenile officer out to take charge of the child, determine if the child is under Juvenile Court jurisdiction and make the appropriate case disposition.

**07-115/002.   LOCAL ARRESTEES**
When a child from Beaumont or the counties surrounding Jefferson County is arrested under circumstances described in Section 15 A, the arresting officer may determine if the child is currently under Juvenile Court jurisdiction by contacting Minnie Rogers Juvenile Justice Center personnel.

**07-116/000.   SECTION 18:   INTERVIEWS**

**07-116/001.   QUESTIONING OF STUDENTS**
School district policy GLA and GLA (local) provide standards for student interviews.

**07-116/002.   INTERROGATION OF JUVENILES**
The Jefferson County Juvenile Board (District Court Judges) have prepared a listing of public officials, in accordance with Family Code Section 52.02, who are not law enforcement officers, as officials to whom arrested children shall be physically taken. The officials shall have authority to administer the magistrate's warning in compliance with Family Code Section 51.09 (b). (See list below)

126

Justice of the Peace, Precinct 1,
Place 1
1001 Pearl St., Rm 105
Beaumont, Texas 77701

Justice of the Peace, Precinct 1,
Place 2
1001 Pearl St., Rm 104
Beaumont, Texas 77701

Justice of the Peace, Precinct 2
525 Lake Shore Dr.
Port Arthur, Texas 77640

Justice of the Peace, Precinct 4
19217 FM 365
Beaumont, Texas 77705

Justice of the Peace, Precinct 6
1225 Pearl Street, Suite 118
Beaumont, Texas 77701

Justice of the Peace, Precinct 7
7933 Viterbo Road, Suite 1
Beaumont, Texas 77705

Municipal Court Judge
700 Orleans
Beaumont, Texas 77701

County Court Judge
County Court at Law # 1
1149 Pearl Street
Beaumont, Texas 77701

County Court Judge
County Court at Law # 2
1001 Pearl Street
Beaumont, Texas 77701

County Court Judge
County Court at Law # 3
1001 Pearl Street
Beaumont, Texas 77701

County Court Judge
1001 Pearl Street
Beaumont, Texas 77701

Courtmaster
1001 Pearl Street
Beaumont, Texas 77701

## 07-116/003.  COMPLIANCE WITH COMER V. STATE

Family Code Section 51.09 (b) governs the taking and admissibility of written custodial statements.

Pursuant to Article 52.025 of the Texas Family Code, Texas;
is hereby designated as BISDPD processing office for juveniles. It has further been determined that this office is not a cell, or holding facility for detentions other than under this section. The Juvenile Court does not require it or its staff's consent on a case by case basis in order for custodial interrogation to occur.

Among permissible activities, which may occur in the processing office, are interrogations of juveniles under section 51.09 (b) of the Texas Family Code, including warnings and taking statements. The child cannot be left unattended and may be accompanied by an attorney, parent, guardian or custodian while in the "juvenile processing office." The maximum period of detention in the processing office cannot exceed five (5) hours.

If a statement is taken from a juvenile pursuant to Family Code, Section 51.09 (b) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present. The magistrate must be fully convinced that the child understands the nature and contents of the statement and that

127

the child is signing the same voluntarily. If such a statement is taken, the magistrate shall sign a written statement verifying that the foregoing requisites have been met.

## 07-116/004.   STATEMENT BEFORE MAGISTRATE

When a statement is to be taken from a juvenile who is in a detention facility or other place of confinement or in the custody of an officer, it is imperative that the following procedures are complied with:

1. Prior to the making if a statement, a Statutory Warning of Juvenile by Magistrate should be given. It should include a warning from the magistrate that the child may be sentenced to commitment in the Texas Youth Commission with a transfer to the Texas Department of Corrections for a term not to exceed 30 years if the child engaged in delinquent conduct alleged in a petition and approved by a grand jury to include murder, capital murder, aggravated kidnapping, aggravated sexual assault, deadly assault on a law enforcement officer and criminal attempt.
2. The child must sign the statement in the presence of a magistrate with no law enforcement officer or prosecuting attorney present.
3. Magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing it voluntarily.
4. If statement is taken, the magistrate shall sign a written statement verifying the foregoing requisites have been met.

The juvenile must knowingly, intelligently, and voluntarily waive the preceding rights prior to and during the making of the statement.

The juvenile must sign the statement in the presence of a magistrate who must certify that he has examined the child independent of any law enforcement officers or prosecuting attorney and determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights.

## PROCEDURES CHAPTER TWELVE: REPORT WRITING

## 07-117/000.   SECTION 1:   GENERAL RULES

All reports that are documented on a Beaumont Independent School District Police Department form, or on a state form that is processed through the Beaumont Independent School District Police Department, shall be written and submitted to police records as rapidly as is reasonably possible and shall always be submitted within 72 hours of the investigation.

## 07-117/001.   BISD ADMINISTRATIVE REPORTS

Incidents that may be documented for background, historical or information purposes may be documented on a district administrative report. Report numbers may be obtained from the department secretary who will maintain a register that includes but is not limited to: case number; investigating officer; and, the school or facility from which the report is

128

instigated.

The administrative report number system is:

   (year)        (month)        (date)        (number)

   — —            — —            — —            — —

For example: 0707011 was the first administrative report written on July 07, 2007.

**07-117/002.  INTERNAL FILES**
One copy of police and/or administrative reports shall be filed with the Office of the Chief of Police.

**07-118/000.  <u>SECTION 2:</u>  VICTIMS**

**07-118/001.  SCHOOL BUILDING VICTIM**
The name and address of the specific school shall be used as one of the victims when the facility is victimized.

**07-115/002.  INDIVIDUAL VICTIM**
A person must be listed as one of the victims when a school is victimized.


## LEGAL DISCLAIMER

This policy is for departmental use only and does not apply in any criminal or civil proceeding. Department policy should not be construed as a creation of higher legal standard of safety or care in an evidentiary sense with respect to third party claims. Violations of this policy will only form the basis for departmental administrative sanctions. Violations of law will form the basis for civil and criminal sanctions in a recognized judicial setting.