UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| DARON JEROME WILLIS AND | § | |
| SUBRINNA LYNN COLEMAN, | § | |
| Individually and as Next Friend of | § | |
| SDW, a Minor, | § | |
| Plaintiffs | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 1:14-CV-00314 |
| | § | |
| BEAUMONT INDEPENDENT | § | |
| SCHOOL DISTRICT, ET AL, | § | |
| Defendants | § | |

<u>DEFENDANT STEPHEN RIVERS' MOTION TO DISMISS UNDER FED. R. CIV. P.
12(C), AND IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT</u>

NOW COMES Defendant Stephen Rivers and files this Motion to Dismiss pursuant to

Federal Rule of Civil Procedure 12(c), and in the Alternative, Motion for Summary Judgment.

In support, Officer Rivers shows the Court as follows:

## I.  NATURE AND STAGE OF PROCEEDING

1.      On June 13, 2014, Plaintiffs Daron Jerome Willis and Subrinna Lynn Coleman,

individually and as next friend of S.D.W., a minor, (collectively "Plaintiffs") filed their Original

Complaint (Docket Entry ("DE") 3), alleging violations of S.D.W.'s constitutional rights under

the Fourth and Fourteenth Amendments of the United States Constitution via 42 U.S.C. § 1983

("Section 1983") by Officer Rivers, a police officer with the Police Department for Beaumont

Independent School District ("Beaumont ISD" or "BISD").  (DE 3, p. 1, ¶1 and pp. 3-4, ¶9).

Plaintiffs also brought claims against Defendant BISD.

2.      On July 7, 2014, Officer Rivers filed his Answer, affirmatively asserting, among other things, his qualified immunity from liability and suit as to Plaintiffs' claims, professional immunity, and official immunity. (DE 6, p. 3-4, ¶¶15-18, 20-21).  Rivers also affirmatively asserted that claims against him in his official capacity are actually redundant of claims against Defendant BISD and that he would be entitled to the same defenses as BISD.  (DE 6, pp. 3-4, ¶16).

3.      Officer Rivers now files this Motion to Dismiss Under Fed. R. Civ. P. 12(c), and in the Alternative, Motion for Summary Judgment and asks the Court to dismiss the case as more fully described below.

## II.  STATEMENT OF THE ISSUES

4.      Pursuant to Local Rule CV-7(a)(1), Defendant Rivers presents the following Statement of the Issues:

    a.    Whether Plaintiffs' claims against Officer Rivers in his official capacity should be dismissed as they are redundant of the claims brought against Defendant BISD;

    b.    Whether Officer Rivers is entitled to qualified immunity;

    c.    Whether Plaintiffs' pleading adequately describes, and the competent summary judgment evidence shows, a violation of S.D.W.'s Fourth Amendment rights arising from excessive force and seizure by Officer Rivers; and,

    d.    Whether Plaintiffs' pleading adequately states a proper Fourteenth Amendment claim, and whether the competent summary judgment evidence shows excessive force and seizure by Officer Rivers against S.D.W.

### III.  SUMMARY OF THE ARGUMENT

5.    Plaintiffs' claims against Officer Rivers fail for many reasons.  First, Plaintiffs fail to plead sufficient facts to state a claim under the Fourth and Fourteenth Amendments pursuant to Section 1983 and further fail to meet the heightened pleading standard to overcome Officer Rivers' entitlement to immunity and his motion to dismiss.  Thus, as a matter of law, Officer Rivers is entitled to qualified immunity.  Additionally, Plaintiffs' claims against Rivers are brought in Rivers' official capacity; as such, they should be dismissed as they are redundant of the claims brought against BISD.

6.    Further, even if Plaintiffs could overcome Rivers' immunity, Officer Rivers would be entitled to summary judgment based on the competent summary judgment evidence.  Officer Rivers attaches hereto and incorporates by reference the following exhibits:  (A) the affidavit of Officer Stephen R. Rivers, (B) the affidavit of Kelley L. Kalchthaler, authenticating various items of discovery,[1] (C) the affidavit of Margo L. Frasier, and (D) the declaration of Stephen Rivers, with his corresponding TCOLE records.[2]  These exhibits are labeled Exhibits A, B, C, and D respectively with corresponding exhibits attached as A-1, A-2, etc.; the full appendix is also consecutively numbered for the Court's ease of reference.[3]  Subject to and without waiving the objections in Rivers' Motion to Strike, or in the Alternative, Motion to Limit Plaintiffs' Expert Testimony (*see* DE 18), Defendant Rivers also incorporates by reference Docket Entry

---

[1] Defendant Rivers notes that these have been redacted for purposes of this motion and the interest of conserving judicial resources.

[2] Defendant Rivers also incorporates by reference exhibits filed by Beaumont ISD with its motion for summary judgment, including the Declaration of MeLisa Moore.

[3] Defendant Rivers will cite to the appendix to this motion as follows:  (Def. Appx. p. #).

18-1, Plaintiff's Expert Designation.

7.      In addition to the competent summary judgment evidence outlined above, Plaintiffs also have deemed admissions against them due to their failure to timely file responses.   Said admissions are filed as part of the Appendix to Defendant Rivers' Motion to Dismiss Under Fed. R. Civ. P. 12(c), or in the Alternative, Motion for Summary Judgment.[4]  (Def. Appx. pp. 24-32). These admissions from Plaintiffs are likewise incorporated by reference herein and also provided below for the Court's ease of reference:

1.    **REQUEST FOR ADMISSION NO. 1**:  Admit or deny that S.D.W. was involved in a physical altercation on or about March 7, 2014 with another student.

2.    **REQUEST FOR ADMISSION NO. 2:**  Admit or deny that on or about March 7, 2014 Officer Stephen Rivers verbally told S.D.W. to stop during the incident in question.

3.    **REQUEST FOR ADMISSION NO. 3:**  Admit or deny that on or about March 7, 2014 Officer MeLisa Moore verbally told S.D.W. to stop during the incident in question.

4.    **REQUEST FOR ADMISSION NO. 4:**  Admit or deny that on or about March 7, 2014 Officer MeLisa Moore held S.D.W. around the waist to stop him from fighting during the incident in question.

5.    **REQUEST FOR ADMISSION NO. 5:**  Admit or deny that on or about March 7, 2014 S.D.W. resisted Officer MeLisa Moore's efforts to stop him during the incident in question.

6.    **REQUEST FOR ADMISSION NO. 6:**  Admit or deny that on or about March 7, 2014 S.D.W. swung his fist at Officer Stephen Rivers during the incident in question.

7.    **REQUEST FOR ADMISSION NO. 7:**  Admit or deny that on or about

---

[4]  This issue is still pending before the Court.  *See* Plaintiffs' Motion for Leave to File Late Discovery (DE 19) and Defendant Rivers' Response to Plaintiffs' Motion for Leave to File Late Discovery (DE 20).  As such, the admissions are deemed by operation of law.  FED. R. CIV. P. 36(a)(3). Even if the Court were to decide otherwise, Defendant Rivers notes that Plaintiffs, in their untimely response, admitted Nos. 1, 4, 5, and 8.

March 7, 2014 S.D.W. resisted Officer Stephen Rivers' attempts to stop him during the incident in question.

8. **REQUEST FOR ADMISSION NO. 8:**  Admit or deny that there were multiple students nearby when S.D.W. engaged in a physical altercation with another student on or about March 7, 2014.

9. **REQUEST FOR ADMISSION NO. 9:**  Admit or deny that on or about March 7, 2014 that S.D.W. struck Officer Moore while she held S.D.W. around the waist during the incident in question.

All of these facts are admitted in this matter due to Plaintiff's failure to respond timely.

## IV.  STANDARD OF REVIEW

### A.    Summary Judgment Standard Under Rule 56

8.    Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548, 2552-54 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence would allow a reasonable jury to return a verdict in favor of the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  Accordingly, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769 (2007) (citing *Anderson*, 477 U.S. at 247, 106 S. Ct. at 2509) (emphasis in original).

9.     Once the movant shows there is no evidence to support the nonmovant's case, the nonmovant must produce competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1355 (1986).  Mere conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a summary judgment motion.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Similarly, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).  The nonmovant must identify specific record evidence and articulate the precise manner in which that evidence supports his or her claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not require courts to "sift through the record in search of evidence" to support the nonmovant's opposition to the summary judgment motion.  *Forsyth*, 19 F.3d at 1537 (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992), *cert. denied*, 506 U.S. 832, 113 S. Ct. 98 (1992)).   If the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, the court must grant summary judgment.  *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552-53.  No genuine issue of material fact exists if the summary judgment evidence is such that no reasonable juror could find in favor of the nonmovant.  *Jenkins v. Methodist Hosps. of Dallas*, 478 F.3d 255, 260 (5th Cir. 2007).  Thus, when opposing parties tell two different stories, one of which the record blatantly contradicts so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  *Scott*, 550 U.S. at 380, 127 S. Ct. at 1776.

10.     For the same reasons, "self-serving affidavits, without more, will not defeat a motion for summary judgment." *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed. App'x 306, 309 (5th Cir. 2011) (unpublished) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005); *U.S. v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)).  Thus, to overcome summary judgment, Plaintiff must offer more than just pleadings or his own sworn statements.

**B.     Motion to Dismiss Standard Under Rule 12(c)**

11.     A Rule 12(c) motion for judgment on the pleadings is based on the failure to state a claim, and is governed by the same standards that apply to a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991).  The purpose of a Rule 12(b)(6) motion is to test the formal sufficiency of the statement of the claim for relief. *See Murray v. Amoco Oil Co.*, 539 F.2d 1385, 1387 (5th Cir. 1976).  The Rule 12(b)(6) motion only tests whether the claim has been adequately stated in the complaint.  Thus, on a motion under Rule 12(b)(6), the Court's inquiry is limited to the content of the claim. *See Mahone v. Addicks Util. Dist. of Harris Cnty.*, 836 F.2d 921, 935 (5th Cir. 1988).  Dismissal is proper only if there is either: (1) "the lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief, and the Court is not required to conjure up unpled allegations. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

12.    Pleadings must show specific, well-pleaded facts, not mere conclusory allegations, to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007).  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id*.

13.    Once a defendant sued in his or her individual capacity asserts a qualified immunity defense, the court is "guided by both the ordinary pleading standard and by a heightened one." *Floyd v. City of Kenner, La.*, 351 Fed. App'x. 890, 893 (5th Cir. 2009) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc)).  Heightened pleading "requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999); *see also Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003) (heightened pleading requires that plaintiffs "plead their case with precision and factual specificity").

## V.  FACTUAL BACKGROUND

14.    On March 7, 2014, S.D.W. and his brother, C., approached another student, D.H., during the lunch period at West Brook High School ("WBHS").  (Def. Appx. p. 18).  S.D.W. and C. exchanged words and insults with D.H., challenging D.H. to fight S.D.W.  (*Id.*).  D.H. called his mother, K.S., shortly thereafter and told her that S.D.W. was trying to start a fight.  (Def. Appx.

pp. 16, 17, 19, & 33).  K.S. contacted the school and expressed concerns with WBHS Principal Rachel Guidry about S.D.W.'s behavior.  (Def. Appx. p. 19).  Despite the actions of the WBHS administrators earlier that day, S.D.W. started a fight with D.H. right after students had been let out for the day.  (Def. Appx. p. 16, 33).  Because classes had just been let out and they were near the bus pick-up lanes, many students were in close proximity to the fight.  (Def. Appx. p. 4, ¶ 3).

15.    When Beaumont ISD Police Officer MeLisa Moore saw the fight, she attempted to stop the students from hurting each other and to break up the fight.  She verbally commanded them to stop and attempted to restrain S.D.W., who had refused to listen to verbal commands to stop. (Def. Appx. pp. 14, 17).  WBHS Principal Guidry also took action to separate D.H. from the fight; D.H. complied and was immediately removed from the area.  (Def. Appx. p. 17).  S.D.W. did not stop.  In order to restrain him, Officer Moore tried to grab S.D.W. by his waist; however, S.D.W. still did not stop resisting her efforts to detain him and continued to fight, swinging his fists in the air and attempting to strike Officer Moore with his elbows as he resisted.  (Def. Appx. p. 4, ¶ 3-4; Def. Appx. p. 14).

16.    About the same time, Officer Stephen Rivers was nearby at the WBHS main entrance when he heard sounds of an altercation from the area near the school bus lane—people cheering, clapping, and screaming.  (Def. Appx. p. 4, ¶ 3).  In response, he ran to that area where he saw a male student, who he did not know but who later identified as S.D.W., struggling with Officer Moore.  (*Id*).  He quickly noted the chaotic scene—many students in the area as school had just ended, a public servant struggling with and potentially being assaulted by a student that was clearly aggressive and non-compliant in a crowded environment—and saw this as an immediate threat to the safety of Officer Moore, students in the vicinity, and himself.  (*Id*).

17.     As Officer Rivers approached, he yelled, "Police, Stop" or "Stop, Police"[5] several times to S.D.W., but S.D.W. continued to resist Officer Moore's efforts to restrain him.  (*Id*).  At the time, Officer Moore continued to hold her arms around S.D.W.'s waist while S.D.W. tried to get Officer Moore off him by flinging her around as she held onto his waist and attempting to strike her with his elbows.  (*Id*; Def. Appx. p. 14).

18.     As Officer Rivers neared S.D.W. and Officer Moore, S.D.W. saw Rivers coming towards them and swung his left hand at him.  S.D.W. missed, and Rivers was able to grab his arm.  (Def. Appx. p. 4, ¶ 4).  Officer Rivers then began to position S.D.W.'s arm behind his back in a standard empty-hand arm pin maneuver per the use of force continuum to gain control of S.D.W., who was still actively resisting efforts to subdue him.  (*Id*).  As Officer Rivers began employing this maneuver, S.D.W. and Rivers fell to the ground, and Rivers continued to use the maneuver once on the ground because S.D.W. continued to forcefully resist, requiring Officer Rivers to use both hands to exert control over his arm.  (*Id*).  Officer Moore was also assisting to gain control of S.D.W., as S.D.W. continued to resist our efforts.  (*Id*).  Officer Moore was partially on top of S.D.W., which prevented Rivers from keeping S.D.W.'s arm closer to his spine, which would have been the normal manner of this maneuver.  (*Id*).  As S.D.W. brought S.D.W.'s arm up, Officer Rivers realized that S.D.W.'s arm had been broken, which was never Officer Rivers' intention.  (*Id*).

19.     As soon as he realized what had happened, Officer Rivers told Officer Moore so that she would not struggle with S.D.W. anymore and then released the intensity of the hold.  (*Id*).

---

[5] During the entire incident, both Officer Moore and Officer Rivers were in full police uniform. Officer Rivers wore the department's standard uniform, which included a dark blue shirt displaying patches and his police badge and standard dark blue pants with dark piping down the pant leg seam.  (Def. Appx. p. 5, ¶ 4).

Officer Rivers continued to calm S.D.W. so that he would not cause any further injury to himself, and Officer Moore went to retrieve some ice to put on S.D.W.'s arm.  (Def. Appx. p. 5, ¶ 4).

20.     Following the incident, Officer Rivers completed paperwork regarding the use of force and made himself available for questions from the BISD Police Department, and the Department conducted a subsequent investigation regarding the incident.  (Def. Appx. p. 5, ¶ 5).  Upon finishing the investigation, it was concluded that Officer Rivers had not violated any BISD Police Department policy.  (*Id*).

21.     On March 19, 2014 at approximately 8:00 p.m., about a week and a half after the fight, S.D.W. showed up at D.H.'s home.  (Def. Appx. p. 20).  D.H. was in his yard taking his dog out and was with his mother, K.S., who also observed the incident.  (*Id*).  S.D.W. was with several other students and yelled at D.H.: "As soon as I get this cast off, I'm going to break your jaw!" (*Id*).  K.S. told him to leave.  Later, the police looked into the incident.  (*Id*).

## VI.  ARGUMENTS AND AUTHORITIES

### A.     Officer Rivers is entitled to immunity for all Plaintiffs' claims against him.

   *1.     Plaintiffs' claims against Officer Rivers in his official capacity merit dismissal, or alternatively summary judgment in Rivers' favor, as they are redundant of Plaintiff's claims against Defendant BISD.*

22.     Personal-capacity suits seek to impose personal liability upon a government official for actions he or she takes under color of state law.  *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 237–238, 94 S.Ct. 1683, 1686–1687, 40 L.Ed.2d 90 (1974).  Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Soc. Svcs.*, 436 U.S. 658, 690, n. 55, 98 S.Ct.

2018, 2035, n. 55, 56 L.Ed.2d 611 1978).  Where, as here, the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (citation omitted).  It is not a suit against the official personally, for the real party in interest is the entity.  Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.  *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985).  In fact, courts recognize that a suit against a state official is merely "'another way of pleading an action against the entity of which [the official] is an agent.'"  *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) (alterations in original) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099 (1985)).  Public officials like Officer Rivers may be sued pursuant to Section 1983 in either their official and/or their personal capacities.  *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 361–63, 116 L.Ed.2d 301 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).  The distinction between official-capacity suits and personal-capacity suits is more than "a mere pleading device."... State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them.... By contrast, officers sued in their personal capacity come to court as individuals.  A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.'"  *Hafer*, 112 S.Ct. at 362.  The real party in interest in an official-capacity suit is the governmental entity, not the named official.  *Id.* at 361 (citing *Graham v. Connor*, 105 S.Ct. at

3105) ("Suits against state officials in their official capacity ... should be treated as suits against the State."). *See Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir.), cert. denied, 519 U.S. 817, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996) ("When Mrs. Bennett sued the Sheriff in his individual and official capacity, she sued two defendants:  the Sheriff and the County."). *See also Turner v. Houma Mun. Fire & Pol. Civil Svc. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' Accordingly, a [Section] 1983 suit naming defendants in only their 'official capacity' does not involve personal liability to the individual defendant.") (citations omitted).

23.    In a personal-capacity claim under Section 1983, plaintiffs must allege that while acting under color of state law defendants were personally involved in the deprivation of a right secured by the laws or Constitution of the United States, or that defendants' wrongful actions were causally connected to such a deprivation. *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).

24.    Here, Plaintiffs failed to specify whether suit was brought against Officer Rivers in his official or personal capacity; instead, Plaintiffs indicate that Officer Rivers "at all times material … was a police officer acting within the course and scope of his employment," but the facts they assert do not suggest a personal capacity suit.  (*See generally* DE 3).  Thus, Rivers asserts that this suit is brought against him as an individual defendant in his official capacity, and that he is entitled to dismissal for the same reasons BISD is entitled to dismissal, should the Court grant any dismissal filed by BISD.  Additionally, if only the "official capacity claims" survive, Defendant Rivers urges that those claims be dismissed, as any claims against him in his official capacity are redundant of those against BISD.

   *2.     Officer Rivers is entitled to qualified immunity against Plaintiffs' claims.*

25.    As previously set out in his Answer (DE 6), Officer Rivers re-asserts that he is entitled to the defense of qualified immunity.  While Section 1983 provides a cause of action against an individual who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right, qualified immunity shields a government official from civil liability for damages based on the performance of discretionary functions if the official's acts were objectively reasonable in light of clearly established law.  *See* 42 U.S.C. § 1983; *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).[6]  "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law."  *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*, 457 U.S. at 818).[7]  As such, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects

---

   [6] Because qualified immunity is "an immunity from suit rather than a mere defense to liability, ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985).  Consequently, qualified immunity questions should be resolved at the earliest possible stage in litigation.  *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534 (1991) (per curiam).

   [7] Under federal law, "[q]ualified immunity represents the norm" and "is designed to shield from civil liability all but the plainly incompetent or those who violate the law." *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 174 (5th Cir. 1995).  Accordingly for federal claims, government employees are presumptively entitled to the defense of qualified immunity and, once the defense is asserted, the burden shifts to the plaintiff to show that immunity does not bar recovery.  *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992); *Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 408 (5th Cir. 1989).

all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012) (citations and internal quotation marks omitted).

26.    "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citation omitted).  Through its interpretation of this standard, the Fifth Circuit has explained that, "[d]eliberate indifference is an extremely high standard to meet," and requires a plaintiff to establish more than mere negligence, unreasonable response, or medical malpractice.  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *see also Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001).

27.    While a court must view all facts in a light most favorable to Plaintiffs, it bears repeating that the burden remains on Plaintiffs "to negate the [qualified immunity] defense once properly raised."  *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012) (citing *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).  Even on summary judgment, a Court is bound to consider that qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Id*.  (internal quotation marks omitted).  Indeed, the Supreme Court has instructed that a court's review is necessarily objective—reasonableness is the touchstone and that the court lacks any benefit of 20/20 hindsight.  *Id.*  (citing *Graham v. Connor*, 490 U.S. at 396–97, 109 S.Ct. 1865).[8]

---

[8] Officers' subjective intent is also irrelevant.  *Id.* (citing *Graham v. Connor*, 490 U.S. at 397, 109 S.Ct. 1865).

       i.       *Plaintiffs failed to meet the heightened pleading requirement to overcome Rivers' immunity.*

28.    The Fifth Circuit requires that a plaintiff suing governmental officials in their individual capacities must meet heightened pleading requirements in cases, such as this one, in which an immunity defense can be raised.  *See Schultea,* 47 F.3d at 1434.  The Fifth Circuit has also consistently required that Section 1983 plaintiffs plead specific facts negating qualified immunity rather than providing mere conclusory allegations of constitutional violations.  *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995).

29.    Here, Plaintiffs fail to meet those standards.  Plaintiffs provide very few facts in their Complaint to support their position.   Indeed, they only broadly allege that S.D.W.'s constitutional right under the Fourth and Fourteenth Amendments were violated by Defendant Rivers, claiming that Rivers acted with "negligent discretion" with his use of force.  (DE 3, p. 3).  However, the negligent deprivation of life, liberty, or property is not a constitutional violation.  *See Campbell*, 43 F.3d at 977; *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir.), cert. denied, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992); *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir. 1989); *Simmons v. McElveen*, 846 F.2d 337, 339 (5th Cir. 1988).  Likewise, they also fail to plead how Officer Rivers' action may have been objectively unreasonable in light of clearly established law at the time; instead, they offer only general assertions of "police brutality" or "abuse of authority" without pleading whether the actions taken were objectively unreasonable.  As such, they have failed to meet the heightened pleading standard, and Rivers urges the Court to grant dismissal based on the same.

> ii.     *Plaintiffs cannot overcome the competent summary judgment evidence showing Rivers is entitled to qualified immunity on their claims.*

30.     Here, there is no dispute that the general right to be free from excessive force was clearly established when Officer Rivers' interaction with S.D.W. occurred.  However, the general definition of a right is not sufficient to resolve the question of qualified immunity.  Indeed, as explained in *Banks v. Gammon*, 2010 WL 996743, at *5 (N.D. Tex. January 26, 2010):  For the purposes of the qualified immunity analysis, " 'clearly established' means that the 'contours of the right' are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " ... The law generally should be established in a more particularized sense, because the primary concern is fair notice to the officer in the specific context in which he is acting .... *Id*.  Thus, while the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 417 (5th Cir. 2009) (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)).  Further, negligent deprivation of life, liberty, or property is not a constitutional violation.  *See Campbell*, 43 F.3d at 977; *Fraire*, 957 F.2d at 1276; *Herrera*, 862 F.2d at 1160; *Simmons*, 846 F.2d at 339.

31.     Based upon the standards set out by the current Austin Police Monitor, Margo L. Frasier, Officer Rivers' actions must be viewed as objectively reasonable.  (*See* Ex. D, Def. Appx. pp. 36-44).  At the time of the incident at issue, a person who engages in assaultive conduct to a public servant, such as a uniformed police officer, and resists the efforts of police officers to restrain has an expectation that efforts will be made until he is restrained for the safety of the officers and other persons in the area, and there are no constitutional implications in such an

arrest or detention.  (Def. Appx. pp. 41-42).  "Once S.D.W. resisted, Moore's and Rivers' efforts to restrain him, Rivers would have had, based on his observations and training, a rational basis for taking S.D.W. to the ground and placing S.D.W.'s arms placed behind his back so that he could be completely restrained, and most likely handcuffed."  (Def. Appx. p. 41).  The officers further acted consistent with law enforcement training and procedures, including placing S.D.W.'s arm behind his back, and the officers, including Rivers, used no greater force against S.D.W. than was necessary. (Def. Appx. p. 42; *see also* Def. Appx. pp. 26-53 (Rivers' TCOLE records)).

32.     As the Fifth Circuit has made clear, a plaintiff must establish more than mere negligence or an unreasonable response to overcome immunity.  *Gobert*, 463 F.3d at 346.  However, here "negligence" is exactly the standard that Plaintiffs claim Rivers met.  Specifically, Plaintiffs assert "negligent discretion" by Rivers.  (*See* DE 3, p. 3, ¶ 9; Def. Appx. p. 34 (Resp. to Interrog. Nos. 5 and 6).  While Defendant Rivers denies that he acted with negligence, even if he had, it is insufficient to overcome his immunity.[9]

33.     Even if they had articulated the proper standard, in order to overcome their burden as stated above, Plaintiffs must first show a violation of a constitutional right, then an "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive to the need and, (3) the force used was objectively unreasonable."  *Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999).  As shown above, Plaintiff cannot show a constitutional violation because all he

---

[9] *See also* Plaintiff's Expert Designation, (DE 18-1, p. 15): "From a crisis intervention and control perspective, Officer Rivers ***could*** have stopped there, or certainly have paused long enough to get close to Mr. W's ear …" (emphasis added).  Therefore, Plaintiff's own expert appears to suggest only that other maneuvers *could have* been used, which suggests a claim sounding in negligence that is insufficient to constitute a constitutional violation.

has alleged and shown is "negligence," which is not sufficient.  Additionally, he cannot and has not shown that the use of force was clearly excessive to the need or that the force was objectively unreasonable.   The test for reasonableness must consider "***whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight***."  *Graham v. Connor*, 490 U.S. at 396, 109 S.Ct. at 1872 (emphasis added).  Often enough, the Fourth Amendment has to be applied on the spur (and in the heat) of the moment, and the object in implementing its command of reasonableness is to draw standards sufficiently clear and simple to be applied with a fair prospect of surviving judicial second-guessing months and years after an arrest or search is made.[10]  *Atwater v. City of Lago Vista*, 532 U.S. 318, 347, 121 S. Ct. 1536, 1553, 149 L. Ed. 2d 549 (2001).  Courts attempting to strike a reasonable Fourth Amendment balance thus credit the government's side with an essential interest in ready administrable rules.  *Id*. (citation omitted).

34.    Here, while there was an injury, the force used was not excessive to the need nor was Rivers' action objectively unreasonable.  As set out by current Austin Police Monitor Margo Frasier, "the BISD officers, including Rivers, used no greater force against S.DW. than was necessary to detain him" and that Rivers actions were consistent with the force allowed under the Texas Penal Code and Texas Commission on Law Enforcement ("TCOLE") training.  (Def. Appx. pp. 42, 43).

---

[10] Courts must further evaluate an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Poole*, 691 F.3d at 628) (citing *Graham v. Connor*, 490 U.S. at 396, 109 S.Ct. 1865.  Any "evil intentions" motivating an officer's objectively reasonable use of force "will not make a Fourth Amendment violation." *Id.* (citing *Graham v. Connor*, 490 U.S. at 397, 109 S.Ct. 1865).

35.     With regard to whether Rivers' acted objectively reasonably, there is no dispute that two students, S.D.W. and D.H., engaged in a fight during the incident in question.  (Def. Appx. p. 33 (Resp. to Interrog. No. 3).  At the time, there were many students in the area of the fight.  (Def. Appx. p. 4, ¶ 3).  Despite being instructed to stop and the other student being removed from the area, S.D.W. refused to comply.  Even when Officer Moore tried to restrain him by grabbing him around the waist, S.D.W. refused to stop and instead attempted to strike her, which posed a threat to the officer and students in the area.  Officer Rivers arrived to a clearly aggressive and non-complaint student struggling with and potentially assaulting a public servant in a crowed environment full of students, and he assessed that S.D.W. posed a threat to Officer Moore, the students, and himself. [11]  (Def. Appx. p. 4, ¶ 3; Def. Appx. p. 13 (Rivers' assessment related to restraint use); Def. Appx. p. 14; Def. Appx. pp. 27-28 (Resp. to Admission Nos. 1 – 9)).  Despite the presence and attempts by school administrators, Officer Moore, and Officer Rivers to stop him, S.D.W. persisted in his efforts to actively resist any restraint or arrest.  (Def. Appx. p. 4, ¶ 3; Def. Appx. p. 13 (Rivers' assessment related to restraint use); Def. Appx. p. 14; Def. Appx. p. 16-17 (administrators'' statements); Def. Appx. pp. 27-28 (Resp. to Admission Nos. 2-7, 9)).  For these reasons, Rivers acted objectively reasonably.  *See Williams*, 180 F.3d at 699) (the test for reasonableness must consider "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight").  *Graham v. Connor*, 490 U.S. at 396, 109 S.Ct. at 1872 (emphasis added).  Because Officer Rivers has already asserted qualified immunity as a defense, the burden rests with

---

[11] Plaintiff's expert also acknowledges that this was a "chaotic scene" and "this incident required the application of non-deadly force to separate the subjects and restrain [S.D.W.] from harming himself and others.  This force include[d] any physical effort to control and or restrain [S.D.W.]."  (DE 18-1, p. 14).

20

Plaintiffs to show that immunity does not apply.  In light of the competent summary judgment evidence, Plaintiffs cannot meet their burden to overcome Rivers' immunity, and Rivers urges the Court to grant summary judgment in his favor on this basis.

> 3.    *The Court should dismiss, or alternatively grant summary judgment for Rivers, Plaintiffs' Fourth Amendment excessive force claims against Officer Rivers.*

36.    To state a claim for the use of excessive force under the Fourth Amendment, a plaintiff must first establish that he suffered a seizure with the meaning of the Fourth Amendment.  *See Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).  A plaintiff must then show that he suffered: (1) an injury; (2) which resulted directly and only from a use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable.  *Id*; *see also Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996).  "[T]he question [is] whether the totality of the circumstances justified" that use of force.  *Tenn. v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 1700, 85 L.Ed.2d 1 (1985).  In *Graham*, 109 S.Ct. at 1865, the Supreme Court articulated three guideposts for courts to use when determining if a particular use of force was reasonable under the circumstances or excessive to the need.  These guideposts—often referred to as the *Graham* factors—are: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to police officers or civilians; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene.  *Id*. at 1872.  The *Graham* factors provide the framework for judging whether an officer's use of force was excessive.

37.    For all the same reasons explained more fully above in Section VI.A.2., Plaintiffs' Fourth Amendment claim for excessive force or seizure also fails to meet the pleading standards to

survive dismissal and fails to overcome the competent summary judgment evidence.  As explained above, the summary judgment evidence shows that S.D.W. was engaged in illegal and violent behavior by striking Officer Moore, constituting assault on a public servant.  *See* TEX. PEN. CODE § 22.01(a) & (b)(1). (Def. Appx. pp. 3-4, 6; Def. Appx. p. 8 (see "Code Section), p. 14 (Moore affidavit); Def. Appx. pp. 27-28 (Resp. to Admission Nos. 4, 5, 6, & 9).

38.    Moreover, there is nothing to suggest that an officer who takes action to restrain an aggressive, non-complaint individual struggling with and potentially assaulting a public servant in a crowed environment full of students is unreasonable in his decision to attempt to restrain the individual with a standard maneuver.  The evidence establishes that S.D.W. was a threat to himself and others in the vicinity.  For these reasons and those described above, Plaintiffs' Fourth Amendment claim for excessive force also warrants summary judgment in Rivers' favor.

> *4.    The Court should dismiss, or alternatively grant summary judgment for Rivers, Plaintiffs' Fourteenth Amendment excessive force and seizure claims against Officer Rivers.*

39.    Although it is not clearly identified in their complaint, Plaintiffs allege non-specific violations of the Fourteenth Amendment by Rivers against S.D.W.  In the Fifth Circuit, when apprehending or seizing an individual for law enforcement purposes, the Fourth Amendment applies and permits police officers to use objectively reasonable force in light of the facts and circumstances confronting them.  *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 983 (E.D. Tex. 2005) (*citing Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989) (en banc) and *Graham v. Connor*, 490 U.S. at 396-97)).  However, when subsequently detaining an individual, the Fourteenth Amendment applies and permits good faith use of force to maintain or restore discipline, while proscribing malicious and sadistic force employed for the very purpose of

causing pain.  *Batiste*, 421 F. Supp. 2d at 983 (citing *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

40.    In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that the validity of an excessive force claim arguably based on a violation of a specific protection of the Bill of Rights, such as those contained in the Fourth and Eighth Amendments, must be judged by reference to the specific standard which governs that right rather than by the more general substantive due process standard.  The Court recognized the notion that all excessive force claims brought under Section 1983 are not governed by a single generic standard.  *Petta v. Rivera*, 143 F.3d 895, 900 (5th Cir. 1998) (citing *Graham v. Connor*, 490 U.S. at 393, 109 S.Ct. at 1869, 104 L.Ed.2d at 443).   However, the Court rejected the substantive due process standard only in cases in which the alleged excessive use of force arguably violated a specific right protected under the Bill of Rights.  With respect to free citizens, the court explicitly held only that all "claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' " should be analyzed under the Fourth Amendment.  *Graham v. Connor*, 490 U.S. at 395, 109 S.Ct. at 1871 (emphasis added); *see U.S. v. Lanier*, 520 U.S. 259, n. 7, 117 S.Ct. 1219, 1228 n. 7, 137 L.Ed.2d 432 (1997) ("*Graham v. Connor*, does not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendment; rather, *Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").

41.    Here, all of Plaintiffs' allegations against Rivers relate to S.D.W.'s apprehension and seizure.  As such, Plaintiffs' Fourteenth Amendment claims are inapplicable to the case at bar and should be dismissed.  There is nothing in Plaintiffs' Original Complaint that alleges any use of force after Plaintiff was apprehended or seized by Rivers during the incident in question, and there is certainly nothing that would suggest that Rivers engaged in any malicious or sadistic force for the purpose of causing pain after the incident in question.  Indeed, the evidence shows that S.D.W. was not handcuffed after the incident and that Rivers took steps to ensure that S.D.W. received medical attention.  (DE 3, p. 3; Def. Appx. pp. 4-5, ¶ 4).

42.    As such, Plaintiffs fail to state a claim under the Fourteenth amendment for use of force in any subsequent detention.  Accordingly, Defendant Rivers would also be entitled to qualified immunity because there are no facts in Plaintiffs' complaint to show any violation of the Fourteenth Amendment, and Plaintiff cannot show facts otherwise.

## VII. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant Stephen Rivers urges this Court to deny Plaintiffs any and all relief demanded against Defendant Rivers and dismiss the suit against him.  Alternatively, Defendant Rivers prays the Court grant summary judgment in his favor.  Defendant Rivers also requests an award of reasonable attorneys' fees and costs of suit.  Finally, Defendant Rivers requests the Court grant such other and further relief, both general and specific, in law or at equity, as the Court deems just and proper.

Respectfully submitted,

WALSH, ANDERSON, GALLEGOS,
GREEN & TREVIÑO, P.C.
10375 Richmond Avenue, Suite 750
Houston, Texas 77042
Telephone:  (713) 789-6864
Facsimile:  (713) 789-9318
Email:  jbyrom@wabsa.com
Email:  kkalchthaler@wabsa.com


By: */s/    James E. Byrom*
     JAMES E. BYROM
     State Bar No. 03568100
     KELLEY L. KALCHTHALER
     State Bar No. 24074509

ATTORNEYS FOR DEFENDANT
STEPHEN RIVERS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of January, 2015, a true and correct copy of the foregoing was served upon counsel of record as follows:

Mr. B. Adam Terrell                                          ***Via Electronic Case Filing***
Texas Bar No. 19790900
Weller, Green, Toups & Terrell, LLP
Post Office Box 350
Beaumont, TX 77704-0350
Phone: (409) 838-0101
Fax:   (409) 832-2940

Mr. Kevin Symons Laine                                 ***Via Electronic Case Filing***
Texas Bar No. 00798313
Attorney at Law
1104 Orleans Street
Beaumont, TX 77701-3611
Phone: (409) 838-4040
Fax:   (409) 832-7830
**Attorneys for Plaintiffs**

Ms. Frances R. Broussard                               ***Via Electronic Case Filing***
Texas Bar No. 24055218
Mr. Christopher B. Gilbert
Texas Bar No. 00787535
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, TX 77027-7554
Phone: (713) 554-6788
Fax:   (713) 583-433
**Attorneys for Defendant Beaumont ISD**

                                        /s/ *James E. Byrom*
                                        James E. Byrom

26